M. Cris Armenta (SBN 177403)
THE ARMENTA LAW FIRM APC
11900 W. Olympic Boulevard, Suite 730
Los Angeles, CA 90064
Tel: (310) 826-2826 x 108
Facsimile: (310) 826-5456
Email: cris@crisarmenta.com

Credence E. Sol (SBN 219784)
La Garenne
86300 Chauvigny
France
Telephone: 06 74 90 22 08
Email: credence.sol@sol-law.com

Attorneys for Plaintiff
Cindy Lee Garcia

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY LEE GARCIA, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>NAKOULA BASSELEY NAKOULA, an individual also known as SAM BACILE, MARK BASSELEY YOUSSEF, ABANOB BASSELEY NAKOULA, MATTHEW NEKOLA, AHMED HAMDY, AMAL NADA, DANIEL K. CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, ROBERT BACILY, NICOLA BACILY, THOMAS J. TANAS, ERWIN SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID AHLAWI; GOOGLE, INC., a Delaware Corporation; YOUTUBE, LLC, a California limited liability company, and DOES 1 through 10, inclusive.<br><br>                    Defendants. | Case No. CV12-8315 MWF (VBKx)<br><br>**REQUEST FOR JUDICIAL NOTICE** |

## REQUEST FOR JUDICIAL NOTICE

1.      The court is requested to take judicial notice of the worldwide events that unfolded on and after September 11, 2012, which were widely and globally reported in the news and were at the time attributed to protests over the film *Innocence of Muslims* (the "Film"), and as set forth in the declaration of expert and Professor Khaled Abou El Fadl.  The court may take judicial notice of information in newspaper articles.  <u>Ritter v. Hughes Aircraft Co.</u>, 58 F.3d 454, 458-459 (9th Cir. 1995).  Federal Evidence Section Evidence Code. 201(b) provides that judicial notice must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  A district court's decision to take judicial notice under Rule 201 is reviewed for an abuse of discretion.  <u>United States v. Chapel</u>, 41 F.3d 1338, 1342 (9th Cir. 1994), cert. denied, 131 L. Ed. 2d 1015, 1995 U.S. LEXIS 3609, 115 S. Ct. 2017 (U.S. May 22, 1995).

2.      The specific facts set forth in the news reports include the following: (a) that on September 11, 2012, the U.S. Consulate in Benghazi, Libya, was attacked, resulting in the deaths of four Americans, including Ambassador Christopher Stevens; (b) that violence has continued to erupt across the world; (c) that many experts in geopolitical affairs have attributed this violence directly to the Film; (d) that news reports indicate that many people worldwide have died in the violence that the film has sparked; (e) that whether the Film is or is not the cause of the violence, the violence in fact occurred with many at the time attributing it to the anti-Muslim sentiment in the Film; (f) that on September 19, 2012, Egyptian cleric Ahmad Fouad Ashoush issued a "fatwa" directed at Plaintiff and every other person involved in the production of *Desert Warrior/The Innocence of Muslims*:

2

*I issue a fatwa and call on the Muslim youth in America and Europe to do this duty, which is to kill the director, the producer and the actors and everyone who helped and promoted the film.*

(5) that the public response of Google Chairman Eric Schmidt's response to questions about the Film was: "We believe the answer to bad speech is more speech … It'll stay up." The material supporting the preceding items are contained in the Declaration of Khaled Abou El Fadl,

       3.     In July of 2012, the WIPO Audiovisual Dramatic Performance Treaty ("AVP Treaty") was signed by the United States in Beijing, China in July of 2012. The United States was instrumental in encouraging other countries to sign the AVP Treaty in order to bring other countries into compliance with the long-standing acknowledgement in the United States that actors, just like musicians, own the rights to their performances unless assigned, unless they are employees, or unless they execute a written instrument indicating their work is a work-for-hire. The formal statement issued by the United States Patent & Trademark Office, in connection with the AVP Treaty, states:

> Under U.S. law, actors and musicians are considered to be "authors" of their performances providing them with copyright rights.

> Just as the rights established in the U.S. law already provide the protection for musical performers mandated by the WPPT, U.S. law is already generally compatible with the AVP provisions ("points of attachment" for parties to this treaty under U.S. law).

The official position statement of the United States and Trademark Office is attached hereto as Exhibit A.

