1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10              **UNITED STATES DISTRICT COURT**

11         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12  CINDY LEE GARCIA, an individual,        Case No. CV12-8315-MWF-(VBKx)

13                  Plaintiff,              **DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

14  vs.

15  NAKOULA BASSELEY
    NAKOULA, an individual also
16  known as SAM BACILE, MARK
    BASSELEY YOUSSEF,
17  ABANOB BASSELEY
    NAKOULA, MATTHEW
18  NEKOLA, AHMED HAMDY,
    AMAL NADA, DANIEL K.
19  CARESMAN, KRITBAG
    DIFRAT, SOBHI BUSHRA,
20  ROBERT BACILY, NICOLA
    BACILY, THOMAS J. TANAS,
21  ERWIN SALAMEH, YOUSSEFF
    M. BASSELEY, and/or MALID
22  AHLAWI; GOOGLE, INC., a
    Delaware Corporation;
23  YOUTUBE, LLC, a California
    limited liability company, and
24  DOES 1 through 10, inclusive.

25                  Defendants.

26

27

28

                                    1

# DECLARATION

## DECLARATION OF M. CRIS ARMENTA

I, M. Cris Armenta, declare:

1.      I am an attorney licensed in the State of California and principal of the Armenta Law Firm, counsel of record for Plaintiff Cindy Lee Garcia in this action. I am a member in good standing before the State Bar of California, and admitted to practice before this Court.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      While in Los Angeles Superior Court on September 20, 2012, for a hearing on Ms. Garcia's state court lawsuit, I was directed by the officers of the Los Angeles County Sheriff's Department and the Los Angeles Police Department to park in a secure underground location and accompanied to the courthouse by law enforcement.  Cindy Lee Garcia and I were escorted to the public hearing by seven armed Los Angeles County Deputy Sheriffs.  Before we walked down any halls or into elevators, areas were checked and secured for threats.   We were accompanied to a secure area of the courthouse before permitted into the general public areas of the courthouse.  While I was in the courtroom, I was approached by the head of security for the Los Angeles Superior Court and warned that we were in grave danger.  He expressed concern for Ms. Garcia, for me personally, and for both of our families, advising that the people who were after Ms. Garcia, and by extension me, "are very patient."  We both were advised to take serious security measures entering and exiting the Los Angeles Superior Court, and with respect to our personal lives and residences.  I was advised to exercise extreme caution in the Los Angeles Superior Court even if I was to appear there for unrelated matters.  I have personally taken security measures and informed my local police department and Sheriff's office and my personal security company of the threats and warnings my client and I have received with respect to our safety.

1

3.       Counsel for YouTube has stated in open court that it is Cindy Lee Garcia's actions in going public with that have raised her profile and placed her in danger.  My response to Mr. Alger was to explain that it is likely her public appearances condemning the film that have kept her out of harm's way so far since she was originally contacted by the media and identified prior to her voluntarily going public.    Mr. Alger also asked me if Ms. Garcia had signed an actor release for participation in filing – I assured him that she did not and that the other actors with whom I have spoken personally corroborate this non-event in what appears to be an extremely low-budget film.

4.       On October 2, 2012, I spoke directly with counsel for Defendant Google and YouTube.  I was told that the, despite the issuance of several takedown notices pursuant to the Digital Millennium Copyright Act, that the *Innocence of Muslims* video trailer was still on YouTube and that the decision to keep the video on the site was made "at the highest levels" to keep the content up.  Tim Alger, counsel for YouTube and Google, further informed me that, despite the fact that YouTube's takedown agent had specifically asked for legal reasoning as why the content should be pulled down, that ***YouTube was not obligated to respond to Garcia's First Substantive Response***.  I remarked that the non-response was "highly unusual" and that it is Cindy Lee Garcia's position that YouTube "has lost any safe harbor protection."

5.       Indeed, in other, informal conversations with counsel for Google and YouTube, counsel seems to have been playing "hide the ball" in that until I insisted on a meet and confer conference pursuant to the Local Rules, in preparation for filing an application for this temporary restraining order, they refused to advise as to Google and YouTube's substantive reason for not disabling the infringing content. In those conversations, counsel indicated to me that they have difficulty believing

1  that Mr. Nakoula neglected to obtain a release from Ms. Garcia with respect to her

2  copyright claims over her performance.

3       6.       In compliance with the Local Rules, I met and conferred with counsel

4  for YouTube and Google on October 4, 2012 at 4:00 p.m., prior to finalization and

5  filing of this Application.  For the first time, defense counsel revealed their

6  substantive position: that *Innocence of Muslims* is a "joint work" between Cindy Lee

7  Garcia and Defendant Nakoula pursuant to the United States Copyright Act.  A copy

8  of *Innocence of Muslims* posted by Sam Bacile, as well as many others on YouTube,

9  is attached hereto as Exhibit A.

10      7.       I have copied Tim Alger on the communications between Cindy Lee

11  Garcia's DMCA takedown agent, and YouTube's takedown agent, so that counsel

12  would be well informed of the communications and legal discussions.  Efforts to

13  secure the disabling of the content began on September 25, 2012 and ended on

14  October 3, 2012 at 1:23 p.m., when YouTube finally stated unequivoically that it

15  would not disable the content.

16      8.       Attached as Exhibit B are the published guidelines of YouTube with

17  respect to its treatment of hate speech and whether YouTube will continue to host

18  videos that have been identified as hate speech.

19      9.       Attached as Exhibit C are the public comments of Google Chairman

20  Eric Schmidt in which he acknowledged the anti-hate-speech guidelines of

21  YouTube, but stated, in reference to the controversy of YouTube's decision to keep

22  *Innocence of Muslims* on its website: "We believe the answer to bad speech is more

23  speech . . . It'll stay up."   He also discusses the efforts YouTube made to block the

24  film in particular countries.

25      10.      YouTube sold to Google for $1.85 billion.   It is clear from the party

26  admissions of YouTube's management team and founders that's value is derived

27  from generating "views" on YouTube of its content, even if that content is

28

1    copyrighted.  The founders of YouTube acknowledged that if they removed all
2    copyrighted content from their site, their "views" would drop to 20% of existing
3    views generated.  Attached as Exhibit D are true and correct copies of emails
4    exchanged between the YouTube founders and accompanied with the authentication
5    declaration by Viacom counsel in the <u>Viacom v. Google</u> case decided recently by
6    the Second Circuit Court of Appeals.

7          11.    On October 15, 2012, at approximately 12:30 p.m. pst, I spoke to
8    attorney Steve Seiden, the criminal defense attorney representing Mr. Nakoula.  The
9    purpose of my call was to inquire whether or not Mr. Nakoula had accepted my
10   client's settlement offer in this litigation.  During the call, Mr. Seiden informed me
11   that my client is pursuing the wrong person.  When I asked him who the right person
12   was, he responded, "the one that owns the rights to the film."  I asked him who that
13   was and he responded that is was not Nakoula, but would not tell me who the other
14   person or persons were that own the film.  I immediately set the email to Tim Alger
15   attached hereto as Exhibit E.

16         I declare under penalty of perjury under the laws of the United States of
17   America that the foregoing is true and correct.

18         Executed on this 16th day of October, 2012.

20                                         M. Cris Armenta



EXHIBIT A

EXHIBIT B

# What is Hateful Content?

Hateful Content is videos, comments or channel information which contain "Hate speech". "Hate speech" refers to content that promotes hatred against members of a protected group. Protected groups include, but are not limited to, race or ethnic origin, religion, disability, gender, age, veteran status, and sexual orientation/gender identity.

Sometimes there is a fine line between what is and what is not considered hate speech. For instance, it is generally okay to criticize a nation, but not okay to make insulting generalizations about people of a particular nationality.

- Report channels and comments through the Help & Safety Tool

Keep in mind that not everything that is mean or insulting is considered hate speech.

## 💡 Help & Safety Tool

**Tips for confronting hate speech on YouTube from the Anti-Defamation League.**

✔ Flag: Flag the offensive video for review by the YouTube team. Make sure to include why you thought the video was hateful.

✔ Think: Perspective is crucial. Think before you respond, and try to respond in a thoughtful, careful manner.

✔ Speak: Post videos or comments that oppose the offensive point of view. Let the YouTube community see a competing perspective.

✔ Applaud: Don't forget to post positive comments on videos that share positive messages.

✔ Talk: Talk to your friends, teachers, or family about what you've seen.

✔ Learn: Many groups publish information about combating particular kinds of prejudice, such as the Anti-Defamation League's resources on anti-Semitism.

✔ E-mail: Notify groups like the Anti-Defamation League, which keep track of trends in hate speech.

✔ Act: Take active steps to combat prejudice online and offline.



## FAQ:

**Q: Is it hate speech if they aren't talking about a protected group?**
**A:** No, it is not considered hate speech if a protected group is not involved. So if someone is making insults towards you personally that are not considered hate speech, use the Help & Safety Tool.

**Q: Why wasn't the video or comment I reported to YouTube removed?**
**A:** The YouTube Team reviews all videos flagged and reports made through the Help & Safety Tool. So if a video you have flagged, or comment you have reported hasn't been removed, it's because it doesn't violate our hate speech policies. We encourage free speech and defend everyone's right to express unpopular points of view, and keep in mind that not everything that is mean or insulting is considered hate speech.

⊕ **United Kingdom**

⊕ **Canada**

⊕ _____

Hateful Content - YouTube Help

**Australia**

Help - About - Copyright - Uploaders & Partners - Advertising - Developers - Safety - Privacy - Terms

© 2012 YouTube, LLC - Change language: English (US)



# EXHIBIT C

EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VIACOM INTERNATIONAL INC.,<br>COMEDY PARTNERS,<br>COUNTRY MUSIC TELEVISION, INC.,<br>PARAMOUNT PICTURES CORPORATION,<br>and BLACK ENTERTAINMENT TELEVISION<br>LLC,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>YOUTUBE INC., YOUTUBE, LLC, and<br>GOOGLE, INC.,<br><br>                    Defendants. | Case No. 1:07-cv-02103 (LLS)<br>(Related Case No. 1:07-cv-03582 (LLS))<br><br>**DECLARATION OF WILLIAM M.<br>HOHENGARTEN IN SUPPORT OF<br>VIACOM'S MOTION FOR<br>PARTIAL SUMMARY JUDGMENT** |

I, William M. Hohengarten, hereby declare as follows:

1.      I am a partner with the law firm Jenner & Block LLP and represent the plaintiffs in the above-captioned action ("Viacom"). I submit this declaration in support of Viacom's Motion for Partial Summary Judgment on Liability and Inapplicability of the Digital Millennium Copyright Act Safe Harbor Defense. Attached to this declaration are Exhibits referenced in Viacom's Memorandum of Law and Viacom's Statement of Undisputed Facts in Support of Viacom's Motion for Partial Summary Judgment. I make this declaration based on personal knowledge, except where otherwise noted herein.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 15 of 116   Page ID
#:522
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 2 of 58

### *Fung* **Slip Opinion**

2.      Attached as Exhibit 1 for the Court's convenience is a true and correct copy of the

slip opinion in *Columbia Pictures Industries, Inc. v. Gary Fung*, No. CV 06-5578 SVW (C.D.

Cal. Dec. 21, 2009).

### **Solow Declaration**

3.      Attached as Exhibit 2 are the Declaration of Warren Solow in Support of

Plaintiffs' Motion for Partial Summary Judgment, dated March 3, 2010, and Exhibits A-G

thereto.

### **Sum of YouTube View Count Data for Viacom Clips in Suit**

4.      During discovery, Viacom identified to Defendants the infringing video clips of

Viacom's copyrighted works that have appeared on YouTube without authorization and that are

at issue in this lawsuit ("Clips in Suit"). The Clips in Suit are listed in Exhibits F and G to the

Declaration of Warren Solow, which is Exhibit 2 to this Declaration. In response to discovery

requests, Defendants have produced data showing the number of times each Clip in Suit was

viewed on the YouTube website ("YouTube View Count Data"). Pursuant to Fed. R. Evid. §

1006, an employee of Jenner & Block LLP, working at my direction, summed the YouTube

View Count Data for all Clips in Suit and arrived at a figure of over 507 million views.

### **Documents Produced by Defendants**

5.      The documents listed below in paragraphs 6 through 201 are true and correct

copies of documents produced by Defendants in this action, and accordingly are marked by

Defendants with a Bates number beginning with the prefix "GOO001-".

6.      Attached as Exhibit 3 is a true and correct copy of a document produced by

Defendants marked with the Bates range GOO001-00303096-104.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 16 of 116   Page ID
#:523
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 3 of 58

7.      Attached as Exhibit 4 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00011355, a true and correct copy of an associated email attachment marked with the Bates number GOO001-00011356, and a true and correct copy of an associated email attachment marked with the Bates number GOO001-00011357.  These documents were introduced as Exhibit 12 at the Rule 30(b)(6) deposition of David King, Exhibit 18 at the deposition of Chris Maxcy, and Exhibit 30 at the deposition of David Eun.

8.      Attached as Exhibit 5 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02757578.

9.      Attached as Exhibit 6 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00660588.  This email exchange was introduced as Exhibit 8 at the deposition of Chad Hurley and as Exhibit 15 at the deposition of Zahavah Levine.

10.     Attached as Exhibit 7 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01907664.

11.     Attached as Exhibit 8 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01424049-50.

12.     Attached as Exhibit 9 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-05951723-37.

13.     Attached as Exhibit 10 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02482760.  This email exchange was introduced as Exhibit 2 at the deposition of Cuong Do.

14.     Attached as Exhibit 11 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00561567-82.  This document was introduced as Exhibit 12 at the deposition of Micah Schaffer.

15.     Attached as Exhibit 12 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00744094, and a true and correct associated email attachment produced by Defendants marked with the Bates number range GOO001-00744095-152.

16.     Attached as Exhibit 13 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00044974-82.  This document was introduced as Exhibit 7 at the deposition of Heather Gillette.

17.     Attached as Exhibit 14 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-07167907-08.

18.     Attached as Exhibit 15 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00504044-45.

19.     Attached as Exhibit 16 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00629095.  This email exchange was introduced as Exhibit 7 at the deposition of Brent Hurley, Exhibit 1 at the deposition of Cuong Do, and Exhibit 8 at the deposition of Zahavah Levine.

20.     Attached as Exhibit 17 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00629474.

21.     Attached as Exhibit 18 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00839842-46.

22.     Attached as Exhibit 19 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00007027-29.

23.     Attached as Exhibit 20 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02403826-27.

24.     Attached as Exhibit 21 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02824049-52.

25.     Attached as Exhibit 22 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00762173-198.  This document was introduced as Exhibit 13 at the deposition of Brent Hurley.

26.     Attached as Exhibit 23 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-07728393-95.

27.     Attached as Exhibit 24 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00522244.  This email exchange was introduced as Exhibit 5 at the deposition of Micah Schaffer.

28.     Attached as Exhibit 25 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-05172407.

29.     Attached as Exhibit 26 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00630641, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number GOO001-00630642.  These documents were introduced as Exhibit 20 at the deposition of Brent Hurley.

30.     Attached as Exhibit 27 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03060898-904.

31.      Attached as Exhibit 28 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00558783-84.

32.      Attached as Exhibit 29 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02761607-11.

33.      Attached as Exhibit 30 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00420319, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number GOO001-00420320-27.

34.      There is no Exhibit 31 to this Declaration, and that exhibit number is therefore intentionally left blank.

35.      Attached as Exhibit 32 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03631419.

36.      Attached as Exhibit 33 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-03406085, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number GOO001-03406086.

37.      Attached as Exhibit 34 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00988969-72.  This email exchange was introduced as Exhibit 15 at the deposition of Heather Gillette and as Exhibit 18 at the deposition of Kevin Donahue.

38.      Attached as Exhibit 35 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00953867-69.  This email exchange was introduced as Exhibit 14 at the deposition of Heather Gillette.

6

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 20 of 116   Page ID
#:527
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 7 of 58

39.     There is no Exhibit 36 to this Declaration, and that exhibit number is therefore intentionally left blank.

40.     Attached as Exhibit 37 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01627276-79.  This email exchange was introduced as Exhibit 2 at the Rule 30(b)(6) deposition of Chris Maxcy.

41.     Attached as Exhibit 38 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-03045959, and a true and correct copy of an excerpt from an associated email attachment produced by Defendants marked with the Bates number range GOO001-03045960-8245.

42.     Attached as Exhibit 39 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00794737, and a true and correct copy of an associated email attachment marked with the Bates number range GOO001-00794738-58.  These documents were introduced as Exhibit 15 at the deposition of David Eun, Exhibit 15 at the deposition of David Drummond, Exhibit 6 at the deposition of Eric Schmidt, Exhibit 4 at the deposition of Bhanu Narasimhan, and Exhibit 3 at the deposition of Peter Chane.