REQUEST FOR JUDICIAL NOTICE
CV 12 8315 (VBKx)

4.       The court is requested of the public case file in <u>United States of America v. Nakoula, et al</u>, United States District Court (Case No. NEED],: (1) which includes the Judgment and Commitment, restricting Nakoula from using a computer or accessing the Internet; (2) Nakoula was arrested on a probation violation and now sits, without bail, in the Metropolitan Detention Center in Los Angeles.  Magistrate Judge Segal found that he may have violated the terms of his probation, used aliases, and is both a flight risk and danger to the community.   The relevant documents from the Nakoula criminal court case file, of which the court is requested to take judicial notice, are attached hereto as Exhibit B.

Dated: October 17, 2012                 THE ARMENTA LAW FIRM, A.P.C.


                                        By: _____
                                             M. Cris Armenta
                                             Attorneys for Cindy Lee Garcia

REQUEST FOR JUDICIAL NOTICE
CV 12 8315 (VBKx)

EXHIBIT A

*BACKGROUND AND SUMMARY OF*
*THE 2012 WIPO AUDIOVISUAL PERFORMANCES TREATY*

*On June 26, at a Diplomatic Conference in Beijing, China, the United States joined countries from around the world in signing the WIPO Audiovisual Performances Treaty (AVP Treaty). This treaty will guarantee rights to film and television actors around the world in a form compatible with U.S. law and on a par with the rights accorded to musicians under the 1996 WIPO Performances and Phonograms Treaty (WPPT).*

## HISTORY

o   The United States was a leading force in the 1996 Diplomatic Conference (Dipcon) that produced the WIPO Copyright Treaty (WCT) and the WIPO Performances and Phonograms Treaty (WPPT). These treaties updated international copyright laws in critical ways, including rights of distribution and making available on the internet, and the safeguarding of technological protection measures.

o   Language not included in the 1996 negotiations would have addressed audiovisual performers rights in the WPPT, but agreement could not be reached on how to bridge the differences in difficult countries systems.

o   Instead, it was agreed that separate negotiations on the AVP would be conducted aimed at producing either a Protocol to the WPPT or a stand-alone agreement. Negotiations continued starting in 1997.

o   In October 1998, Congress passed the Digital Millennium Copyright Act (DMCA) implementing the WCT and WPPT. The United States Senate gave its consent to ratification of the WCT and WPPT on October 21, 1998; the United States deposited its instruments of ratification for both treaties with WIPO on September 14, 1999.

o   The United States strongly advocates these treaties and their adoption and implementation as part of bilateral and plurilateral trade and intellectual property agreements.

o   In December 2000, another Dipcon was convened to negotiate the AVP. The U.S. delegation included members from USPTO, Copyright Office, and State as well as representatives of the Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTA) and the Motion Picture Association of American (MPAA).

o   The 2000 Dipcon completed all substantive provisions of the AVP except one relating to transfers of rights from performers to producers. The U.S., supported by India, insisted on a "transfer of rights" provision that major film producers felt was needed to ensure their ability to distribute films globally; the European Union opposed all proposals for such a provision. The Dipcon deadlocked on this issue.

o   For the next decade, the incomplete AVP languished on the agenda of WIPO's Standing Committee on Copyright and Related Rights (SCCR).

## BREAKTHROUGH IN 2011, DIPLOMATIC CONFERENCE IN 2012

o   In 2010, WIPO Member States were invited to submit proposals for the AVP transfer of rights provision in order to complete the treaty.

- o  The United States submitted a proposal, developed with substantial input from SAG-AFTA and MPAA. Mexico and India also submitted proposals and the three countries (IN, MX, US) were tasked with finding a compromise solution.

- o  The United States, Mexico, and India delegations achieved compromise language, working closely with the delegations of other major film-producing jurisdictions, particularly the EU, Brazil, and Nigeria. [Attached on page three as an Annex.]

- o  Based on this agreement, in September 2011 the WIPO General Assembly decided to convene a Dipcon to complete the AVP Treaty.

- o  The Chinese Government offered to host the Dipcon and this was supported by the United States as a means to strengthen China's commitment to copyright.

- o  The Dipcon to complete the WIPO AVP Treaty was held in Beijing, June 20-26.

## COMPATIBILITY WITH U.S. LAW

- o  Under U.S. law, actors and musicians are considered to be "authors" of their performances providing them with copyright rights.