43.     There is no Exhibit 40 to this Declaration, and that exhibit number is therefore intentionally left blank.

44.     Attached as Exhibit 41 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03114019.  This email exchange was introduced as Exhibit 3 at the deposition of Bhanu Narasimhan.

45.     Attached as Exhibit 42 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00802317.

46.     Attached as Exhibit 43 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-06555098-99.  This email exchange was introduced as Exhibit 8 at the deposition of Bhanu Narasimhan.

47.     Attached as Exhibit 44 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00990640, and a true and correct copy of an associated email attachment marked with the Bates number GOO001-00990641.  These documents were introduced as Exhibit 5 at the deposition of Eric Schmidt, Exhibit 11 at the deposition of Wendy Chang, Exhibit 14 at the deposition of David Drummond, Exhibit 2 at the deposition of Larry Page, and Exhibit 2 at the deposition of Peter Chane.

48.     Attached as Exhibit 45 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03592968-69.  This email exchange was introduced as Exhibit 4 at the deposition of Peter Chane.

49.     Attached as Exhibit 46 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-03594244.  This email exchange was introduced as Exhibit 8 at the deposition of Peter Chane.

50.     Attached as Exhibit 47 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-05084213.

51.     Attached as Exhibit 48 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00562962-65.  This email exchange was introduced as Exhibit 12 at the deposition of Patrick Walker.

52.     Attached as Exhibit 49 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00566289.  This email exchange was introduced as Exhibit 12 at the deposition of Peter Chane.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 22 of 116   Page ID
#:529
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 9 of 58

53.     Attached as Exhibit 50 is a true and correct copy of an email exchange produced
by Defendants marked with the Bates number range GOO001-00495746-57.  This email
exchange was introduced as Exhibit 6 at the deposition of David Eun and as Exhibit 9 at the
deposition of Peter Chane.

54.     Attached as Exhibit 51 are a true and correct copy of an email exchange produced
by Defendants marked with the Bates number GOO001-00496021, and a true and correct copy
of an associated email attachment marked with the Bates number range GOO001-00496022-62.
These documents were introduced as Exhibit 9 at the deposition of David Eun, Exhibit 9 at the
deposition of Omid Kordestani, and Exhibit 13 at the deposition of Peter Chane.  The email
attachment was introduced as Exhibit 7 at the deposition of Bhanu Narasimhan.

55.     Attached as Exhibit 52 are a true and correct copy of an email exchange produced
by Defendants marked with the Bates number GOO001-00496614, and a true and correct copy
of an associated email attachment marked with the Bates number range GOO001-00496615-47.
These documents were introduced as Exhibit 8 at the deposition of Eric Schmidt, Exhibit 10 at
the deposition of Omid Kordestani, Exhibit 18 at the deposition of David Drummond, Exhibit 7
at the deposition of Sergey Brin, Exhibit 16 at the deposition of Peter Chane, and Exhibit 2 at the
deposition of Jonathan Rosenberg.

56.     Attached as Exhibit 53 is a true and correct copy of an email exchange produced
by Defendants marked with the Bates number GOO001-01495915-18.

57.     Attached as Exhibit 54 is a true and correct copy of an email exchange produced
by Defendants marked with the Bates number range GOO001-02055019-20.  This email
exchange was introduced as Exhibit 35 at the deposition of David Drummond.

58.     Attached as Exhibit 55 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02693804, and a true and correct copy of an associated email attachment marked with Bates number range GOO001-02693808-13.

59.     Attached as Exhibit 56 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-05150988.

60.     Attached as Exhibit 57 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-04430721, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-04430722-722.003.  These documents were introduced as Exhibit 10 at the deposition of Peter Chane.

61.     Attached as Exhibit 58 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02361246, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-02361247-48.

62.     Attached as Exhibit 59 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00496065, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00496066-94.  These documents were introduced as Exhibit 8 at the deposition of David Eun and as Exhibit 13 at the deposition of Wendy Chang.

63.     Attached as Exhibit 60 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00502665-93.  This document was introduced as Exhibit 10 at the deposition of David Eun and as Exhibit 5 at the deposition of Tim Armstrong.

10

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 24 of 116   Page ID
#:531
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 11 of 58

64.     Attached as Exhibit 61 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00482516-18.  This email exchange was introduced as Exhibit 13 at the deposition of Patrick Walker.

65.     Attached as Exhibit 62 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00496651-54.  This email exchange was introduced as Exhibit 12 at the deposition of David Eun, Exhibit 8 at the deposition of Omid Kordestani, Exhibit 17 at the deposition of David Drummond, Exhibit 7 at the deposition of Eric Schmidt, Exhibit 3 at the deposition of Larry Page, Exhibit 5 at the deposition of Sergey Brin, and Exhibit 3 at the deposition of Jonathan Rosenberg.

66.     Attached as Exhibit 63 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00791569, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00791570-611.  These documents were introduced as Exhibit 15 at the deposition of Wendy Chang, Exhibit 17 at the deposition of Larry Page, and Exhibit 4 at the deposition of Jonathan Rosenberg.

67.     Attached as Exhibit 64 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00563430-33.  This email exchange was introduced as Exhibit 14 at the deposition of David Eun, Exhibit 19 at the deposition of David Drummond, Exhibit 6 at the deposition of Sergey Brin, Exhibit 17 at the deposition of Peter Chane, and Exhibit 5 at the deposition of Jonathan Rosenberg.

68.     Attached as Exhibit 65 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00563469-70.  This email exchange was introduced as Exhibit 11 at the deposition of Patrick Walker.

11

69.     Attached as Exhibit 66 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00792297.  According to the metadata produced by Defendants, this email exchange was produced from the files of Google co-founder Larry Page.

70.     Attached as Exhibit 67 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-04736644-47.

71.     Attached as Exhibit 68 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03548410-12.

72.     Attached as Exhibit 69 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02021241-44.

73.     Attached as Exhibit 70 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01395950.  This email exchange was introduced as Exhibit 22 at the deposition of Chad Hurley and as Exhibit 12 at the deposition of Eric Schmidt.

74.     Attached as Exhibit 71 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01271624-27.  This email exchange was introduced as Exhibit 10 at the deposition of Heather Gillette.

75.     Attached as Exhibit 72 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-03383629.

76.     Attached as Exhibit 73 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01364485.  This document was introduced as Exhibit 15 at the deposition of Michael Solomon.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 26 of 116   Page ID
#:533
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 13 of 58

77.     Attached as Exhibit 74 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-07155101.

78.     Attached as Exhibit 75 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00217336.

79.     Attached as Exhibit 76 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-03037036, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-03037037-65.  These documents were introduced as Exhibit 3 at the deposition of Shashi Seth.

80.     Attached as Exhibit 77 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-05154818.

81.     Attached as Exhibit 78 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-05943950, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-05943951-59.  These documents were introduced as Exhibit 12 at the deposition of Shashi Seth.

82.     Attached as Exhibit 79 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01016844-45.  This email exchange was introduced as Exhibit 4 at the deposition of Shashi Seth.

83.     Attached as Exhibit 80 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00225766-68.  This email exchange was introduced as Exhibit 39 at the deposition of Wendy Chang.

84.     Attached as Exhibit 81 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02414976-79, and a true and correct copy of an associated email attachment marked with the Bates number GOO001-02414980.  These documents were introduced as Exhibit 10 at the deposition of Shashi Seth.

85.     Attached as Exhibit 82 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-03241189-90, and a true and correct copy of an associated email attachment marked with the Bates number range GOO001-03241191-92.  These documents were introduced as Exhibit 11 at the deposition of Shashi Seth.

86.     Attached as Exhibit 83 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00747816, and a true and correct copy of an associated email attachment marked with the Bates number range GOO001-00747817-989.  These documents were introduced as Exhibit 5 at the deposition of Shashi Seth.

87.     Attached as Exhibit 84 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02201131, and true and correct copies of excerpts from an associated email attachment marked with the Bates number range GOO001-02201132-132.0228.

88.     Attached as Exhibit 85 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00827503-05.

89.     Attached as Exhibit 86 is a true and correct copy of a document produced by Defendants marked with the Bates number range     GOO001-01998134-50.

90.     Attached as Exhibit 87 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00829227-28, and a true and

correct copy of an associated email attachment marked with the Bates number range GOO001-00829229-229.007.

91.     Attached as Exhibit 88 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00797774-77.

92.     Attached as Exhibit 89 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-05942431-32.

93.     Attached as Exhibit 90 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02057400-02.

94.     Attached as Exhibit 91 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00984825-27, a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00984828-33, and a true and correct copy of an associated email attachment marked with the Bates number range GOO001-00984834-40.  These documents were introduced as Exhibit 26 at the deposition of Omid Kordestani.

95.     Attached as Exhibit 92 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00746418.  This email exchange was introduced as Exhibit 27 at the deposition of Chris Maxcy.

96.     Attached as Exhibit 93 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00751570-71.

97.     Attached as Exhibit 94 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00869300.

98.     Attached as Exhibit 95 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02244041-57.

99.     There is no Exhibit 96 to this Declaration, and that exhibit number is therefore intentionally left blank.

100.     There is no Exhibit 97 to this Declaration, and that exhibit number is therefore intentionally left blank.

101.     There is no Exhibit 98 to this Declaration, and that exhibit number is therefore intentionally left blank.

102.     There is no Exhibit 99 to this Declaration, and that exhibit number is therefore intentionally left blank.

103.     There is no Exhibit 100 to this Declaration, and that exhibit number is therefore intentionally left blank.

104.     There is no Exhibit 101 to this Declaration, and that exhibit number is therefore intentionally left blank.

105.     There is no Exhibit 102 to this Declaration, and that exhibit number is therefore intentionally left blank.

106.     There is no Exhibit 103 to this Declaration, and that exhibit number is therefore intentionally left blank.

107.     Attached as Exhibit 104 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00330654, and an associated email attachment produced by Defendants marked with the Bates number range GOO001-00330655-59.  These documents were introduced as Exhibit 17 at the deposition of Wendy Chang.

108.     Attached as Exhibit 105 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-05164894-927.

16

109.   Attached as Exhibit 106 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00330681, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00330682-84.  These documents were introduced as Exhibit 18 at the deposition of Wendy Chang.

110.   Attached as Exhibit 107 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00633965-92.

111.   Attached as Exhibit 108 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-05920388-419.

112.   Attached as Exhibit 109 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00763354, a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00763355-63, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00763364-76.  These documents were introduced as Exhibit 14 at the deposition of Brent Hurley.

113.   Attached as Exhibit 110 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00658376-77, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-00658378-84.  These documents were introduced as Exhibit 16 at the deposition of Brent Hurley and as Exhibit 12 at the deposition of David Drummond.

114.   Attached as Exhibit 111 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02656593-94.  This email exchange was introduced as Exhibit 9 at the deposition of David Drummond.

17

115.    Attached as Exhibit 112 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-002338150-84.

116.    Attached as Exhibit 113 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02439050-52, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-02439053.  These documents were introduced as Exhibit 21 at the deposition of Omid Kordestani.

117.    Attached as Exhibit 114 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00255239-42.  This email exchange was introduced as Exhibit 13 at the deposition of Shashi Seth.

118.    Attached as Exhibit 115 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00237661-63.  This email exchange was introduced as Exhibit 22 at the deposition of Omid Kordestani.

119.    Attached as Exhibit 116 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01295801, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-01295802.  These documents were introduced as Exhibit 20 at the deposition of Omid Kordestani.

120.    Attached as Exhibit 117 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-08030008-10.

121.    Attached as Exhibit 118 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00421229-34.  The metadata produced by Defendants indicate this document was last modified on February 3, 2006.

122.     Attached as Exhibit 119 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02826891-95.  The metadata produced by Defendants indicate this document was last modified on March 14, 2006.

123.     Attached as Exhibit 120 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00824855-59.  The metadata produced by Defendants indicate this document was last modified on July 26, 2006.

124.     Attached as Exhibit 121 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02829970-74.  The metadata produced by Defendants indicate this document was last modified on August 18, 2006.

125.     There is no Exhibit 122 to this Declaration, and that exhibit number is therefore intentionally left blank.

126.     There is no Exhibit 123 to this Declaration, and that exhibit number is therefore intentionally left blank.

127.     Attached as Exhibit 124 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-07056597-603.  The metadata produced by Defendants indicate this document was last modified on February 26, 2007.

128.     Attached as Exhibit 125 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-01232697-703.  The metadata produced by Defendants indicate this document was last modified on June 19, 2007.

129.     Attached as Exhibit 126 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02768034-35.

130.     Attached as Exhibit 127 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-01027757-73.

131.    Attached as Exhibit 128 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01535521-24.

132.    Attached as Exhibit 129 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-04431787-88.

133.    Attached as Exhibit 130 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00509640.  This email exchange was introduced as Exhibit 48 at the deposition of Chad Hurley and as Exhibit 10 at the deposition of Kevin Donahue.

134.    Attached as Exhibit 131 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00222797-803.

135.    Attached as Exhibit 132 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02754251.  This email exchange was introduced as Exhibit 3 at the deposition of Franck Chastagnol.

136.    Attached as Exhibit 133 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02027618-19.  This email exchange was introduced as Exhibit 14 at the deposition of Shashi Seth.

137.    Attached as Exhibit 134 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00561601-21.  This document was introduced as Exhibit 27 at the deposition of Zahavah Levine.

138.    Attached as Exhibit 135 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-08643428.

139.    Attached as Exhibit 136 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02493069-74.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 34 of 116   Page ID
#:541
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 21 of 58

140.    Attached as Exhibit 137 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02930251-52, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-02930253-82.

141.    Attached as Exhibit 138 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02604786-87, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-02604788-91.

142.    Attached as Exhibit 139 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-01950611-18.  This document was introduced as Exhibit 8 at the Rule 30(b)(6) deposition of David King.

143.    Attached as Exhibit 140 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-09612201.

144.    Attached as Exhibit 141 are a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-03427120-21, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-03427122-43.  These documents were introduced as Exhibit 9 at the deposition of Vance Ikezoye and as Exhibit 24 at the deposition of Chad Hurley.

145.    Attached as Exhibit 142 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02867502-05.

146.    Attached as Exhibit 143 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02493328-37.

147.    Attached as Exhibit 144 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01511226-27.  This email exchange was introduced as Exhibit 27 at the deposition of Chad Hurley, Exhibit 31 at the deposition of David Drummond, Exhibit 18 at the deposition of Eric Schmidt, Exhibit 14 at the deposition of Larry Page, and Exhibit 14 at the deposition of Sergey Brin.

148.    Attached as Exhibit 145 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02506820-28.0006.  Defendants produced this document with apparent errors in the document's images.

149.    Attached as Exhibit 146 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-01202238-43.  This document was introduced as Exhibit 6 at the deposition of Chris Maxcy and as Exhibit 2 at the deposition of Franck Chastagnol.

150.    There is no Exhibit 147 to this Declaration, and that exhibit number is therefore intentionally left blank.

151.    Attached as Exhibit 148 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01870875, a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-01870876-78, a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-01870879-81, and a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range 01870882-84.

152.    Attached as Exhibit 149 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02826036-46.  This document was

22

introduced as Exhibit 23 at the deposition of David Drummond, Exhibit 15 at the deposition of Eric Schmidt, Exhibit 11 at the deposition of Larry Page, and Exhibit 8 at the deposition of Jonathan Rosenberg.

153.    There is no Exhibit 150 to this Declaration, and that exhibit number is therefore intentionally left blank.

154.    There is no Exhibit 151 to this Declaration, and that exhibit number is therefore intentionally left blank.

155.    Attached as Exhibit 152 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02874326-27.

156.    Attached as Exhibit 153 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02240369-411.  This document was introduced as Exhibit 18 at the deposition of Omid Kordestani and as Exhibit 27 at the deposition of David Drummond.

157.    Attached as Exhibit 154 are a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-02524911, a true and correct copy of an associated email attachment produced by Defendants marked with the Bates number range GOO001-02524912-63, and a true and correct copy of an associated email attachment produced by Defendants marked with Bates number range GOO001-02524964-5010.  This document was introduced as Exhibit 28 at the deposition of David Drummond.  Portions of this document were introduced as Exhibit 19 at the deposition of Omid Kordestani.

158.    Attached as Exhibit 155 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02241782-835.  This document was introduced as Exhibit 5 at the deposition of Zahavah Levine.

23

159.   Attached as Exhibit 156 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02354601-05.

160.   Attached as Exhibit 157 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-09612078-79.

161.   Attached as Exhibit 158 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-05175716-18.

162.   Attached as Exhibit 159 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-00889264-81.

163.   Attached as Exhibit 160 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-09684557-79.

164.   Attached as Exhibit 161 are true and correct copies of excerpts from a document produced by Defendants marked with the Bates number range GOO001-02276277-384.