- o  Just as the rights established in U.S. law already provide the protection for musical performers mandated by the WPPT, U.S. law is already generally compatible with the AVP provisions. (This was also the Administration's view in 2000.)

- o  Nonetheless, implementation of the AVP may require some technical amendments of the Copyright Act, in particular where Title 17 refers to existing international copyright obligations ("points of attachment" for parties to this treaty under U.S. law).

- o  Assuming the negotiations are successful, then subject to authorization by the Secretary of State to sign the treaty and the Administration's final determination, the AVP, like the WCT and WPPT, would be submitted for the advice and consent of the Senate.

## IMPORTANCE TO U.S. STAKEHOLDERS

- o  The AVP Treaty is important to American actors—represented by SAG/AFTRA—as a way of increasing global protection for performers by ensuring updated and consistent standards of protection for performers in audiovisual works.

- o  With the now acceptable "transfer of rights" provisions, the AVP Treaty represents a win-win for labor and industry, allowing them to work even more closely in fighting global piracy.

- o  Ratification by the United States and key trading partners will give U.S. stakeholders another mechanism to promote protection of the intellectual property in their films.

# # # #

**ANNEX – Compromise Article 12 to complete the AVP**

Article 12
Transfer of rights

A Contracting Party may provide in its national law that once a performer has consented to fixation of his or her performance in an audiovisual fixation, the exclusive rights of authorization provided for in Articles 7 to 11 of this Treaty shall be owned or exercised by or transferred to the producer of such audiovisual fixation subject to any contract to the contrary between the performer and the producer of the audiovisual fixation as determined by the national law.

A Contracting Party may require with respect to audiovisual fixations produced under its national law that such consent or contract be in writing and signed by both parties to the contract or by their duly authorized representatives.

Independent of the transfer of exclusive rights described above, national laws or individual, collective or other agreements may provide the performer with the right to receive royalties or equitable remuneration for any use of the performance, as provided for under this Treaty including as regards Articles 10 and 11.

EXHIBIT B

CLERK, U.S. DISTRICT COURT

SEP 2 7 2012

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>NAKOULA BASSELEY NAKOULA,<br><br>       Defendant. | CR09-617-CAS<br><br>ORDER OF DETENTION AFTER<br>HEARING ( Fed.R.Crim.P. 32.1(a)(6)<br>Allegations of Violations of Probation<br>Supervised Release)<br>Conditions of Release) |

On arrest warrant issued by a United States District Court involving alleged violations of conditions of probation or Supervised Release,

The court finds no condition or combination of conditions that will reasonably assure:

(A)  ☒  the appearance of defendant as required; and/or

(B)  ☒  the safety of any person or the community.

//

//

1    The court concludes:

2    A.   (X)   Defendant poses a risk to the safety of other persons or the

3          community because defendant has not demonstrated by clear and

4          convincing evidence that:

5    he will abide by conditions of supervised

6    release. Despite his underlying conviction

7    for fraud and the condition that he, not use any

8    name other than his true name, it is alleged he

9    failed to use his true name. He may have committed
     new crimes while on release. Thus, Defendant poses a danger

10   (B)   (x)   Defendant is a flight risk because defendant has not shown by clear
     to the community.

11          and convincing evidence that:

12   he will abide by conditions of release. He appears

13   to have engaged in a pattern of deception. He lacks

14   stable employment or residence. He does not have

15   an adequate surety or bail resources. He has some

16   ties to foreign countries. He has used aliases. Thus,
     defendant poses a risk of flight.

17   IT IS ORDERED that defendant be detained.

18

19   DATED: 9/27/12

20

21

22

23          SUZANNE H. SEGAL
     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                              2

**United States District Court**
**Central District of California**

| | |
|---|---|
| UNITED STATES OF AMERICA vs. | Docket No.   <u>CR09-617-CAS</u>   **ENTER** |
| **Defendant**   <u>NAKOULA BASSELEY NAKOULA</u> | Social Security No. <u>0</u>   <u>7</u>   <u>7</u>   <u>4</u> |
| akas:   Mark Basseley Youssef; Yousseff M. Basseley;   <u>Nicola Bacily; Malid Ahlawi</u> | (Last 4 digits) |