165.   Attached as Exhibit 162 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-07726987-7009.

166.   Attached as Exhibit 163 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02243231-53.

167.   There is no Exhibit 164 to this Declaration, and that exhibit number is therefore intentionally left blank.

168.   Attached as Exhibit 165 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02242506-23.

169.   Attached as Exhibit 166 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02242907-24.

170.    Attached as Exhibit 167 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02392607-43.  This document was introduced as Exhibit 5 at the deposition of Jim Patterson.

171.    Attached as Exhibit 168 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-06176212-24.

172.    Attached as Exhibit 169 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-06176368-86.

173.    Attached as Exhibit 170 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02552363-70.

174.    Attached as Exhibit 171 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-00010746.  This email exchange was introduced as Exhibit 21 at the deposition of Chris Maxcy and as Exhibit 3 at the deposition of Jim Patterson.

175.    Attached as Exhibit 172 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00243149-52.

176.    Attached as Exhibit 173 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-09684201-21.

177.    Attached as Exhibit 174 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02338330-43.

178.    Attached as Exhibit 175 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01177848.

179.    Attached as Exhibit 176 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00508644-47.  This email

exchange was introduced as Exhibit 5 at the deposition of Kevin Donahue and as Exhibit 11 at the deposition of Brent Hurley.

180.   Attached as Exhibit 177 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-09531942-68.

181.   Attached as Exhibit 178 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-06147947-73.

182.   Attached as Exhibit 179 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-02034326-30.

183.   Attached as Exhibit 180 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-06811230-34.

184.   Attached as Exhibit 181 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00827716-17.

185.   Attached as Exhibit 182 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02866493-517.

186.   Attached as Exhibit 183 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00718495-98.

187.   Attached as Exhibit 184 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-06361166-79.  Defendants produced this document in a format that is difficult to read.  Despite Viacom's request that Defendants produce a corrected, readable version of this document, Defendants failed to do so.

188.   Attached as Exhibit 185 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-01949763-65.

189.    Attached as Exhibit 186 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-09684681-719.  Despite repeated requests by Viacom's counsel over many months during discovery, Defendants failed to produce this document until four days before the filing of Viacom's Motion for Partial Summary Judgment.

190.    Attached as Exhibit 187 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-09684647-66.  Despite repeated requests by Viacom's counsel over many months during discovery, Defendants failed to produce this document until four days before the filing of Viacom's Motion for Partial Summary Judgment.

191.    Attached as Exhibit 188 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-09684752-818.  Despite repeated requests by Viacom's counsel over many months during discovery, Defendants failed to produce this document until four days before the filing of Viacom's Motion for Partial Summary Judgment.

192.    Attached as Exhibit 189 is a true and correct copy of a document produced by Defendants marked with the Bates number GOO001-00746412.

193.    Attached as Exhibit 190 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-06525907-09.

194.    Attached as Exhibit 191 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-00923210-12.  This email exchange was introduced as Exhibit 8 at the deposition of Patrick Walker and as Exhibit 1 at the deposition of David Eun.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 41 of 116   Page ID
#:548
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 28 of 58

195.    Attached as Exhibit 371 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-01529251.

196.    Attached as Exhibit 372 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02316969-72.  This document was introduced as Exhibit 1 at the deposition of Nicole Wong.

197.    Attached as Exhibit 373 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-02502815-19.  This document was introduced as Exhibit 16 at the deposition of Eric Schmidt, Exhibit 25 at the deposition of David Drummond, Exhibit 12 at the deposition of Larry Page, and Exhibit 11 at the deposition of Sergey Brin.

198.    Attached as Exhibit 374 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-06010126-31.

199.    Attached as Exhibit 375 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number GOO001-06669529.

200.    Attached as Exhibit 378 is a true and correct copy of a document produced by Defendants marked with the Bates number range GOO001-07181365-67.

201.    Attached as Exhibit 382 is a true and correct copy of an email exchange produced by Defendants marked with the Bates number range GOO001-08050272-75.  This email exchange was introduced as Exhibit 6 at the deposition of Kent Walker.

**Instant Message Conversation Transcripts Produced by Defendants**

202.    In the course of discovery, Defendants produced transcripts of instant message conversations.  Like the other documents Defendants produced, these transcripts of instant message conversations are marked with Bates numbers beginning with the prefix "GOO001-".

203.    Defendants produced these instant message transcripts in HTML format, which is difficult to read.  An employee of Jenner & Block LLP, working at my direction, generated more easily readable versions of the instant message conversation transcripts by opening them in an ordinary Internet browser.  Those versions reflect the manner in which they would be seen by the participants in the instant message conversation.  This readable format does not alter the content of the instant message discussions in any way.  For the Court's convenience, each exhibit listed below in paragraphs 204 through 217 that contains the transcript of an instant message conversation includes (a) the readable version of the transcript of the instant message conversation generated by a Jenner & Block LLP employee acting at my direction; and (b) the original transcript of the same instant message conversation as produced by Defendants.  In order to ensure the protection of potentially private information of Defendants' employees, Jenner & Block LLP employees, at my direction, have redacted certain personal and irrelevant material from these instant message conversation transcripts.

204.    Attached as Exhibit 192 is a true and correct copy of the instant message conversation transcript produced by Defendants marked with the Bates number range GOO001-00507525-32.  The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.  This instant message conversation was introduced as Exhibit 3 and as Exhibit 4 at the deposition of Maryrose Dunton.

205.    Attached as Exhibit 193 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-00507535-40.  The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.  This instant message conversation was introduced as Exhibit 5 and as Exhibit 15 at the deposition of Maryrose Dunton.

29

206.    Attached as Exhibit 194 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-00507405-07. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

207.    Attached as Exhibit 195 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-01931840-51. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

208.    Attached as Exhibit 196 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-07585952-93. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

209.    Attached as Exhibit 197 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-00507331-43. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

210.    Attached as Exhibit 198 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-01931799-811. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

211.    Attached as Exhibit 199 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-02363217-

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 44 of 116   Page ID
#:551
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 31 of 58

19. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

212.    Attached as Exhibit 200 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-07738864-65. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

213.    Attached as Exhibit 201 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-00829681-94. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*. This instant message conversation was introduced as Exhibit 19 and as Exhibit 20 at the deposition of Maryrose Dunton.

214.    Attached as Exhibit 202 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-00829702-18. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*. This instant message conversation was introduced as Exhibit 21 and as Exhibit 22 at the deposition of Maryrose Dunton.

215.    Attached as Exhibit 203 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-07169720-33. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

216.    Attached as Exhibit 376 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-07169708-

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 45 of 116   Page ID
#:552
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 32 of 58

19. The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

217.    Attached as Exhibit 377 is a true and correct copy of the instant message conversation produced by Defendants marked with the Bates number range GOO001-07169928-43.  The transcript produced by Defendants is preceded by a readable version generated in the manner described in paragraph 203 *supra*.

## Documents Produced by YouTube Co-Founder Jawed Karim

218.    In response to a subpoena issued by Viacom in this action on December 7, 2007, YouTube co-founder Jawed Karim produced documents on May 16 and 21, 2008.  The documents that Karim produced are marked with Bates numbers beginning with the prefix "JK".

219.    In his deposition, Mr. Karim testified that the documents marked with the Bates prefix "JK" were "all documents produced as a result of, you know, my involvement with YouTube."  He also testified that "the e-mails, you know, any e-mails that -- that I wrote and received, those were all in my e-mail file," and explained that the e-mails came from two accounts:  "my personal e-mail kind of early on, before there was a YouTube," and "then there also was the e-mails I used from the YouTube e-mail account."  *See* Exhibit 313 hereto (Karim Dep.) at 28:22-29:21.

220.    Mr. Karim also described the process in which his personal emails were collected.  As he explained, "There was a collection process at Wilson, Sonsini, I believe.  And so I brought in, you know, all of my e-mails.  And the person responsible for the collection, I -- I worked with him to extract the YouTube related e-mails from all those e-mails."  *See* Exhibit 313 hereto (Karim Dep.) at 30:3-14.

221. Mr. Karim also described the process by which emails from his YouTube email account were collected. As he explained, that "procedure was simply to copy, you know, sent and received e-mails in -- in all other e-mail folders." Mr. Karim participated in this process by "transfer[ring] the data." *See* Exhibit 313 hereto (Karim Dep.) at 30:16-31:3.

222. Attached as Exhibit 204 is a true and correct copy of a document produced by Jawed Karim marked with the Bates number range JK00009887-91.

223. Attached as Exhibit 205 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00009137-39.

224. Attached as Exhibit 206 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00004704-05. This email exchange was introduced as Exhibit 29 at the deposition of Chad Hurley and as Exhibit 24 at the deposition of Jawed Karim.

225. Attached as Exhibit 207 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00005039. This email exchange was introduced as Exhibit 23 at the deposition of Jawed Karim.

226. Attached as Exhibit 208 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00005043. This email exchange was introduced as Exhibit 1 at the deposition of Chad Hurley and as Exhibit 31 at the deposition of Jawed Karim.

227. Attached as Exhibit 209 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00009381-82. This email exchange was introduced as Exhibit 7 at the deposition of Jawed Karim.

33

228.    Attached as Exhibit 210 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00009383. This email exchange was introduced as Exhibit 8 at the deposition of Jawed Karim.

229.    Attached as Exhibit 211 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00005928. This email exchange was introduced as Exhibit 20 at the deposition of Jawed Karim.

230.    Attached as Exhibit 212 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00005929. This email exchange was introduced as Exhibit 33 at the deposition of Chad Hurley.

231.    Attached as Exhibit 213 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00006057. This email exchange was introduced as Exhibit 4 at the deposition of Chad Hurley and as Exhibit 17 at the deposition of Jawed Karim.

232.    Attached as Exhibit 214 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00000382. This email exchange was introduced as Exhibit 2 at the deposition of Brent Hurley and as Exhibit 45 at the deposition of Chad Hurley.

233.    Attached as Exhibit 215 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00007416-18. The page marked with Bates number JK00007416 was introduced as Exhibit 41 at the deposition of Chad Hurley.

234.    Attached as Exhibit 216 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006055-56. This email exchange was introduced as Exhibit 34 at the deposition of Chad Hurley.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 48 of 116   Page ID
#:555
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 35 of 58

235.     Attached as Exhibit 217 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006166-69.  This email exchange was introduced as Exhibit 40 at the deposition of Jawed Karim.

236.     Attached as Exhibit 218 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00009595-96.

237.     There is no Exhibit 219 to this Declaration, and that exhibit number is therefore intentionally left blank.

238.     There is no Exhibit 220 to this Declaration, and that exhibit number is therefore intentionally left blank.

239.     Attached as Exhibit 221 are a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006259-60, and an associated email attachment produced by Jawed Karim marked with the Bates number range JK00006263-70.  These documents were introduced as Exhibit 45 and Exhibit 46, respectively, at the deposition of Jawed Karim.

240.     Attached as Exhibit 222 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00009668.  This email exchange was introduced as Exhibit 19 at the deposition of Jawed Karim.

241.     Attached as Exhibit 223 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006392-93.  This email exchange was introduced as Exhibit 12 at the deposition of Jawed Karim.

242.     Attached as Exhibit 224 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006689-90.  This email exchange was introduced as Exhibit 18 at the deposition of Jawed Karim.

243.    Attached as Exhibit 225 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00006627-28.

244.    Attached as Exhibit 226 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00009791-92.

245.    Attached as Exhibit 227 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00007378-79.

246.    Attached as Exhibit 228 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00007420-22.  This email exchange was introduced as Exhibit 35 at the deposition of Jawed Karim and as Exhibit 5 at the deposition of Chad Hurley.

247.    Attached as Exhibit 229 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00007423.  This email exchange was introduced as Exhibit 55 at the deposition of Jawed Karim.

248.    Attached as Exhibit 230 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00007479.  This email exchange was introduced as Exhibit 38 at the deposition of Jawed Karim.

249.    There is no Exhibit 231 to this Declaration, and that exhibit number is therefore intentionally left blank.

250.    Attached as Exhibit 232 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00008043.  This email exchange was introduced as Exhibit 11 at the deposition of Chad Hurley and as Exhibit 36 at the deposition of Jawed Karim.

251.    Attached as Exhibit 233 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00008331-35.

252.    Attached as Exhibit 234 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00000824.

253.    Attached as Exhibit 235 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00000836.

254.    Attached as Exhibit 236 are a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00002261, and a true and correct copy of an associated email attachment produced by Jawed Karim marked with the Bates number JK00002262.  These documents were introduced as Exhibits 51 and 52 at the deposition of Jawed Karim.

255.    Attached as Exhibit 237 is a true and correct copy of a document produced by Jawed Karim marked with the Bates number range JK00000173-79.  This document was introduced as Exhibit 47 at the deposition of Jawed Karim.

256.    Attached as Exhibit 238 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00009130-32.  This email exchange was introduced as Exhibit 29 at the deposition of Jawed Karim.

257.    Attached as Exhibit 239 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number JK00008859.

258.    Attached as Exhibit 379 is a true and correct copy of an email exchange produced by Jawed Karim marked with the Bates number range JK00004669-70.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 51 of 116   Page ID
#:558
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 38 of 58

259.    Attached as Exhibit 380 is a true and correct copy of an email exchange produced
by Jawed Karim marked with the Bates number JK00005597. This email exchange was
introduced as Exhibit 2 at the deposition of Chad Hurley.

260.    Attached as Exhibit 381 is a true and correct copy of an email exchange produced
by Jawed Karim marked with the Bates number range JK00007560-61. This email exchange
was introduced as Exhibit 42 at the deposition of Chad Hurley and as Exhibit 34 at the
deposition of Jawed Karim.

261.    Attached as Exhibit 240 is a true and correct copy of an AVI-format video file
produced by Jawed Karim and given the Bates number file name JK00010387_MVI_0922.avi.
A portion of this video file was introduced as Exhibit 12 at the deposition of Chad Hurley.

262.    For the Court's convenience, and at my direction, an employee of Jenner & Block
LLP created a true and correct transcript of Exhibit 240. This transcript is attached hereto as
Exhibit 241.

### Defendants' Failure to Produce Emails of Top Executives

263.    Virtually none of the Exhibits listed above as produced by Jawed Karim (bearing
JK Bates numbers) were produced by Defendants, even though YouTube co-founders Steve
Chen and Chad Hurley and other YouTube employees are listed as senders and/or recipients on
most of the documents preserved and produced by Mr. Karim and attached as exhibits hereto.

264.        Chad Hurley testified that he "lost all" of his emails from the key time
periods in this case. *See* Exhibit 312 hereto (C. Hurley Dep.) at 187:15-16. Jenner & Block
LLP's review of Defendants' document production indicates that Defendants produced fewer
than ten custodial Chad Hurley emails per month for August, September, and October 2005, and
fewer than 25 such emails per month for November and December 2005 and January 2006.

38

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 52 of 116   Page ID
#:559
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 39 of 58

265.     Jenner & Block LLP's review of Defendants' document production indicates that

Defendants did not produce a single Steve Chen custodial email from March through July 2005,

and produced only one Chen custodial email from each of August and September 2005.  From

November 2005 through October 2006, Defendants produced fewer than ten custodial Chen

emails per month.

266.     At his deposition, Google CEO Eric Schmidt agreed that a search for responsive

custodial Schmidt documents from June 2006 through February 2007 yielded only 19

documents.  Mr. Schmidt further testified:  "It was my practice to delete or otherwise cause the

e-mails that I had read to go away as quickly as possible."  *See* Exhibit 314 hereto (Schmidt

Dep.) at 18:24-19:2.  The document attached as Exhibit 242 is chart of Custodial Documents

Produced by Eric Schmidt that counsel for Viacom prepared by analyzing Defendants' document

production.  This chart was introduced as Exhibit 1 at the deposition of Eric Schmidt.

### Documents Produced by Viacom

267.     Documents produced by Viacom in this action are marked with Bates numbers

beginning with the prefix "VIA."

268.     The documents listed in paragraphs 270 through 273 were retained by the Viacom

Plaintiffs' in the course of regularly conducted business activity, collected pursuant to the

Viacom Plaintiffs' discovery obligations, and produced to Defendants in this litigation.

269.     There is no Exhibit 243 to this Declaration, and that exhibit number is therefore

intentionally left blank.

270.     Attached as Exhibit 244 is a true and correct copy of a letter sent from Viacom

General Counsel Michael Fricklas to Google General Counsel Kent Walker at Mr. Walker's

business address.  The letter was produced by Viacom marked with the Bates number range

VIA01475465-76 and introduced as Exhibit 4 at the deposition of Kent Walker. Mr. Fricklas sent this letter on February 2, 2007 and Mr. Walker replied as shown in Exhibit 382 hereto, which is an email exchange produced by Defendants.

271.   Attached as Exhibit 245 are a true and correct copy of an email exchange produced by Viacom marked with the Bates number VIA00727695, and a true and correct copy of an associated email attachment produced by Viacom marked with Bates number range VIA00727696-98. These documents were introduced by Defendants as Exhibit 5 at the deposition of Jason Witt.