### JUDGMENT AND PROBATION/COMMITMENT ORDER

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| 06 | 24 | 2010 |

| **COUNSEL** | [X] **WITH COUNSEL** | James Henderson, Sr., Retained |
|---|---|---|
| | | (Name of Counsel) |

| **PLEA** | [ ] **GUILTY,** and the court being satisfied that there is a factual basis for the plea. | [ ] **NOLO CONTENDERE** | [ ] **NOT GUILTY** |
|---|---|---|---|

| **FINDING** | There being a finding/verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of: Bank Fraud, Causing an Act to be Done in violation of 18 USC 1344,2(b), as charged in Count 1 of the Indictment. |
|---|---|

| **JUDGMENT AND PROB/ COMM ORDER** | The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed on count 1 of the Indictment to the custody of the Bureau of Prisons to be imprisoned for a term of: **TWENTY-ONE (21) MONTHS.** |
|---|---|

It is ordered that the defendant shall pay to the United States a special assessment of $100.00, which is due immediately.

It is ordered that the defendant shall pay restitution in the total amount of $794,700.57,  pursuant to 18 U.S.C. § 3663A.

The amount of restitution ordered shall be paid to the victim as set forth in a separate victim list prepared by the probation office which this Court adopts and which reflects the Court's determination of the amount of restitution due to each victim.  The victim list, which shall be forwarded to the fiscal section of the clerk's office, shall remain confidential to protect the privacy interests of the victim. If the defendant makes a partial payment, each payee shall receive approximately proportional payment unless another priority order or percentage payment is specified in this judgment.

Restitution shall be due during the period of imprisonment, at the rate of not less than $25.00 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.  If any amount of restitution remains unpaid after release from custody, monthly installments of at least 10% of gross monthly income, but not less than $100.00 shall be made, whichever is greater, during the period of supervised release and shall begin thirty (30) days after the commencement of supervision. Pursuant to 18 U.S.C. § 3612(f)(3)(A), interest on the restitution ordered is waived because the defendant does not have the ability to pay interest.  Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

All fines are waived as it is found that the defendant does not have the ability to pay a fine in addition to restitution.

The defendant shall comply with General Order No. 01-05.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five (5) years, under the following terms and conditions:

USA vs.   NAKOULA BASSELEY NAKOULA                    Docket No.:   CR09-617-CAS

1. The defendant shall comply with the rules and regulations of the U. S. Probation Office
   and General Order 318;

2. The defendant shall reside for a period of six (6) months in a community corrections
   center (community corrections component), as directed by the Probation Officer, and
   shall observe the rules of that facility;

3. The defendant shall refrain from any unlawful use of a controlled substance. The defendant
   shall submit to one (1) drug test within fifteen (15) days of release from imprisonment and at
   least two (2) periodic drug tests thereafter, not to exceed eight (8) tests per month, as directed
   by the Probation Officer;

4. During the period of community supervision, the defendant shall pay the special
   assessment and restitution in accordance with this judgment's orders pertaining to such
   payment;

5. The defendant shall not obtain or possess any driver's license, Social Security number,
   birth certificate, passport or any other form of identification in any name, other than the
   defendant's true legal name; nor shall the defendant use, for any purpose or in any
   manner, any name other than his/her true legal name or names without the prior written
   approval of the Probation Officer;

6. The defendant shall cooperate in the collection of a DNA sample from the defendant;

7. Defendant shall not possess or use a device with access to any online service at any
   location without the prior approval of the Probation Officer. This includes access through
   any Internet Service Provider ("ISP"), bulletin board system, or any public or private
   computer network system. Further, defendant shall not have another individual access the
   Internet on defendant's behalf to obtain files or information that defendant is restricted
   from accessing personally, or accept restricted files or information from another person;

8. Defendant shall use only those computers, computer related devices, screen/user names,
   passwords, e-mail accounts, and ISPs approved by the Probation Officer. Computer and
   computer-related devices include, but are not limited to, personal computers, personal
   data assistants (PDAs), Internet appliances, electronic games, and cellular telephones, as
   well as peripheral equipment, that can access, or can be modified to access, the Internet,
   electronic bulletin boards, other computers, or similar media. Defendant shall use any
   approved computers only within the scope of his employment. Defendant shall not access
   a computer for any other purpose. Defendant shall immediately report to the Probation
   Officer any changes in defendant's employment affecting defendant's access and/or use of
   computers or the Internet, including e-mail;