272.   There is no Exhibit 246 to this Declaration, and that exhibit number is therefore intentionally left blank.

273.   Attached as Exhibit 383 is a true and correct copy of an email exchange produced by Viacom marked with the Bates number range VIA17716283-85.

**Documents Obtained From Publicly Accessible Portions of Defendants' Websites**

274.   The following exhibits are true and correct copies of documents printed from publicly accessible portions of the Google and YouTube websites. Each exhibit referenced in paragraphs 276 through 318 below was printed from the YouTube or Google website by an employee of Jenner & Block LLP acting at my direction.

275.   There is no Exhibit 247 to this Declaration, and that exhibit number is therefore intentionally left blank.

276.   Attached as Exhibit 248 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375471-72.

277.   Attached as Exhibit 249 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375444-45.

278.    Attached as Exhibit 250 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375526-28.

279.    Attached as Exhibit 251 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375557-59.

280.    Attached as Exhibit 252 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375446-47.

281.    Attached as Exhibit 253 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number VIA14375721.

282.    Attached as Exhibit 254 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number VIA14375701.

283.    Attached as Exhibit 255 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375674-75.

284.    Attached as Exhibit 256 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375466-67.  This document was introduced as Exhibit 10 at the deposition of Matthew Liu.

285.    Attached as Exhibit 257 is a true and correct copy of a screenshot of a YouTube watch page produced by Viacom marked with the Bates number range VIA14375535-36.

286.    Attached as Exhibit 258 is a true and correct copy of a screenshot of a YouTube watch page generated by Counsel for Viacom.  This document was introduced as Exhibit 11 at the deposition of Matthew Liu.

287.    Attached as Exhibit 259 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375204-06.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 55 of 116   Page ID
#:562
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 42 of 58

This screenshot was introduced as Exhibit 12 at the deposition of Matthew Liu and as Exhibit 11 at the Rule 30(b)(6) deposition of Varun Kacholia.

288.    Attached as Exhibit 260 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375664-66.

289.    Attached as Exhibit 261 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375611-13.

290.    Attached as Exhibit 262 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375671-73.

291.    Attached as Exhibit 263 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375620-22.

292.    Attached as Exhibit 264 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375635-37.

293.    Attached as Exhibit 265 is a true and correct copy of a screenshot of a YouTube search results page produced by Viacom marked with the Bates number range VIA14375638-40.

294.    Attached as Exhibit 266 is a true and correct copy of a screenshot of a YouTube page produced by Viacom marked with the Bates number range VIA14375228-29.  This screenshot was introduced as Exhibit 13 at the deposition of Matthew Liu.

295.    Attached as Exhibit 267 is a true and correct copy of a screenshot of a YouTube page produced by Viacom marked with the Bates number range VIA14375363-64.

296.    Attached as Exhibit 268 is a true and correct copy of a screenshot of a YouTube page produced by Viacom marked with the Bates number range VIA14375413-14.

297.    Attached as Exhibit 269 is a true and correct copy of a screenshot of a YouTube page produced by Viacom marked with the Bates number range VIA14375207-08.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 56 of 116   Page ID
#:563
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 43 of 58

298.   Attached as Exhibit 270 is a true and correct copy of an "Official YouTube Blog"
posting dated September 12, 2005.

299.   Attached as Exhibit 271 is a true and correct copy of a press release from the
YouTube website dated December 15, 2005 and titled "YouTube Opens Internet Video to the
Masses."

300.   Attached as Exhibit 272 is a true and correct copy of an "Official YouTube Blog"
posting dated February 16, 2006.

301.   Attached as Exhibit 273 is a true and correct copy of an "Official YouTube Blog"
posting dated October 8, 2006 and titled "How Flagging Works."

302.   Attached as Exhibit 274 is a true and correct copy of an "Official YouTube Blog"
posting dated May 16, 2008 and entitled "New Features for Search, Contacts and Inbox." This
document was introduced as Exhibit 8 in the Rule 30(b)(6) deposition of Varun Kacholia.

303.   Attached as Exhibit 275 is a true and correct copy of a page on Google's Investor
Relations webpage entitled "Google Announces Fourth Quarter And Fiscal Year 2006 Results."

304.   Attached as Exhibit 276 is a true and correct copy of Google's October 9, 2006
press release announcing Google's acquisition of YouTube.

305.   Attached as Exhibit 277 is a true and correct copy of Google's November 13,
2006 press release announcing the closing of Google's acquisition of YouTube.

306.   Attached as Exhibit 278 is a true and correct copy of a page on "Google finance,"
a website operated by Defendants showing the closing price of Google stock on November 13,
2006.

307.   Attached as Exhibit 279 is a true and correct copy of a page on the YouTube
website entitled "Company History."

43

308.    There is no Exhibit 280 to this Declaration, and that exhibit number is therefore intentionally left blank.

309.    Attached as Exhibit 281 is a true and correct copy of a page on the YouTube website entitled "Content Verification Program."

310.    Attached as Exhibit 282 is a true and correct copy of a page on the YouTube website entitled "Copyright Infringement Notification." It is linked to from the word "instructions" in the text that states "[i]ndividual notifications may be submitted by following these instructions" on the "Content Verification Program" page in Exhibit 281 attached hereto.

311.    Attached as Exhibit 283 is a true and correct copy of a page on the YouTube website entitled "Solve a Problem:  Video not in search."

312.    Attached as Exhibit 284 is a true and correct copy of a screenshot taken from the YouTube website and introduced as Exhibit 7 at the deposition of Cuong Do.

313.    Attached as Exhibit 285 are true and correct copies of screenshots taken from the YouTube website and introduced as Exhibit 3 at the deposition of Omid Kordestani.

314.    Attached as Exhibit 286 is a true and correct copy of a document printed from the YouTube website by John Browne, Counsel for Plaintiffs in the Premier League Action, and introduced as Exhibit 9 at the deposition of Suzanne Reider.  *See* Exhibit 348 hereto (Reider Dep.) at 168:18-173:18 (representation from Class counsel John Browne that he printed this document from the YouTube website, and testimony from Ms. Reider about the substance of the document).

315.    Attached as Exhibit 287 is a true and correct copy of Google's 2007 Annual Report, printed from the Google website.

316.    Attached as Exhibit 288 is a true and correct copy of a page from Google's website entitled "Ten ways Gmail makes email easy and efficient.  And maybe even fun."

317.    Attached as Exhibit 387 is a true and correct copy of a page from Google's website entitled "Google Code of Conduct."

318.    Attached as Exhibit 388 is a true and correct copy of a page on the YouTube website entitled "Content ID System."

### Documents Produced by Third-Party Credit Suisse

319.    Viacom issued a subpoena *duces tecum* in this action to third-party Credit Suisse Securities USA LLC ("Credit Suisse") on December 6, 2007.  In response, Credit Suisse produced documents marked with Bates numbers beginning with the prefix "CSSU."  Credit Suisse acted as a financial advisor to Defendant Google in connection with Google's acquisition of YouTube.  *See* Exhibit 328 hereto (Duncan Dep.) at 60:16-68:25.

320.    Attached as Exhibit 289 are true and correct copies of several documents and handwritten notes produced by Credit Suisse and together introduced as Exhibit 21 at the deposition of Storm Duncan.  These documents are marked with Bates number ranges CSSU 001863-66, CSSU 001868-71, and CSSU 001944-57.  *See* Exhibit 328 hereto (Duncan Dep.) at 192:2 -192:9, 199:24-200:5, and 207:25-210:13 (authenticating documents).

321.    Attached as Exhibit 290 are a true and correct copy of an email exchange produced by Credit Suisse marked with the Bates number range CSSU 002845-46, and a true and correct copy of an associated email attachment produced by Credit Suisse marked with the Bates number range CSSU 002847-52.  These documents were introduced as Exhibit 10 at the deposition of Storm Duncan.  *See* Exhibit 328 hereto (Duncan Dep.) at 67:14-68:4 (authenticating documents).

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 59 of 116   Page ID
#:566
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 46 of 58

322.    Attached as Exhibit 291 is a true and correct copy of an email exchange produced by Credit Suisse marked with the Bates number CSSU 002686.  This email exchange was introduced as Exhibit 13 at the deposition of Storm Duncan and as Exhibit 8 at the deposition of David Drummond.  *See* Exhibit 328 hereto (Duncan Dep.) at 96:6-98:24 (authenticating documents).

323.    Attached as Exhibit 292 are a true and correct copy of an email exchange produced by Credit Suisse marked with the Bates number range CSSU 004069-70, and a true and correct copy of an associated email attachment produced by Credit Suisse marked with the Bates number range CSSU 004071-74.  These documents were introduced as Exhibit 14 at the deposition of Storm Duncan.  *See* Exhibit 328 hereto (Duncan Dep.) at 96:6-98:24 (authenticating documents).

324.    Attached as Exhibit 293 are a true and correct copy of an email exchange produced by Credit Suisse marked with the Bates number CSSU 003560, and a true and correct copy of an associated email attachment produced by Credit Suisse marked with the Bates number range CSSU 003561-86.  These documents were introduced as Exhibit 17 at the deposition of Storm Duncan, Exhibit 5 at the deposition of Omid Kordestani, Exhibit 6 at the deposition of David Drummond, Exhibit 2 at the deposition of Eric Schmidt, Exhibit 3 at the deposition of Sergey Brin, Exhibit 7 at the deposition Jonathan Rosenberg, and Exhibit 1 at the deposition of Larry Page.  *See* Exhibit 328 hereto (Duncan Dep.) at 113:3-114:4 (authenticating documents).

325.    Attached as Exhibit 294 are a true and correct copy of an email exchange produced by Credit Suisse marked with the Bates number CSSU 003326, and a true and correct copy of an associated email attachment produced by Credit Suisse marked with the Bates number range CSSU 003327-50.  These documents were introduced as Exhibit 19 at the deposition of

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 60 of 116   Page ID
#:567
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 47 of 58

Storm Duncan.  *See* Exhibit 328 hereto (Duncan Dep.) at 124:9-125:1 (authenticating

documents).

326.   Attached as Exhibit 295 is a true and correct copy of an email exchange produced

by Credit Suisse marked with the Bates number range CSSU 002982-86.

### Documents Produced by Venture Capital Investors in YouTube

327.   Viacom issued subpoenas in this action to third-parties Sequoia Capital

Operations LLC ("Sequoia Capital"), Artis Capital Management L.P. ("Artis Capital"), and

TriplePoint Capital LLC ("TriplePoint Capital).  In response to the subpoenas, Sequoia Capital

produced documents marked with Bates numbers beginning with the prefix "SC,"  Artis Capital

produced documents marked with Bates numbers beginning with the prefix "AC," and

TriplePoint Capital produced documents marked with Bates numbers beginning with "TP."  As

the United States District Court for the Northern District of California noted in granting

Viacom's motion to compel the production of documents from Sequoia Capital, Artis Capital,

and TriplePoint Capital, they "are venture capital firms who were involved with defendant

YouTube in its initial rounds of investment and eventual acquisition by defendants Google,

which was effective on November 13, 2006.  All respondents received significant quantities of

Google shares when Google acquired YouTube and also indemnified Google for the outcomes of

copyright infringement suits." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S.

Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008).

328.   Attached as Exhibit 296 are true and correct copies of excerpts from the closing

documents for YouTube's Series A financing, which were produced by Sequoia Capital marked

with the Bates number range SC008403-627.  The signatures of YouTube's co-founders appear

on the pages marked with Bates numbers SC008415, SC008426, SC008466, and SC008504.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 61 of 116   Page ID
#:568
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 48 of 58

329.    Attached as Exhibit 297 are true and correct copies of excerpts from the closing

documents for YouTube's Series B financing, which were produced by Sequoia Capital marked

with the Bates number range SC008711-984.  The signatures of YouTube's co-founders appear

on the pages marked with Bates numbers SC008721-722, SC008731-733, SC008777, and

SC008820-822.

330.    Attached as Exhibit 298 is a true and correct copy of a document produced by

Sequoia Capital marked with the Bates number range SC011742-79.

331.    Attached as Exhibit 299 are a true and correct copy of an email exchange

produced by Sequoia Capital marked with the Bates number SC010022, and an associated email

attachment produced by Seqouia Capital marked with the Bates number range SC010023-28.

These documents were introduced as Exhibit 11 at the deposition of David Drummond.  *See*

Exhibit 327 hereto (Drummond Dep.) at 89:7-89:22 (authenticating document).

332.    Attached as Exhibit 300 is a true and correct copy of a document produced by

Artis Capital marked with the Bates number AC005772.  This document was introduced as

Exhibit 22 at the deposition of David Lamond.  *See* Exhibit 384 hereto (D. Lamond Dep.) at

148:14-148:17 (authenticating document).

333.    Attached as Exhibit 301 are true and correct copies of excerpts from a document

produced by Artis Capital marked with the Bates number AC007823-905.  When sending this

document to Counsel for Plaintiffs with redactions on December 17, 2009, Defendants' counsel

identified it as the final version of the YouTube, Inc. Disclosure Schedule prepared in connection

with the merger between Google and YouTube.

334.    Attached as Exhibit 302 is a true and correct copy of a document produced by

TriplePoint Capital marked with the Bates number range TP000479-95.

335.   Attached as Exhibit 303 is a true and correct copy of a document produced by TriplePoint Capital marked with the Bates number range TP000055-143.  This document was introduced as Exhibit 2 at the deposition of David Drummond and as Exhibit 2 at the deposition of David Estrada.  *See* Exhibit 327 hereto (Drummond Dep.) at 21:23-22:9 (authenticating document).

### Documents Produced by Third-Party Audible Magic

336.   In response to a subpoena issued by Viacom in this action on April 16, 2008, third-party Audible Magic produced documents marked with Bates numbers beginning with the prefix "AM."  Audible Magic provided digital fingerprintng services to Defendants.  *See* Exhibit 141 hereto (cover email and final agreement between YouTube and Audible Magic).

337.   Attached as Exhibit 304 is a true and correct copy of a document produced by Audible Magic marked with the Bates number range AM 002090-91.  This email exchange was introduced as Exhibit 6 at the deposition of Vance Ikezoye.  *See* Exhibit 336 hereto (Ikezoye Dep.) at 54:23-55:25 (authenticating document).

338.   Attached as Exhibit 305 is a true and correct copy of an email exchange produced by Audible Magic marked with the Bates number range AM 001241-44.  This email exchange was introduced as Exhibit 13 at the deposition of Franck Chastagnol.  *See* Exhibit 321 hereto (Chastagnol Dep.) at 180:17-181:22 (authenticating document).

339.   Attached as Exhibit 306 is a true and correct copy of an email exchange produced by Audible Magic marked with the Bates number range AM 000917-28.  This email exchange was introduced as Exhibit 8 at the deposition of Vance Ikezoye.  *See* Exhibit 336 hereto (Ikezoye Dep.) at 62:12-63:19 (authenticating document).

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 63 of 116   Page ID
#:570
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 50 of 58

**Documents Produced by Third-Party Motion Picture Association of America**

340.    In response to a subpoena issued by Defendants on January 18, 2008, third-party

Motion Picture Association of America ("MPAA") produced documents marked with Bates

numbers beginning with the prefix "MPAA."

341.    Attached as Exhibit 307 is a true and correct copy of a document produced by the

MPAA marked with the Bates number range MPAA012777-78.  This document was introduced

as Exhibit 4 at the deposition of Dean Garfield and as Exhibit 5 at the Rule 30(b)(6) deposition

of David King.  *See* Exhibit 333 hereto (Garfield Dep.) at 33:24-34:2 (authenticating document).

342.    Attached as Exhibit 308 is a true and correct copy of a document produced by the

MPAA marked with the Bates number range MPAA012806-07.  This document was introduced

as Exhibit 7 at the deposition of Dean Garfield and as Exhibit 12 at the deposition of Jonathan

Rosenberg.  *See* Exhibit 333 hereto (Garfield Dep.) at 40:25-42:17 (authenticating document).

343.    Attached as Exhibit 309 is a true and correct copy of an email exchange produced

by the MPAA marked with the Bates number range MPAA0011721.

344.    There is no Exhibit 310 to this Declaration, and that exhibit number is therefore

intentionally left blank.

345.    There is no Exhibit 311 to this Declaration, and that exhibit number is therefore

intentionally left blank.

**Deposition Transcripts From This Action**

346.    Attached as Exhibit 312 is a true and correct copy of the transcript of the

deposition of Chad Hurley taken on April 22, 2009.

347.    Attached as Exhibit 313 is a true and correct copy of the transcript of the

deposition of Jawed Karim taken on June 9, 2009.

348.    Attached as Exhibit 314 is a true and correct copy of the transcript of the deposition of Eric Schmidt taken on May 6, 2009.

349.    Attached as Exhibit 315 is a true and correct copy of the transcript of the deposition of Larry Page taken on October 1, 2009.

350.    Attached as Exhibit 316 are true and correct copies of excerpts from the transcript of the deposition of Brent Hurley taken on August 26, 2008.

351.    Attached as Exhibit 317 are true and correct copies of excerpts from the transcript of the deposition of Roelof Botha taken on August 5, 2009.

352.    Attached as Exhibit 318 are true and correct copies of excerpts from the transcript of the deposition of Sergey Brin taken on October 15, 2009.

353.    Attached as Exhibit 319 are true and correct copies of excerpts from the transcript of the deposition of Peter Chane taken on December 2, 2009.

354.    Attached as Exhibit 320 are true and correct copies of excerpts from the transcript of the deposition of Wendy Chang taken on July 11, 2008.

355.    Attached as Exhibit 321 are true and correct copies of excerpts from the transcript of the deposition of Franck Chastagnol taken on December 10, 2008.

356.    Attached as Exhibit 322 are true and correct copies of excerpts from the transcript of the deposition of Cuong Do taken on February 13, 2009.

357.    Attached as Exhibit 323 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Cuong Do taken on September 12, 2007.

358.    Attached as Exhibit 324 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Jeremy Doig taken on September 14, 2007.

359.    Attached as Exhibit 325 are true and correct copies of excerpts from the transcript of the deposition of Kevin Donahue taken on October 15, 2008.

360.    There is no Exhibit 326 to this Declaration, and that exhibit number is therefore intentionally left blank.

361.    Attached as Exhibit 327 are true and correct copies of excerpts from the transcript of the deposition of David Drummond taken on February 12, 2009.

362.    Attached as Exhibit 328 are true and correct copies of excerpts from the transcript of the deposition of Storm Duncan taken on July 16, 2008.

363.    Attached as Exhibit 329 are true and correct copies of excerpts from the transcript of the deposition of Maryrose Dunton taken on August 22, 2008.

364.    Attached as Exhibit 330 are true and correct copies of excerpts from the transcript of the deposition of Alex Ellerson taken on May 22, 2009.

365.    Attached as Exhibit 331 are true and correct copies of excerpts from the transcript of the deposition of David Estrada taken on December 8, 2009.

366.    Attached as Exhibit 332 are true and correct copies of excerpts from the transcript of the deposition of David Eun taken on August 7, 2008.

367.    Attached as Exhibit 333 are true and correct copies of excerpts from the transcript of the deposition of Dean Garfield taken on November 2, 2009.

368.    Attached as Exhibit 334 are true and correct copies of excerpts from the transcript of the deposition of Heather Gillette taken on August 12, 2008.

369.    Attached as Exhibit 335 are true and correct copies of excerpts from the transcript of the deposition of Michael Housley taken on October 3, 2008.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 66 of 116   Page ID
#:573
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 53 of 58

370.     Attached as Exhibit 336 are true and correct copies of excerpts from the transcript of the deposition of Vance Ikezoye taken on September 10, 2009.

371.     Attached as Exhibit 337 are true and correct copies of excerpts from the transcript of the deposition of Kent Walker taken on December 17, 2009.

372.     Attached as Exhibit 338 are true and correct copies of excerpts from the transcript of the deposition of the Rule 30(b)(6) deposition of Varun Kacholia taken on January 8, 2010.

373.     Attached as Exhibit 339 are true and correct copies of excerpts from the transcript of the deposition of David King taken on December 12, 2008.

374.     Attached as Exhibit 340 are true and correct copies of excerpts from the transcript of the deposition of the Rule 30(b)(6) deposition of David King taken on January 13, 2010.

375.     Attached as Exhibit 341 are true and correct copies of excerpts from the transcript of the deposition of Omid Kordestani taken on February 12, 2009.

376.     Attached as Exhibit 342 are true and correct copies of excerpts from the transcript of the deposition of Zahavah Levine taken on April 2, 2009.

377.     Attached as Exhibit 343 are true and correct copies of excerpts from the transcript of the deposition of Andrew Lin taken on July 2, 2009.

378.     Attached as Exhibit 344 are true and correct copies of excerpts from the transcript of the deposition of Matthew Liu taken on November 13, 2009.

379.     Attached as Exhibit 345 are true and correct copies of excerpts from the transcript of the deposition of Chris Maxcy taken August 28, 2008.

380.     Attached as Exhibit 346 are true and correct copies of excerpts from the transcript of the deposition of Bhanu Narasimhan taken September 18, 2009.

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 67 of 116   Page ID
#:574
Case 1:07-cv-02103-LLS   Document 191   Filed 03/18/10   Page 54 of 58

381.    Attached as Exhibit 347 are true and correct copies of excerpts from the transcript of the deposition of Patrick Walker taken on July 22, 2008.

382.    Attached as Exhibit 348 are true and correct copies of excerpts from the transcript of the deposition of Suzanne Reider taken on October 3, 2008.

383.    Attached as Exhibit 349 are true and correct copies of excerpts from the transcript of the deposition of Michael Robinson taken on January 15, 2010.

384.    Attached as Exhibit 350 are true and correct copies of excerpts from the transcript of the deposition of Jonathan Rosenberg taken on December 4, 2009.

385.    Attached as Exhibit 351 are true and correct copies of excerpts from the transcript of the deposition of Micah Schaffer taken on July 23, 2008.

386.    Attached as Exhibit 352 are true and correct copies of excerpts from the transcript of the deposition of Nicholas Seet taken November 24, 2009.

387.    Attached as Exhibit 353 are true and correct copies of excerpts from the transcript of the deposition of Shashi Seth taken July 16, 2009.

388.    Attached as Exhibit 354 are true and correct copies of excerpts from the transcript of the deposition of Gideon Yu taken on August 14, 2009.

389.    There is no Exhibit 355 to this Declaration, and that exhibit number is therefore intentionally left blank.

390.    Attached as Exhibit 384 are true and correct copies of excerpts from the transcript of the deposition of David Lamond taken on April 15, 2009.

391.    Attached as Exhibit 385 are true and correct copies of excerpts from the transcript of the deposition of Jim Patterson taken on December 18, 2009.

54

392.    Attached as Exhibit 386 are true and correct copies of excerpts from the deposition of Michael Solomon taken on September 1, 2009.

**Declarations Filed in Other Actions**

393.    Attached as Exhibit 356 is a true and correct copy of the January 5, 2007 Declaration of Steve Chen in Support of Defendants' Motion for Summary Adjudication of Defendant's First Affirmative Defense of DMCA Safe Harbor in *Robert Tur d/b/a Los Angeles News Service v. YouTube, Inc.*, No. CV 06-4436 FMC (C.D. Cal.).  Mr. Chen's declaration in the *Tur* case was introduced as Exhibit 16 at the deposition of Micah Schaffer in this case.

394.    Attached as Exhibit 357 is a true and correct copy of the January 5, 2007 Declaration of Zahavah Levine in Support of Defendants' Motion for Summary Adjudication of Defendant's First Affirmative Defense of DMCA Safe Harbor in *Robert Tur d/b/a Los Angeles News Service v. YouTube, Inc.*, No. CV 06-4436 FMC (C.D. Cal.).  Ms. Levine's declaration in the *Tur* case was introduced as Exhibit 29 at Ms. Levine's deposition in this case.

395.    Attached as Exhibit 358 is a true and correct copy of the September 10, 2002 Declaration of Vance Ikezoye in Support of Plaintiffs' Proposed Preliminary Injunction Order in *In re Aimster Copyright Litigation*, No. 01 C 8933 (N.D. Ill.).  This declaration was introduced as Exhibit 1 at the deposition of Vance Ikezoye in this matter.

396.    Attached as Exhibit 359 is a true and correct copy of the February 2, 2006 Declaration of Vance Ikezoye in Support of Plaintiffs' Motions for Summary Judgment in *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, No. 01-08541 SVW (C.D. Cal.).  This declaration was introduced as Exhibit 2 at the deposition of Vance Ikezoye in this matter.

**Interrogatory Responses**

397.     Attached as Exhibit 360 is a true and correct copy of Defendants' responses to Plaintiffs' First Set of Interrogatories.

398.     Attached as Exhibit 361 is a true and correct copy of Defendants' responses to Plaintiffs' Second Set of Interrogatories.

**Hearing Transcript**

399.     Attached as Exhibit 362 is a true and correct copy of an excerpt from the transcript of a Rule 16(b) conference in this action that was held on July 27, 2007.

**Other Documents**

400.     Attached as Exhibit 363 is a true and correct copy of an S-3 Registration Statement filed by Defendant Google Inc. with the Securities and Exchange Commission on February 7, 2007.  Counsel for Viacom retrieved this Registration Statement from the SEC's "Edgar" online search service.  As of February 27, 2010, the Registration Statement is available at http://www.sec.gov/Archives/edgar/data/1288776/000119312507022578/ds3asr.htm.

401.     Attached as Exhibit 364 is a true and correct copy of a document provided by Defendants' corporate representative Cuong Do and introduced as Exhibit 2 in the 30(b)(6) deposition of Cuong Do.

402.     Attached as Exhibit 365 is a true and correct copy of the resume of YouTube co-founder Jawed Karim.  The resume was introduced as Exhibit 1 in Mr. Karim's deposition, and authenticated by Mr. Karim.  *See* Exhibit 313 hereto (Karim Dep.) at 7:10-8:23.

403.     There is no Exhibit 366 to this Declaration, and that exhibit number is therefore intentionally left blank.

404.    There is no Exhibit 367 to this Declaration, and that exhibit number is therefore intentionally left blank.

405.    There is no Exhibit 368 to this Declaration, and that exhibit number is therefore intentionally left blank.

406.    Attached as Exhibit 369 is a true and correct copy of a June 28, 2007 letter from Donald Verrilli, then-counsel to Viacom, to Mark Ouweleen and David Kramer, counsel for Defendants.

407.    Attached as Exhibit 370 is a true and correct copy of a June 29, 2007 letter from Mark Ouweleen, then-counsel to Defendants, to Donald Verrilli, then-counsel to Viacom.  This letter was emailed to Mr. Verrilli from the email address mark.ouweleen@bartlit-beck.com.

**YouTube's Distribution of Copies of Videos Onto YouTube Users' Computers**

408.    When I have viewed videos on YouTube using the Internet Explorer web browser, I have found complete copies on my personal computer of the video files I viewed. Specifically, after I viewed several videos on YouTube, complete copies of those videos remained on my computer in my Temporary Internet Files folder, even after I navigated away from the YouTube site on my web browser.  The complete copies of the video files left by YouTube remained on my personal computer in the Temporary Internet Files folder for periods of at least several hours (and perhaps indefinitely), even though I shut down and rebooted my personal computer during that period.  I was able to play these videos on my personal computer, without returning to the YouTube site, simply by clicking on the copies of the video files left by YouTube in my Temporary Internet Files folder and opening those files in a Flash player.  I was also able to move the copies of the videos from the Temporary Internet Files folder of my personal computer to other folders on my hard drive where, in my experience as a consumer

57

computer user, the copies would remain and be playable permanently, unless I took action to

delete them.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __14th__ day of March 2010, at Washington, DC.

William M. Hohengarten

58

Δ π EXHIBIT 46
Deponent _Ku r(m_
Date _9 . O G .
WWW.DEPOBOOK.COM

| | |
|---|---|
| **From:** | Steve Chen <steve@youtube.com> |
| **Sent:** | Friday, July 22, 2005 8:29 AM |
| **To:** | YouTube Group <███████████> |
| **Subject:** | Fwd: introductions - Charles Chariya |
| **Attach:** | Message Text.txt;YouTube Marketing Analysis - Charles Chariya July 22nd 2005.doc |

Actually, everyone should take a look at this.  I originally though introductions was only appropriate for Chad because marketing ═ content/design but this may be interesting to everyone.

-s

Begin forwarded message:

From: "Charles Chariya" <███████████>
Date: July 22, 2005 9:17:30 AM PDT
To: "Steve Chen" <steve@youtube.com>, "Hurley Chad" <chad@youtube.com>
Subject: RE: introductions - Charles Chariya

Steve - thanks for the introduction.  Chad, I'd love to meet up with you, Steve and the rest of the team next week.  I am available either Tuesday or Wednesday night.  Let me know what's best for you.

Steve and I have been discussing YouTube over the past week, and I think we've had some fairly productive discussions.  I really think there's huge potential, and I'm excited about the possibilities.

I spent a few hours last night and put together a topline marketing analysis, from my perspective.  Forgive me if this is too forward, but the concept really got my creative juices flowing.

Also, I've asked the surfing department here at Yahoo to include YouTube to the directory, and they'll be reviewing it later today.  This should increase page rank for both Yahoo and Google, which should result in higher search results placement and hopefully, higher traffic as a result.

Charles

-----Original Message-----
From: Steve Chen [mailto:steve@youtube.com]
Sent: Friday, July 22, 2005 10:51 AM
To: Hurley Chad; ████████████
Subject: introductions

hi chad --

this is charles.  a friend from imsa.  he's the guy that i've spoken to

**Exhibit 24**

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 73 of 116   Page ID
#:580
Case 1:07-cv-02103-LLS   Document 214-62   Filed 03/18/10   Page 2 of 10

you about who has worked at yahoo for the last 5+ years.  he's been
working in their marketing/sales department in new york city for the
last 3 years.  he'll be coming out here next week for a visit and we
should try to arrange a time to meet up.  i think tues/wed nights are
open for you, charles?

-s

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00006260



**YouTube Marketing Analysis**
July 21st, 2005
Charles Chariya

Overview
YouTube is a online video streaming destination which allows users to
quickly and easily upload, watch, and share video worldwide.

Usage and Growth
Launched in June 2005, YouTube has grown in popularity and usage.
There are currently thousands of videos which users have uploaded to
the site, and tens of thousands of monthly unique visitors.

Technology
YouTube has developed a proprietary video conversion technology that
converts video from standard digital formats (avi, mpg, etc) into a
quick-loading and streaming flash format.

********************************************************************

Site Overview..................................................................................2
    Finding Content...........................................................................2
    Sharing Video.............................................................................3
User Analysis (Current and Future) .....................................................4
    Individuals................................................................................4
    Film Producers...........................................................................4
    Other Professionals....................................................................5
Competitive Analysis.........................................................................5
Content Sources...............................................................................6
Risk Areas.......................................................................................6
    Content....................................................................................6
    Advertisers...............................................................................6
    Technology................................................................................6
Marketing Opportunities.....................................................................6
Media Advertising Options.................................................................7
Advertising Landscape .....................................................................7
Conclusions and Next Steps...............................................................8
Proposed Revenue Models.................................................................8

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

JK00006263

Site Overview
Finding Content
Currently, the site has minimal navigation, and is focused around a
personalized interface for the content.  Finding content can be done
via search, browsing thru links (uploaders, favorites of other users,
random frontpage streams), and via tags.



SUGGESTIONS: YouTube Reviews (hire copywriters), Add Length to the
description of the videos

Also available is finding video via Recent Uploads, Most Popular, Most
Discussed, Most Added to Favorites, and Random.



SUGGESTIONS: Categorize Videos (hire categorizers), User Rating System

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

Sharing Video
Uploading is quick and easy and requires registration.



SUGGESTIONS: Require several additional fields (Age/Birth date, Gender, Occupation, Industry, Zip Code) for future targeting/profiling purposes

Once registered the uploading and sharing of videos is easy and seamless.



SUGGESTIONS: Application on-desktop to drag/drop video files, and auto-upload to YouTube.  Pre-checking procedure to reject non-supported file formats (before upload takes place).  Allow for non-video files to be uploaded converted and shared (mp3, wav, other audio).

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

*********************************************************************

User Analysis (Current and Future)

Individuals
  - Individual Uploaders
The majority of the content on YouTube is currently from random users.
These users not only upload their own work, but can potentially upload
publicly available content of viewing.  Risk area here is copyright as
many videos which are uploaded are not the property of the uploader.

  - Video Sharers
Video sharers are individuals that create, edit, and share video for
public or private consumption.  This might include baby videos,
graduation video, or just hanging out with friends.  This may become
the mainstream user for YouTube over time.  To increase usage by this
group, you may want to consider partnering with hardware manufacturers
(Kodak, Sony, Canon) as the video sharing destination of choice for
people who purchase video capable cameras.

  - Video Resume
Video Resumes is a fairly specific subset of the individual group.
These may include people who want to share their work sample, such as
actors, but this can also become mainstream if YouTube were to partner
with Monster.com or Hotjobs.yahoo.com.

  - Vloggers
Vloggers are people who keep regular diaries or reports using video on
the network.  YouTube could be an easy way to help Vloggers focus on
content, rather than the myriad hosting, streaming, bandwidth issues
that they currently may face.

Film Producers
Film producers are really broken out into two different types, those
that are made, and those that have not made it.  For producers and
directors that are seeking to break into the industry, YouTube could be
a very quick and easy business card to showcase their work.  Allowing
for vanity URLs and customization of the showcase page would be a
premium offering, and would provide an extremely valuable service.

Business Users
  - Training Video
On a corporate basis, video is used sparsely for business purposes.
The main issue relates to delivery, and YouTube can provide a means to
quickly and easily solve this issue.  Not only corporate video, but
partnering with instructional video companies to make the current
libraries accessible may be a good investment.

  - Video Site Operators (Pay per content sites)
Another source of potential revenue is creating an Enterprise version
of YouTube.  This may require some engineering to allow for secure 3rd
party referrals to content which is hosted and served by YouTube.  Some
consideration here would be increased resolution, disk space, private
entry, reporting, and security precautions.  Pricing to such site
operators would likely be fixed monthly fee + streams/bandwidth/usage
fee.  Secure viewing might require a domain key authentication to

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006266

validate that the user requesting the stream is a valid user of the 3rd party site.

Other Professionals
 - Musicians (Music Videos)
Music Video distribution may be an opportunity.  Launch (Yahoo Music) was built upon the Music Video and Audio Streaming, had great support in the music community, and there may be some room to build off of this type of success.

 - Athletes
Scouting Reports, sample video, etc.  This is a fairly specialized marketplace, however sports is a highly monetized and competitive space.

******************************************************************

Competitive Analysis
     http://www.archive.org/stream - Internet Movie Archive allows for users to upload and stream video in any format.  This site still suffers from the delay time in buffering which YouTube avoids by converting files to flash video.  Many VLoggers currently use archive.org to host their media files, and use other sources to host the creative/copy for the vlog.

     Itunes - Apple's site which allows for video sharing/streaming. This site is limited as most files are in Apple QuickTime format, which does require additional installation for normal PC users, before being able to view.  YouTube also requires Flash, but the penetration of Flash is currently higher than the penetration of QuickTime.

     Vlog.com - Video Blogging site which sells software to create and upload video blogs for streaming.  Software sells for $99 and the current employees provide vlogs which exemplify how the software and streams work.

     http://blip.tv/ - Turnkey Vlog site, uses Archive.org to host/stream video.  Requires Creative Commons license or release to the public domain.

     Directories
     http://videoblogging-universe.com/vlogs/
     http://www.mefeedia.com/feeds/

     Newsgroups
     http://groups.yahoo.com/group/videoblogging/

Audio Competitive Analysis
     http://www.ourmedia.org/ provides "free storage and free bandwidth for your videos, audio files, photos, text or software. Forever. No catches."

     http://podlot.com/ is a "cheap place to park your podcast." Accounts cost only $5.

     http://www.audioblog.com/ offers podcast hosting and recording tools for $50 per year.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006267

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 79 of 116   Page ID
#:586
Case 1:07-cv-02103-LLS   Document 214-62   Filed 03/18/10   Page 8 of 10

*********************************************************************

**Content Sources**
Content is king.  The current content on the site consists of random
snippets which have been uploaded from various sources.  Some are legit,
others may be infringing on standard copyright (made by others, shared
on the net, and then uploaded by unrelated party to YouTube).

As YouTube grows, a content strategy must be in place to allow for
growth in the right directions.  Licensed content thru partnerships,
requesting content from original sources, sponsoring and producing
original content are all good ways of building the right type of
content going forward.

*********************************************************************

**Risk Areas**
Content
One major risk area is video which is not intended to be shown to a
large audience.  This could include copyrighted materials, but could
also include personal videos which may show people in a negative light.
Although the policy when uploading states that the video must be legit,
YouTube may be liable for any damages which copyright holders may press.

Advertisers
Another major risk area is for advertisers and partners.  Most quality
advertisers are very specific and particular as to how their brand is
portrayed.  Any association to shady topics (sex, drugs, gambling, and
to a lesser degree, alcohol) may make advertiser shy away from a
partnership.

Technology
There may be a risk from other sites and companies to develop products
and services that make YouTube obsolete.  This may come from direct
competitors (iFilm, Apple Quicktime, etc) or from technology companies
(Google, Microsoft, Yahoo).  Additionally, the ability for users to
bypass the site to view video content thru embedded video may also be a
technology risk, since it stops YouTube to fully monetize a users
consuming the video.

*********************************************************************

**Marketing Opportunities**
Although over the next few months, there will be tremendous growth in
usage from word of mouth; there are many ways to accelerate the pace of
trial and usage of the site.  Some standard methods of marketing
include:
   1. Hiring a Publicist
   2. Issuing Press Releases
   3. Join public forums for related areas
        a. Advertising in film schools
        b. Assisting/Sponsoring vlog groups and events
        c. Assisting/Sponsoring in film festivals
        d. Partnership with relevant advertisers (hardware/software
           companies)
        e. General seminars and talks with schools, businesses, etc

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

    4. Advertising
        a. Listed in directories of companies such as Yahoo!
        b. Text-based advertising for related terms
        c. Advertising in public areas for awareness building (Times
           Square, Central Park, other public areas)
    5. Promotions and Contests
        a. Video Contest w/ a Prize
        b. Tie-in w/ vendors that will be doing such events

*****************************************************************

Media Advertising Options
Although it's obvious YouTube will have video ads in the stream, I see
the monetization opportunity in a few key areas:

(a) the front door - which should have the most traffic - could be
exposed to advertisers for take-overs for massive one-day events.

(b) content areas - although you do use tags, I think that a human
categorizer would help people navigate more easily thru the massive
amounts of available video.  Again, takeovers of "Autos" or "College"
or even the existing "Most Popular" areas could be easy wins with
advertisers.

(c) video area - so obviously, a video ad before the video, but
consider breaking up videos (by a professional editor) into 4-5 minute
segments to insert additional video ads.  Obviously a take on what's
done in network.  Also, on the right hand side, I'd suggest using an
industry standard Ad Position.
** Note: there will be some issues w/ this type of advertising if
YouTube allows users to stream using the Embed method (which simply
streams the video).  Advertisers may not want their video ads running
in un-controlled areas, however this is a hurdle which can be overcome.

(d) sponsored search results - this may be an easy fall-back, but
should be considered, especially if users are doing a lot of search
activity.

*****************************************************************

Advertising Landscape
In 2006, $125 billion will be spent in advertising in the US, $114
billion will be spent in offline media outlets, while only $10.7
billion will be spent online, according to Jupiter Research.  For the
foreseeable future, online media spending will continue to grow at a
10-20% rate, while offline spending will only grow at a 4% rate.

Rich Media (which Video Ads is a sub-set) has grown relatively quickly
in the last year, however they are not a large part of the overall
online media spend.  This is mostly due to the restrictions that many
sites have (size limitations, uninitiated audio rules, etc).  In 2003,
Rich media made up $200 million of the $3.3 billion spent online for
marketing, or less than 1%.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006269

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 81 of 116   Page ID
#:598
Case 1:07-cv-02103-LLS   Document 214-62   Filed 03/18/10   Page 10 of 10

```
**********************************************************************
```

Conclusions and Next Steps
    1. Determine the short-term goals
            a. Exponential Growth in User Base over next 3-6 months
            b. Increase the amount and quality of video streams which are
               available to consumers

    2. Determine the long-term priorities
            a. Increase awareness in the Producer area (Contests or
               Promotions)
            b. Begin partnership discussions with advertisers and content
               producers
            c. Create solution for enterprise video streaming
            d. Create solution for video site operator streaming
            e. Create solution for vlogger video streaming

```
**********************************************************************
```

Proposed Revenue Models

    A. Advertising (See Media Advertising Options above)

    B. Subscription / Premium Services for Individuals
            a. Video Resumes, Music Videos, Sports Scouting Reports

    B. Enterprise YouTube for Businesses
            a. Backend for businesses to host and stream video
            b. Secure streaming partner for video site operators (pay per
               view or premium video seller)

    C. Video Ad Streaming Provider
            a. Self-service video ad serving platform for advertisers and
               agencies
            b. Competitors include:
                    i. EyeWonder
    http://www.eyewonder.com/ews/ews_FormatInstantPlayAd.cfm?id=1
                    ii. EyeBlaster
    http://www.eyeblaster.com/products/rich_media_formats/streaming_v
    ideo.asp
                    iii. PointRoll
    http://www.pointroll.com/products/overview.asp
                    iv. Unicast
    http://www.viewpoint.com/pub/advertising/

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY                                    JK00006270
**REDESIGNATED CONFIDENTIAL**

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 82 of 116   Page ID
#:589
Case 1:07-cv-02103-LLS   Document 214-62   Filed 03/18/10   Page 1 of 10

EXHIBIT 46

| From: | Steve Chen <steve@youtube.com> |
| Sent: | Friday, July 22, 2005 8:29 AM |
| To: | YouTube Group <███████████> |
| Subject: | Fwd: introductions - Charles Chariya |
| Attach: | Message Text.txt;YouTube Marketing Analysis - Charles Chariya July 22nd 2005.doc |

Actually, everyone should take a look at this.  I originally though introductions was only appropriate for Chad because marketing == content/design but this may be interesting to everyone.

-s

Begin forwarded message:

From: "Charles Chariya" <███████████>
Date: July 22, 2005 9:17:30 AM PDT
To: "Steve Chen" <steve@youtube.com>, "Hurley Chad" <chad@youtube.com>
Subject: RE: introductions - Charles Chariya

Steve - thanks for the introduction.  Chad, I'd love to meet up with you, Steve and the rest of the team next week.  I am available either Tuesday or Wednesday night.  Let me know what's best for you.

Steve and I have been discussing YouTube over the past week, and I think we've had some fairly productive discussions.  I really think there's huge potential, and I'm excited about the possibilities.

I spent a few hours last night and put together a topline marketing analysis, from my perspective.  Forgive me if this is too forward, but the concept really got my creative juices flowing.

Also, I've asked the surfing department here at Yahoo to include YouTube to the directory, and they'll be reviewing it later today.  This should increase page rank for both Yahoo and Google, which should result in higher search results placement and hopefully, higher traffic as a result.

Charles

-----Original Message-----
From: Steve Chen [mailto:steve@youtube.com]
Sent: Friday, July 22, 2005 10:51 AM
To: Hurley Chad; ███████████
Subject: introductions

hi chad --

this is charles.  a friend from imsa.  he's the guy that i've spoken to

Exhibit 221

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 83 of 116   Page ID
#:590
Case 1:07-cv-02103-LLS   Document 214-62   Filed 03/18/10   Page 2 of 10

you about who has worked at yahoo for the last 5+ years. he's been
working in their marketing/sales department in new york city for the
last 3 years. he'll be coming out here next week for a visit and we
should try to arrange a time to meet up. i think tues/wed nights are
open for you, charles?

-s

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00006260



**YouTube Marketing Analysis**
July 21st, 2005
Charles Chariya

Overview
YouTube is a online video streaming destination which allows users to quickly and easily upload, watch, and share video worldwide.

Usage and Growth
Launched in June 2005, YouTube has grown in popularity and usage. There are currently thousands of videos which users have uploaded to the site, and tens of thousands of monthly unique visitors.

Technology
YouTube has developed a proprietary video conversion technology that converts video from standard digital formats (avi, mpg, etc) into a quick-loading and streaming flash format.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Site Overview..................................................................2
   Finding Content............................................................2
   Sharing Video.............................................................3
User Analysis (Current and Future) ...........................................4
   Individuals...............................................................4
   Film Producers............................................................4
   Other Professionals.......................................................5
Competitive Analysis..........................................................5
Content Sources...............................................................6
Risk Areas....................................................................6
   Content...................................................................6
   Advertisers...............................................................6
   Technology................................................................6
Marketing Opportunities.......................................................6
Media Advertising Options.....................................................7
Advertising Landscape ........................................................7
Conclusions and Next Steps....................................................8
Proposed Revenue Models.......................................................8

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

Site Overview
Finding Content
Currently, the site has minimal navigation, and is focused around a
personalized interface for the content.  Finding content can be done
via search, browsing thru links (uploaders, favorites of other users,
random frontpage streams), and via tags.



SUGGESTIONS: YouTube Reviews (hire copywriters), Add Length to the
description of the videos

Also available is finding video via Recent Uploads, Most Popular, Most
Discussed, Most Added to Favorites, and Random.



SUGGESTIONS: Categorize Videos (hire categorizers), User Rating System

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

Sharing Video
Uploading is quick and easy and requires registration.



SUGGESTIONS: Require several additional fields (Age/Birth date, Gender, Occupation, Industry, Zip Code) for future targeting/profiling purposes

Once registered the uploading and sharing of videos is easy and seamless.





SUGGESTIONS: Application on-desktop to drag/drop video files, and auto-upload to YouTube. Pre-checking procedure to reject non-supported file formats (before upload takes place). Allow for non-video files to be uploaded converted and shared (mp3, wav, other audio).

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

User Analysis (Current and Future)

Individuals
 - Individual Uploaders
The majority of the content on YouTube is currently from random users.
These users not only upload their own work, but can potentially upload
publicly available content of viewing.  Risk area here is copyright as
many videos which are uploaded are not the property of the uploader.

 - Video Sharers
Video sharers are individuals that create, edit, and share video for
public or private consumption.  This might include baby videos,
graduation video, or just hanging out with friends.  This may become
the mainstream user for YouTube over time.  To increase usage by this
group, you may want to consider partnering with hardware manufacturers
(Kodak, Sony, Canon) as the video sharing destination of choice for
people who purchase video capable cameras.

 - Video Resume
Video Resumes is a fairly specific subset of the individual group.
These may include people who want to share their work sample, such as
actors, but this can also become mainstream if YouTube were to partner
with Monster.com or Hotjobs.yahoo.com.

 - Vloggers
Vloggers are people who keep regular diaries or reports using video on
the network.  YouTube could be an easy way to help Vloggers focus on
content, rather than the myriad hosting, streaming, bandwidth issues
that they currently may face.

Film Producers
Film producers are really broken out into two different types, those
that are made, and those that have not made it.  For producers and
directors that are seeking to break into the industry, YouTube could be
a very quick and easy business card to showcase their work.  Allowing
for vanity URLs and customization of the showcase page would be a
premium offering, and would provide an extremely valuable service.

Business Users
 - Training Video
On a corporate basis, video is used sparsely for business purposes.
The main issue relates to delivery, and YouTube can provide a means to
quickly and easily solve this issue.  Not only corporate video, but
partnering with instructional video companies to make the current
libraries accessible may be a good investment.

 - Video Site Operators (Pay per content sites)
Another source of potential revenue is creating an Enterprise version
of YouTube.  This may require some engineering to allow for secure 3rd
party referrals to content which is hosted and served by YouTube.  Some
consideration here would be increased resolution, disk space, private
entry, reporting, and security precautions.  Pricing to such site
operators would likely be fixed monthly fee + streams/bandwidth/usage
fee.  Secure viewing might require a domain key authentication to

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006266

validate that the user requesting the stream is a valid user of the 3rd party site.

Other Professionals
 – Musicians (Music Videos)
Music Video distribution may be an opportunity.  Launch (Yahoo Music) was built upon the Music Video and Audio Streaming, had great support in the music community, and there may be some room to build off of this type of success.

 – Athletes
Scouting Reports, sample video, etc.  This is a fairly specialized marketplace, however sports is a highly monetized and competitive space.

***************************************************************

Competitive Analysis
    http://www.archive.org/stream – Internet Movie Archive allows for users to upload and stream video in any format.  This site still suffers from the delay time in buffering which YouTube avoids by converting files to flash video.  Many VLoggers currently use archive.org to host their media files, and use other sources to host the creative/copy for the vlog.

    Itunes – Apple's site which allows for video sharing/streaming.  This site is limited as most files are in Apple QuickTime format, which does require additional installation for normal PC users, before being able to view.  YouTube also requires Flash, but the penetration of Flash is currently higher than the penetration of QuickTime.

    Vlog.com – Video Blogging site which sells software to create and upload video blogs for streaming.  Software sells for $99 and the current employees provide vlogs which exemplify how the software and streams work.

    http://blip.tv/ – Turnkey Vlog site, uses Archive.org to host/stream video.  Requires Creative Commons license or release to the public domain.

    Directories
    http://videoblogging-universe.com/vlogs/
    http://www.mefeedia.com/feeds/

    Newsgroups
    http://groups.yahoo.com/group/videoblogging/

Audio Competitive Analysis
    http://www.ourmedia.org/ provides "free storage and free bandwidth for your videos, audio files, photos, text or software. Forever. No catches."

    http://podlot.com/ is a "cheap place to park your podcast." Accounts cost only $5.

    http://www.audioblog.com/ offers podcast hosting and recording tools for $50 per year.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006267

**************************************************************

Content Sources
Content is king.  The current content on the site consists of random
snippets which have been uploaded from various sources.  Some are legit,
others may be infringing on standard copyright (made by others, shared
on the net, and then uploaded by unrelated party to YouTube).

As YouTube grows, a content strategy must be in place to allow for
growth in the right directions.  Licensed content thru partnerships,
requesting content from original sources, sponsoring and producing
original content are all good ways of building the right type of
content going forward.

**************************************************************

Risk Areas
Content
One major risk area is video which is not intended to be shown to a
large audience.  This could include copyrighted materials, but could
also include personal videos which may show people in a negative light.
Although the policy when uploading states that the video must be legit,
YouTube may be liable for any damages which copyright holders may press.

Advertisers
Another major risk area is for advertisers and partners.  Most quality
advertisers are very specific and particular as to how their brand is
portrayed.  Any association to shady topics (sex, drugs, gambling, and
to a lesser degree, alcohol) may make advertiser shy away from a
partnership.

Technology
There may be a risk from other sites and companies to develop products
and services that make YouTube obsolete.  This may come from direct
competitors (iFilm, Apple Quicktime, etc) or from technology companies
(Google, Microsoft, Yahoo).  Additionally, the ability for users to
bypass the site to view video content thru embedded video may also be a
technology risk, since it stops YouTube to fully monetize a users
consuming the video.

**************************************************************

Marketing Opportunities
Although over the next few months, there will be tremendous growth in
usage from word of mouth; there are many ways to accelerate the pace of
trial and usage of the site.  Some standard methods of marketing
include:
    1. Hiring a Publicist
    2. Issuing Press Releases
    3. Join public forums for related areas
        a. Advertising in film schools
        b. Assisting/Sponsoring vlog groups and events
        c. Assisting/Sponsoring in film festivals
        d. Partnership with relevant advertisers (hardware/software
           companies)
        e. General seminars and talks with schools, businesses, etc

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

4. Advertising
    a. Listed in directories of companies such as Yahoo!
    b. Text-based advertising for related terms
    c. Advertising in public areas for awareness building (Times Square, Central Park, other public areas)
5. Promotions and Contests
    a. Video Contest w/ a Prize
    b. Tie-in w/ vendors that will be doing such events

*****************************************************************

Media Advertising Options
Although it's obvious YouTube will have video ads in the stream, I see the monetization opportunity in a few key areas:

(a) the front door - which should have the most traffic - could be exposed to advertisers for take-overs for massive one-day events.

(b) content areas - although you do use tags, I think that a human categorizer would help people navigate more easily thru the massive amounts of available video. Again, takeovers of "Autos" or "College" or even the existing "Most Popular" areas could be easy wins with advertisers.

(c) video area - so obviously, a video ad before the video, but consider breaking up videos (by a professional editor) into 4-5 minute segments to insert additional video ads. Obviously a take on what's done in network. Also, on the right hand side, I'd suggest using an industry standard Ad Position.
** Note: there will be some issues w/ this type of advertising if YouTube allows users to stream using the Embed method (which simply streams the video). Advertisers may not want their video ads running in un-controlled areas, however this is a hurdle which can be overcome.

(d) sponsored search results - this may be an easy fall-back, but should be considered, especially if users are doing a lot of search activity.

*****************************************************************

Advertising Landscape
In 2006, $125 billion will be spent in advertising in the US, $114 billion will be spent in offline media outlets, while only $10.7 billion will be spent online, according to Jupiter Research. For the foreseeable future, online media spending will continue to grow at a 18-20% rate, while offline spending will only grow at a 4% rate.

Rich Media (which Video Ads is a sub-set) has grown relatively quickly in the last year, however they are not a large part of the overall online media spend. This is mostly due to the restrictions that many sites have (size limitations, uninitiated audio rules, etc). In 2003, Rich media made up $200 million of the $3.3 billion spent online for marketing, or less than 1%.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

```
*****************************************************************
```

Conclusions and Next Steps
1. Determine the short-term goals
   a. Exponential Growth in User Base over next 3-6 months
   b. Increase the amount and quality of video streams which are
      available to consumers

2. Determine the long-term priorities
   a. Increase awareness in the Producer area (Contests or
      Promotions)
   b. Begin partnership discussions with advertisers and content
      producers
   c. Create solution for enterprise video streaming
   d. Create solution for video site operator streaming
   e. Create solution for vlogger video streaming

```
*****************************************************************
```

Proposed Revenue Models

A. Advertising (See Media Advertising Options above)

B. Subscription / Premium Services for Individuals
   a. Video Resumes, Music Videos, Sports Scouting Reports

B. Enterprise YouTube for Businesses
   a. Backend for businesses to host and stream video
   b. Secure streaming partner for video site operators (pay per
      view or premium video seller)

C. Video Ad Streaming Provider
   a. Self-service video ad serving platform for advertisers and
      agencies
   b. Competitors include:
      i. EyeWonder
http://www.eyewonder.com/ews/ews_FormatInstantPlayAd.cfm?id=1
      ii. EyeBlaster
http://www.eyeblaster.com/products/rich_media_formats/streaming_v
ideo.asp
      iii. PointRoll
http://www.pointroll.com/products/overview.asp
      iv. Unicast
http://www.viewpoint.com/pub/advertising/

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00006270

**From:**      Jawed <██████████>
**Sent:**      Saturday, July 23, 2005 10:36 AM
**To:**        Chad Hurley <chad@youtube.com>
**Cc:**        YouTube Group ████████
**Subject:**   Re: reject?

I say we reject this one, but not the other ones. This one is totally blatant.

Jawed

_____
http://www.jawed.com/


On Sat, 23 Jul 2005, Chad Hurley wrote:

> if we reject this, we need to reject all the other copyrighted
> ones.... should we just develop a flagging system for a future push?
>
> -chad
>
>
>
> On Jul 23, 2005, at 11:26 AM, Jawed wrote:
>
> > http://www.youtube.com/watch.php?v=JibSAAF8zO4
> >
> > Jawed
> >
> > _____
> > http://www.jawed.com/
> >
> >
> >
> >
>
>
>

*Exhibit 222*

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY                    JK00009668

| | |
|---|---|
| **From:** | Steve Chen <steve@youtube.com> |
| **Sent:** | Friday, July 29, 2005 6:51 AM |
| **To:** | Chad Hurley <chad@youtube.com> |
| **Cc:** | YouTube Group < ▮▮▮▮ > |
| **Subject:** | Re: http://www.filecabi.net/ |



right, i understand those goals but, at the same time, we have to
keep in mind that we need to attract traffic. how much traffic will
we get from the personal videos? remember, the only reason why our
traffic surged was due to a video of this type.

i'm not really disagreeing with you but i also think we shouldn't be
so high & mighty and think we're better than these guys. viral
videos will tend to be THOSE type of videos.

-s

On Jul 29, 2005, at 7:45 AM, Chad Hurley wrote:

> hmm, i know they are getting a lot of traffic... but its because
> they are a stupidvideos.com-type of site. they might make enough
> money to pay hosing bills, but sites like this and big-boys.com
> will never go public. I would really like to build something more
> valuable and more useful... actually build something that people
> will talk about and changes they way people use video on the internet.
>
>
>
> On Jul 29, 2005, at 1:33 AM, Steve Chen wrote:
>
>
>> haha ya.
>>
>> or something.
>>
>> just something to watch out for. check out their alexa ranking.
>>
>> -s
>>
>> On Jul 29, 2005, at 1:25 AM, Chad Hurley wrote:
>>
>>
>>> hmm, steal the movies?
>>>
>>>
>>>
>>> On Jul 29, 2005, at 1:05 AM, Steve Chen wrote:
>>>
>>>
>>>
>>>> steal it!
>>>>
>>>>
>>>>
>>>>

Exhibit 223

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

```
>>>>
>>>>
>>>
>>>
>>>
>>>
>>
>>
>>
>>
>
>
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00006393



| | |
|---|---|
| **From:** | Steve Chen < ██████████ > |
| **Sent:** | Wednesday, August 10, 2005 12:27 AM |
| **To:** | Jawed < ██████████ > |
| **Cc:** | Chad Hurley <chad@youtube.com>; YouTube Group < ██████████ > |
| **Subject:** | Re: monitoring videos |

sounds good.

-s

On 8/9/05, Jawed ██████████ wrote:
> lets remove stuff like movies/tv shows.
>
> lets keep short news clips for now. we can become stricter over time, just
> not overnight.
>
> like the CNN space shuttle clip, I like. we can remove it once we're
> bigger and better known, but for now that clip is fine.
>
> Jawed
>
> _____
> http://www.jawed.com/
>
>
>
> On Tue, 9 Aug 2005, Chad Hurley wrote:
>
> > i just don't want to create a bad vibe... and perhaps give the users
> > or the press something bad to write about, sort of like that last
> > blog posting ... http://clintsharp.com/archives/2005/08/09/youtube-
> > stealing-your-content/
> >
> >
> >
> >
> > On Aug 9, 2005, at 3:16 PM, Steve Chen wrote:
> >
> > > but we should just keep that stuff on the site. i really don't see
> > > what will happen.
> > >
> > > what? someone from cnn sees it? he happens to be someone with
> > > power? he happens to want to take it down right away. he gets in
> > > touch with cnn legal. 2 weeks later, we get a cease & desist
> > > letter. we take the video down.
> > >
> > > -s
> > >
> > > On Aug 9, 2005, at 2:40 PM, Jawed wrote:
> > >
> > >
> > >> Steve is changing the most-recent on browse.php to only include
> > >> videos
> > >> that have been reviewed.
> > >>
> > >> Jawed
> > >>

Exhibit 224

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
REDESIGNATED CONFIDENTIAL

```
> > >> _____
> > >> http://www.jawed.com/
> > >>
> > >>
> > >>
> > >> On Tue, 9 Aug 2005, Chad Hurley wrote:
> > >>
> > >>
> > >>
> > >>> we need to start being diligent about rejecting copyrighted /
> > >>> inappropriate content.
> > >>>
> > >>> we are getting serious traffic and attention now, I don't want this
> > >>> to be killed by a potentially bad experience of a network exec or
> > >>> someone visiting us.
> > >>>
> > >>> like there is a cnn clip of the shuttle clip on the site today, if
> > >>> the boys from Turner would come to the site, they might be pissed?
> > >>> these guys are the ones that will buy us for big money, so lets make
> > >>> them happy.
> > >>>
> > >>> we can then roll a lot of this work into a flagging system soon.
> > >>>
> > >>> -chad
> > >>>
> > >>>
> > >>>
> > >>
> > >>
> > >
> > >
> > >
> >
> >
> >
>
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00006690



| | |
|---|---|
| **From:** | Steve Chen <steve@youtube.com> |
| **Sent:** | Friday, September 2, 2005 1:47 AM |
| **To:** | Chad Hurley <chad@youtube.com> |
| **Cc:** | YouTube Group <▮▮▮▮▮▮> |
| **Subject:** | Re: YouTube Message: hey dude |
| **Attach:** | Message Text.txt |

i just went through the admin stuff to review the videos we have on the site now.  one thing that struck me, you know how sites like meetro, mph online, and gamefly are actually using our site as the platform for serving up their video ads/content?  well, over time, more established places will start using us.

should we just assume that a user uploading content really owns the content and is agreeing to all the terms of use?  so we don't take down anything other than obscene stuff?

-s

On Sep 1, 2005, at 12:01 PM, Chad Hurley wrote:

> I emailed this guy in the morning to remove the videos... if he doesn't act soon, I'll remove them.
>
> -Chad                _____
>
>
> On Sep 1, 2005, at 11:54 AM, Steve Chen wrote:
>
>> what do we do here?
>>
>> -s
>>
>> Begin forwarded message:
>>
>>> **From:** YouTube Service <service@youtube.com>
>>> **Date:** September 1, 2005 10:27:17 AM PDT
>>> **To:** ▮▮▮▮▮
>>> **Subject:** YouTube Message: hey dude



**YouTube Message: hey dude**

koolkeith500 has sent you this message at YouTube:

so I take it that you guys are going to have that UCbearcats guy take down all of those family uploaded?



HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00007378

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 98 of 116   Page ID
#:605
Case 1:07-cv-02103-LLS   Document 214-68   Filed 03/18/10   Page 2 of 2

if not, i might as well upload mine back on here :O)

steve wrote:

> hey dude. do you mind taking down the family guy videos? i'm afraid we're going to get in t
it's copyrighted content...


To respond, click here.
Thank you for using YouTube,
YouTube Team.

--------------------------------------------------------------------------------

Copyright © 2005 YouTube, LLC™

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | |
|---|---|
| **From:** | Chad Hurley <chad@youtube.com> |
| **Sent:** | Saturday, September 3, 2005 11:09 PM |
| **To:** | Steve Chen <steve@youtube.com> |
| **Cc:** | Jawed < ████████ > |
| **Subject:** | Re: copyrighted material!!! |

---

lets just work in that flagging feature soon... then we won't be liable.

On Sep 3, 2005, at 2:02 AM, Steve Chen wrote:

> yes, then i agree with you. take down whole movies. take down
> entire TV shows. take down XXX stuff.
>
> everything else keep including sports, commercials, news, etc.
>
> keeping it, we improve video uploads, videos viewed, and user
> registrations. by removing it, we may taint our reputation, but,
> where else are these people going to go to upload personal videos?
>
> -s
>
> On Sep 3, 2005, at 2:00 AM, Jawed wrote:
>
>
>> my suggested policy is really lax though. all I'm saying is: take
>> down
>> whole movies. we dont get many of those. and we SHOULD take down
>> entire TV
>> shows, like an entire family guy episode.
>>
>> we've also been taking down clips of TV shows, like family guy... we
>> should probably continue doing that, otherwise youtube will just
>> look like
>> a dumping ground for copyrighted stuff. if we keep that policy, I
>> don't
>> think our views will decrease at all.
>>
>> XXX stuff we should never allow. at least, not until we have a way to
>> separate it via tagging as "R-rated".
>>
>> Jawed
>>
>> _____
>> http://www.jawed.com/
>>
>>
>>
>> On Sat, 3 Sep 2005, Steve Chen wrote:
>>
>>
>>> ya, i know that if remove all that content. we go from 100,000
>>> views
>>> a day down to about 20,000 views or maybe even lower.
>>>
>>> the copyright infringement stuff. i mean, we can presumably claim

DATE: 4-22-09                        EXHIBIT# 5
DEPONENT: HURLEY, C.
CASE: Viacom, et al., v. YouTube, et al., The Football
Association Premier League, et al., v. YouTube, et al.,
Case Nos. 07-CV-2203 and 07-CV-3582
    A. Ignacio Howard, CLR, RPR, CSR No. 9830

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY                    JK00007420

Exhibit 228

>>> that we don't know who owns the rights to that video and by
>>> uploading, the user is claiming they own that video. we're
>>> protected
>>> by DMCA for that. we'll take it down if we get a "cease and
>>> desist".
>>>
>>> what i mean is, potentially, any of this content could be the user's
>>> videos. maybe it's david sacks uploading a clip/preview of some
>>> movie.
>>>
>>> why don't we just remove the XXX stuff for now?
>>>
>>> -s
>>>
>>> On Sep 3, 2005, at 1:53 AM, Jawed wrote:
>>>
>>>
>>>
>>>> well I'd just remove the obviously copyright infringing stuff.
>>>>
>>>> movies and tv shows, I'd get rid of. we are not a glorified
>>>> putfile,
>>>> right?
>>>>
>>>> none of the most favorite videos are movies or tv shows. we're ok
>>>> cracking
>>>> down on this content. we'll leave music videos, news clips, and
>>>> clips of
>>>> comdey shows for now.
>>>>
>>>> I think thats a pretty good policy for now, no?
>>>>
>>>> Jawed
>>>>
>>>> _____
>>>> http://www.jawed.com/
>>>>
>>>>
>>>>
>>>> On Sat, 3 Sep 2005, Steve Chen wrote:
>>>>
>>>>
>>>>
>>>>
>>>>> i'm thinking it's still okay.
>>>>>
>>>>> what's the difference between big-boys/stupidvideos vs youtube?
>>>>> isn't it the community and user aspect?
>>>>>
>>>>> if you look at the top videos on the site, it's all from this
>>>>> type of
>>>>> content. in a way, if you remove the potential copyright
>>>>> infringements, wouldn't you still say these are still "personal"
>>>>> videos?
>>>>>
>>>>> if you define "personal" videos to be videos on your personal hard
>>>>> drive that you want to upload and share with people?
>>>>>
>>>>> anyway, if we do remove that stuff, site traffic and virality will
>>>>> drop to maybe 20% of what it is. i think, as people hear about
>>>>> the

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00007421

>>>>> site, a good amount of the materials on the site is still
>>>>> personal --
>>>>> they'll start recognizing that it's a place to share their own
>>>>> personal videos.
>>>>>
>>>>> i'd hate to prematurely attack a problem and end up just losing
>>>>> growth due to it.
>>>>>
>>>>> also, doesn't the DMCA cover us from a lot of this, as the guy
>>>>> said?
>>>>>
>>>>> -s
>>>>>
>>>>> On Sep 3, 2005, at 12:22 AM, Chad Hurley wrote:
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>> aaahhhhh, the site is starting to get out of control with
>>>>>> copyrighted material... we are becoming another big-boys or
>>>>>> stupidvideos. if you came to the site now, that is what you would
>>>>>> think the site is all about.... just look at the recent videos in
>>>>>> the admin tool.
>>>>>>
>>>>>> i think we may need to start enforcing the restrictions soon and
>>>>>> implement the flagging feature.
>>>>>>
>>>>>> -chad
>>>>>>
>>>>>>
>>>>>>
>>>>>>
>>>>>>
>>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>
>>>>
>>>>
>>>
>>>
>>>
>>>
>>
>>
>
>
>

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

JK00007422

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 102 of 116   Page ID
#:609
Case 1:07-cv-02103-LLS   Document 214-71   Filed 03/18/10   Page 1 of 1

| | |
|---|---|
| **From:** | Steve Chen <steve@youtube.com> |
| **Sent:** | Wednesday, September 7, 2005 12:28 AM |
| **To:** | Roelof Botha <Botha@sequoiacap.com> |
| **Cc:** | Chad Hurley <chad@youtube.com>; Jawed <​​​​​​​​​> |
| **Subject:** | Re: Racy content |
| **Attach:** | Message Text.txt |

Roelof:

On the dev environment, the first phase of solving this problem is implemented.

I think it's an accepted that in an environment such as YouTube, relying on user-generated content, copyrighted and inappropriate content will find its way onto the site. On the dev environment, we've implemented a flagging system so you can flag videos as being inappropriate or copyrighted. That way, the perception is that we are concerned about this type of material and we're actively monitoring it.

The actual removal of this content will be in varying degrees. We may want to keep some of the borderline content on the site but just remove it from the browse/search pages. That way, you can't find the content easily. Again, similar to Flickr, if you search for the right tags on Flickr, you can find truckloads of adult and copyrighted content. It's just that you can't stumble upon it, you have to be actively searching for it.

-s

On Sep 6, 2005, at 11:18 PM, Roelof Botha wrote:

> Hi guys,
>
> I've noticed that are a few recent 'racy' videos (e.g., http://www.youtube.com/?v=TTFPt_Jpks0).
> Should we create a 'mature' section for this content? Or should we put in the equivalent of a
> 'safe search' function (just like Google has) so we don't alienate the moms that are uploading
> videos on the site?
>
> Best,
> Roelof

Exhibit 230

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00007479

| | |
|---|---|
| **From:** | Chad Hurley <chad@youtube.com> |
| **Sent:** | Friday, September 23, 2005 10:27 AM |
| **To:** | Chen Steve <steve@youtube.com>; Karim Jawed < ██████████ > |
| **Subject:** | flagging change |

hey guys,

can we remove the flagging link for "copyrighted" today? we are
starting to see some complains for this and basically if we don't
remove them we could be held liable for being served a notice. it's
actually better if we don't have the link there at all because then
the copyright holder is responsible for serving us notice of the
material and not the users.

anyways, it would be good if we could remove this asap.

thanks, chad

DATE: 4-22-09
DEPONENT: HURLEY, C,   EXHIBIT# 11
CASE: Viacom, et al., v. YouTube, et al., The Football
Association Premier League, et al., v. YouTube, et al.,
Case Nos. 07-CV-2203 and 07-CV-3582
A. Ignacio Howard, CLR, RPR, CSR No. 9830

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
**REDESIGNATED CONFIDENTIAL**

JK00008043

Exhibit 232

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 104 of 116   Page ID
#:611
Case 1:07-cv-02103-LLS   Document 214-78   Filed 03/18/10   Page 1 of 7

YouTube Ideas                                                                3/22/06
Jawed Karim

Topics:

- **Copyrighted content**
- **3-strikes policy**
- **Bringing back tags**
- **Historical Most Viewed**
- **Connecting local users**
- **Personal video portal**
- **Google Video**
- **YouTube 1-click video uploading application**
- **Apple Movie Trailers**

**Copyrighted content**

Although the new 10-minute length restriction serves well to reinforce the official line
that YouTube is not in the business of hosting full-length television shows, it probably
won't cut down the actual amount of illegal content uploaded since standard 22-minute
episodes can still easily be uploaded in parts, and users will continue to upload the
"juiciest" bits of television shows. Not all copyrighted content on YouTube should be
treated the same:

- As of today episodes and clips of the following well-known shows can still be
  found: Family Guy, South Park, MTV Cribs, Daily Show, Reno 911, Dave
  Chapelle. This content is an easy target for critics who claim that copyrighted
  content is entirely responsible for YouTube's popularity. Although YouTube is
  not legally required to monitor content (as we have explained in the press) and
  complies with DMCA takedown requests, we would benefit from *preemptively*
  removing content that is blatantly illegal and likely to attract criticism. This will
  help to dispel YouTube's association with Napster (Newsweek: "Is YouTube the
  Napster of Video?", "Showbiz unsure if YouTube a friend or foe"). Although a
  more thorough analysis is required, much of this content does not even seem to
  attract many views.

- Obscure/international copyrighted content (Korean soaps, Anime, …): Since this
  "subculture" material is only popular among a small but dedicated group of
  viewers, it is less likely to result in legal problems in the short run, and keeping it
  will continue to attract people and demonstrates that YouTube is the best place
  online to find rare ("long tail") content. Therefore it's best to remove this material
  following DMCA notices, but not preemptively.

Highly Confidential - Attorneys' Eyes Only                                    JK00000173

REDESIGNATED CONFIDENTIAL                                                 Exhibit 237

Case 2:12-cv-08315-MWF-VBK   Document 14-3   Filed 10/17/12   Page 105 of 116   Page ID
#:612
Case 1:07-cv-02103-LLS   Document 214-78   Filed 03/18/10   Page 2 of 7

- Copyrighted content that goes viral and obtains far more views on YouTube than it possibly could have at the original source. Examples: Lazy Sunday, Natalie Portman rapping, Autistic basketball player, Tom Cruise on Oprah. Despite the higher legal risk it may be best to let these clips run their course on YouTube until the DMCA notice arrives, because their forced removals have been highly publicized in the media. For many people these events call into question whether the traditional media really "gets it" and this may ignite discussions that could eventually convince traditional media to see YouTube as a distribution partner and not as an enemy.

## 3-strikes policy

Although users are told in two emails that their accounts will be closed after the third violation, the policy appears to have caught some valuable users (users who attract many other users) by surprise and may have alienated them against YouTube. Some have launched campaigns against YouTube. I think the 3-strikes policy should remain, but we should make it more clear by displaying large warnings on the *website* to the users in question upon login. They don't seem to pay much attention to warnings in emails.

## Bringing back tags

Form's usability study found that search is the predominant way users find videos on YouTube. It's fair to assume that users would also use tags (which are very similar to search) if they were more prominently featured and if they were more accurate. From a UI-perspective, tags have remained in the background since our launch. Another problem is that many users enter useless tags during video upload.

The accuracy of the Related Videos window drives the number of videos viewed on the site. Because the Related Videos results depend entirely on the tags that the (often clueless) video uploader entered, we should A) make video owners aware of the relationship between their tags and Related Videos and B) offer them tools to pick better tags.

Two features that can help users tweak the Related Videos window that is displayed on their own videos:

- Display an initially empty Related Videos window on the video upload page (my_videos_upload) and on the video edit page (my_videos_edit). As the user types tags into the "Tags:" HTML form, the Related Videos page is automatically updated in real-time and filled with the related videos that would be displayed for the tags that the user has entered so far. This is similar to Google Suggest ("As you type, Google will offer suggestions."). See http://www.google.com/webhp?complete=1

- Sometimes videos only make sense in the context in which they relate to a previous video. Examples: commentary or follow-up videos about another video,

Highly Confidential - Attorneys' Eyes Only

REDESIGNATED CONFIDENTIAL

or spoofs/parodies of an original video. In those cases the original video should definitely appear in the Related Videos window, or otherwise the video being viewed does not make sense. However, due to poorly chosen tags the original video often does not appear there. The video author should be able to pick another specific video on YouTube that will then be "forced" to appear as the first video in the Related Videos window. (This could be hacked on top of current functionality with a hidden randomly generated unique tag.)

The "Recent Tags:" field (which has existed since launch) may not be an optimal use of front-page real estate. It would be more relevant and interesting to have a "Top Tags" field instead that only shows the tags of the most popular videos from the previous 24 hours.

We could also store searches entered by users and feature the most popular recent searches, after filtering out the dirty ones.

**Historical Most Viewed**

Many users use the Most Viewed (Today) page to quickly find the newest most entertaining clips. The page only shows videos uploaded in the last two days to keep the content fresh.

The most popular videos of all time can always be found on the Most Viewed (All Time) page, but the videos that were only popular for a few days are lost in a sea of millions of videos once they drop off the Today list. Examples: Scary Maze, Four-legged robotic mule, Breakup.

<u>User activity is the best metric for finding good content</u>. The "best" videos are those with the most views/comments. One way to increase views is to help users find the best videos. Users should be able to browse the "Most Viewed (Today)" page as it appeared on any previous day in the past. (The same applies to "This Week" for any previous week, etc). Note that these pages are static: Once a page is generated for a given time period it will never have to be re-generated, so this feature does not put additional strain on the database.

**Connecting local users**

Like MySpace and other social networking sites have done, YouTube should let people find other local users to strengthen the sense of community. Since we now collect location information during signup, we can add user search functionality:

Highly Confidential - Attorneys' Eyes Only

JK00000175

**REDESIGNATED CONFIDENTIAL**



MySpace's user search

Also interesting:

- Search for videos recorded within X miles of a location. ("Show me all videos recorded in Palo Alto")
- See most popular videos by location. ("Show me videos that are popular among users in Los Angeles")

**Personal video portal**

Much of MySpace's success is due to its members' ability to customize profiles. Although YouTube Profiles are now somewhat customizable, this ability is missing from the user's Video page (profile_videos). Video owners should have more control over this page, so that they can create a "personal video portal". This includes the ability to:

- Change the order of videos shown
- Change layout and color scheme
- Directly embed some videos into the page (using embeddable player)
- Organize videos into albums (may be able to use Playlists)

In the future YouTube could provide video owners with detailed viewing statistics about each video, such as breakdown of viewers by country, gender, and age. These metrics would be especially interesting and valuable to paying commercial content providers who use YouTube as a distribution platform.

**Google Video**

Google's sparse interface lacks community features and is optimized for purchasing music videos, TV shows, and full-length movies. The checkout process is fairly smooth, going from a 30-second preview to payment and download:

Highly Confidential - Attorneys' Eyes Only

JK00000176

REDESIGNATED CONFIDENTIAL



## Google Video Player notable features

The Google Video Player can be used to watch any video on Google Video, and must be used to watch paid content. Every video watched is automatically downloaded and saved for future access to `My Documents\My Videos\Google Videos`.

- Resizable video, can watch at any size including full screen mode
- Paid video content encoding: 480x360, 800 kbps video, 128 kbps audio
- Quick navigation through scene selection thumbnails:



Highly Confidential - Attorneys' Eyes Only

JK00000177

REDESIGNATED CONFIDENTIAL

Google Results Page notable features



- Can play all search result videos back-to-back with one click
- Can play search result videos within thumbnail view (each thumbnail is actually a small embedded player)

Search result sort/display methods

- Sort by Price: For Sale / Free
- Sort by Length: Long / Medium / Short
- Display mode: Matrix / Detailed list

Google Watch Page notable features

Flash player

- Google Flash stream: 320x240, 430 kbps video, 64 kbps audio (YouTube Flash stream: 320x240, 300 kbps video, 64 kbps audio)
- User can skip video beyond what is buffered
- User can switch from windowed to full screen mode and back while playing without interrupting video position

Most videos are downloadable in formats:

- MPEG-4
- Google Video Player (.gpv) This is a pointer file that simply contains the full video content's URL. Upon opening this file in Google Video Player, the corresponding .gpi file (the video data) is shown while being downloaded and saved in the background.

Highly Confidential - Attorneys' Eyes Only                                    JK00000178

REDESIGNATED CONFIDENTIAL

<u>Google Video upload process</u>

The upload process is cumbersome at best and is optimized for very large uploads, not casual user-generated content. After uploading, it can take several days for the content to be reviewed, before it appears on the site.

Uploading videos requires using the Google Video Uploader application. Possible advantages of using an application instead of a web interface are:

- There is no maximum upload file size. HTTP uploads are limited by the maximum POST content-length specified in the web server.
- Uploads of large files can be resumed if interrupted in the middle.
- User sees reliable feedback of upload progress.

**YouTube 1-click video uploading application**

Most of the above advantages of using the Google Video Uploader currently do not apply to YouTube. However, I have noticed that more people are using YouTube videos as a messaging medium. That is, the purpose of their videos is to talk to other YouTube members. For such videos the current upload process is cumbersome and has a high overhead because it requires many steps. Especially for non-tech-savvy members there would be advantages to having an application that integrates video capture and uploading all into a one-click process. Since building such a product internally is a development headache it would be worthwhile to investigate whether we could contract out the development of such an application if it is deemed useful.

**Apple Movie Trailers**

Apple Movie Trailers is pushing the envelope for freely available online video clips. They are encoded at 1920x1080, H.264 10 mbps, and the average 2 min trailer is 150 MB. This is too large to stream in real-time on most broadband connections, but it will be possible soon, with Comcast already offering 6 mbps connections.

Highly Confidential - Attorneys' Eyes Only

JK00000179

**REDESIGNATED CONFIDENTIAL**

EXHIBIT E

**Heather Rowland**

| | |
|---|---|
| **From:** | Cris Armenta |
| **Sent:** | Monday, October 15, 2012 12:52 PM |
| **To:** | talger@perkinscoie.com |
| **Cc:** | Sol, Credence (credence.sol@sol-law.com); Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Andy Schapiro (AndrewSchapiro@quinnemanuel.com); Heather Rowland; sbali@perkinscoie.com |
| **Subject:** | Innocence of Muslims |

We are filing our papers tomorrow out of respect for your schedule.

I have just been informed by Nakoula's attorney that Nakoula (aka Sam Bacile or Sam Basel) DOES NOT OWN the rights to the film and will not claim copyright ownership or the rights to the film.  We believe it is YouTube's burden to identify the correct copyright owner, in light of Garcia's allegation that she owns the rights to her dramatic performance.  In light of your comments during our meet and confer that YouTube's position that the work is joint between Nakoula and Garcia.   This party admission will be in our papers.  In light of this admission, we believe you should revisit YouTube's refusal to take down the content because Nakoula is not a copyright owner, pursuant to his attorney's admission of a few minutes ago.  We do not believe that YouTube can identify any copyright owner other than Garcia – therefore she has the right to stop third party infringers, including Nakoula, YouTube and all the other posters.  Feel free to call him to verify – Steve Seiden in Hawthorne.
Please advise us if your position.

Cris

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On October 17, 2012 I served the following document(s) described as:

**(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

**(2)   REQUEST FOR JUDICIAL NOTICE**

**(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION**

**(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION**

**(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

**(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION**

**(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

1

on the interested parties in this action by placing true copies thereof addressed as follows:

**Timothy L. Alger**
**Sunita Bali**
**Perkins Coie LLP**
**3150 Porter Drive**
**Palo Alto, CA 94304-1212**
TAlger@perkinscoie.com
sbali@perkinscoie.com


☑      BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on  October 17, 2012 in Los Angeles, California.

Heather Rowland

NOTICE OF RELATED CASES

1

## PROOF OF SERVICE

2   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4        I am employed in the County of Los Angeles, State of California.  I am over

5   the age of eighteen years and not a party to the within action.  My business address

6   is 1511 West Beverly Blvd, Los Angeles, California 90026.

7        On _____ I served the following document(s) described as:

8   **(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING**
9   **ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY**
**INJUNCTION, AND ORDER OF IMPOUNDMENT**

10   **(2)  REQUEST FOR JUDICIAL NOTICE**

11   **(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD**
12   **FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE**
**APPLICATION**

13

14   **(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE**
**APPLICATION**

15

16   **(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE**
**APPLICATION**

17

18   **(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE**
19   **APPLICATION**

20

21   **(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE***
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER,**
22   **ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY**
**INJUNCTION, AND ORDER OF IMPOUNDMENT**

23

24   on the interested parties in this action by placing true copies thereof enclosed in
25   sealed envelopes addressed as follows:

26

27

28

1
**PROOF OF SERVICE**

*Nakoula B. Nakoula*
*c/o*
*Los Angeles County Sheriff's Department*
*Stanley Mosk Courthouse*
*110 North Grand Avenue Room 525*
*Los Angeles, 90012*

☐   PERSONAL SERVICE: On _____ I served the foregoing documents listed above by personally handing them to

_____

*I declare under penalty of perjury under the law of the United States of America that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.*

Executed on _____ in Los Angeles, California.

_____

**PROOF OF SERVICE**

2