9. All computers, computer-related devices, computer storage media, and peripheral
   equipment used by defendant shall be subject to search and seizure, and subject to the
   installation of search and/or monitoring software and/or hardware, including
   unannounced seizure for the purpose of search. Defendant shall not add, remove,
   upgrade, update, reinstall, repair, or otherwise modify the hardware or software on any
   computers, computer related devices, or peripheral equipment without the prior approval
   of the Probation Officer, nor shall defendant hide or encrypt files or data. Further,
   defendant shall, as requested by the Probation Officer, provide all billing records,

Case 2:09-cr-00617-CAS   Document 58   Filed 06/24/10   Page 3 of 6   Page ID #:293

USA vs.   NAKOULA BASSELEY NAKOULA                          Docket No.:   CR09-617-CAS

including telephone, cable, Internet, satellite, and similar records; and

10.    The defendant shall apply all monies received from income tax refunds to the outstanding court-ordered financial obligation.  In addition, the defendant shall apply all monies received from lottery winnings, inheritance, judgements and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.

Defendant is informed of his right to appeal.

The Court grants the Government's request to dismiss the remaining counts of the Indictment.

The Court hereby recommends that defendant be designated to Lompoc, or as close thereto as possible.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed.  The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

| June 24, 2010 | *Christine A. Snyde* |
|---|---|
| Date | U. S. District Judge/Magistrate Judge |

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Clerk, U.S. District Court

| June 24, 2010 | By | /S/ |
|---|---|---|
| Filed Date | | Catherine M. Jeang, Deputy Clerk |

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

### STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

USA vs.   NAKOULA BASSELEY NAKOULA                    Docket No.:   CR09-617-CAS

1. The defendant shall not commit another Federal, state or local crime;
2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5. the defendant shall support his or her dependents and meet other family responsibilities;
6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7. the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;

10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, for felony cases only: not possess a firearm, destructive device, or any other dangerous weapon.

☐   The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution , however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. §3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

      1. Special assessments pursuant to 18 U.S.C. §3013;
      2. Restitution, in this sequence:
              Private victims (individual and corporate),
              Providers of compensation to private victims,
              The United States as victim;
      3. Fine;
      4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
      5. Other penalties and costs.

Case 2:09-cr-00617-CAS   Document 58   Filed 06/24/10   Page 5 of 6   Page ID #:295

USA vs.   NAKOULA BASSELEY NAKOULA                    Docket No.:   CR09-617-CAS

## SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant.  In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account.  All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses.  Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

## RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

_____    By _____

Date                                    Deputy Marshal

## CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

_____    By _____

Filed Date                              Deputy Clerk

USA vs.   NAKOULA BASSELEY NAKOULA _____   Docket No.:   CR09-617-CAS _____

===============================================

### FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed) _____        _____
       Defendant                                                                    Date


      _____        _____
       U. S. Probation Officer/Designated Witness              Date

*Nakoula B. Nakoula*
*c/o*
*Los Angeles County Sheriff's Department*
*Stanley Mosk Courthouse*
*110 North Grand Avenue Room 525*
*Los Angeles, 90012*

☐ PERSONAL SERVICE: On _____ I served the foregoing documents listed above by personally handing them to

_____

*I declare under penalty of perjury under the law of the United States of America that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.*

Executed on _____ in Los Angeles, California.

_____

**PROOF OF SERVICE**

2

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

    On October 17, 2012 I served the following document(s) described as:

**(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

**(2)   REQUEST FOR JUDICIAL NOTICE**

**(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION**

**(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION**

**(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

**(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION**

**(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

1

on the interested parties in this action by placing true copies thereof addressed as follows:

**Timothy L. Alger**
**Sunita Bali**
**Perkins Coie LLP**
**3150 Porter Drive**
**Palo Alto, CA 94304-1212**
TAlger@perkinscoie.com
sbali@perkinscoie.com

☑       BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on  October 17, 2012 in Los Angeles, California.

Heather Rowland

**NOTICE OF RELATED CASES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

 I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 1511 West Beverly Blvd, Los Angeles, California 90026.

 On _____ I served the following document(s) described as:

**(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

**(2)  REQUEST FOR JUDICIAL NOTICE**

**(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION**

**(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION**

**(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

**(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION**

**(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows: