1   Timothy L. Alger (SBN 160303)
    TAlger@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA  94304-1212
    Telephone:  650.838.4300
4   Facsimile:  650.838.4350

5   Sunita Bali (SBN 274108)
    SBali@perkinscoie.com
6   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
7   Los Angeles, CA  90067-1721
    Telephone:  310.788.9900
8   Facsimile:  310.788.3399

9   Attorneys for Defendants
    Google Inc. and YouTube, LLC

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14   CINDY LEE GARCIA, an individual, | Case No.  CV-12-8315-MWF (VBKx) |
| 15                   Plaintiff, | OPPOSITION OF GOOGLE INC. AND YOUTUBE, LLC TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND ORDER OF IMPOUNDMENT |
| 16       v. | |
| 17   NAKOULA BASSELEY NAKOULA, an individual also known as SAM BACILE, MARK BASSELEY YOUSSEF, ABANOB BASSELEY NAKOULA, MATTHEW NEKOLA, AHMED HAMDY, AMAL NADA, DANIEL K. CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, ROBERT BACILY, NICOLA BACILY, THOMAS J. TANAS, ERWIN SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID AHLAWI; GOOGLE, INC., a Delaware Corporation; YOUTUBE, LLC, a California limited liability company, and DOES 1 through 10, inclusive, | Date:          December 3, 2012 Time:          10:00 a.m. Courtroom: 1600 Honorable Michael W. Fitzgerald |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25                   Defendants. | |
| 26 | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND .....................................................................................3

III.  LEGAL STANDARDS ...........................................................................6

IV.   ARGUMENT...........................................................................................7

    A.    Plaintiff Cannot Show a Likelihood of Irreparable Harm ...................7

        1.    Plaintiff cannot establish a causal connection between the allegedly infringing conduct of the YouTube Defendants and the injury she alleges ....................................................................7

        2.    Plaintiff has not identified any irreparable harm ......................9

        3.    Plaintiff's inexcusable delay undermines her claims of irreparable harm ....................................................................12

    B.    Plaintiff Cannot Show a Likelihood of Success On the Merits of Her Copyright Infringement Claims Against the YouTube Defendants.........................................................................................13

        1.    Plaintiff does not own a copyright in the Film .......................13

        2.    Plaintiff cannot hold a copyright in only those portions of the Film containing her dramatic performance.........................14

        3.    Plaintiff identifies Youssef as the Film's exclusive copyright owner, giving him the right to post the Film on YouTube ...................................................................................16

        4.    Plaintiff's dramatic performance was a "work for hire." .........17

        5.    Plaintiff is not even a joint author...........................................19

    C.    Plaintiff Cannot Show that the Equities Tip In Her Favor. ...............20

    D.    Plaintiff's Requested Injunction Would be a Prior Restraint, and Would Not Serve  the Public Interest...............................................21

V.    CONCLUSION .....................................................................................24

-i-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

# TABLE OF AUTHORITIES

**Page**

CASES

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ............................................................13, 15, 20

*Abend v. MCA*,
   863 F.2d 1465 (9th Cir. 1988), *aff'd on other grounds sub. nom. Stewart*
   *v. Abend*, 495 U.S. 207 (1990) ........................................................................10

*Alexander v. United States*,
   509 U.S. 544 (1993)............................................................................................21

*Anderson v. United States*,
   612 F.2d 1112 (9th Cir. 1980) ...........................................................................6

*Antelope Valley Press v. Poizner*,
   162 Cal. App. 4th 839 (2008) ....................................................................18, 19

*Balboa Island Village Inn, Inc. v. Lemen*,
   40 Cal. 4th 1141 (2007)...................................................................................23

*Booth v. Colgate-Palmolive Co.*,
   362 F. Supp. 343 (S.D.N.Y. 1973) ..................................................................15

*Campbell Soup Co. v. ConAgra, Inc.*,
   977 F.2d 86 (3d Cir. 1992) ...........................................................................7, 9

*Caribbean Marine Svcs. Co., Inc. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ...........................................................................7

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985) ...........................................................................12

*City of Los Angeles v. County of Kern*,
   462 F. Supp. 2d 1105 (C.D. Cal. 2006)..........................................................6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................11

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989)....................................................................................13, 18

-ii-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Dahl v. HEM Pharmaceuticals Corp.,*
    7 F.3d 1399 (9th Cir. 1993) ......................................................................6

*DeNovellis v. Shalala,*
    135 F.3d 58 (1st Cir. 1998)......................................................................10

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) ................................................................13

*Evans v. Evans,*
    162 Cal. App. 4th 1157 (2008) ...............................................................21

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (1996) .................................................................15

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
    654 F.3d 989 (9th Cir. 2011) ................................................................6, 7

*Goldie's Bookstore, Inc. v. Sup. Ct.,*
    739 F.2d 466 (9th Cir. 1984) ..................................................................12

*J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.,*
    711 F. Supp. 2d 1094 (C.D. Cal. 2010) ..................................................3

*Jules Jordan Video v. 144942 Canada,*
    617 F.3d 1146 (9th Cir. 2010) ................................................................16

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
    634 F.2d 1197 (9th Cir. 1980) ................................................................20

*Laws v. Sony Music Entertainment, Inc.,*
    448 F.3d 1134 (2006) ..............................................................................15

*Lin-Brook Builders Hardware v. Gertler,*
    352 F.2d 298 (9th Cir. 1965) ..................................................................19

*Munaf v. Geren,*
    553 U.S. 674 (2008)..................................................................................9

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976)................................................................................21

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3
4
*New Era Pubs. Int'l, APS v. Henry Holt & Co.,*
695 F. Supp. 1493 (S.D.N.Y. 1988), *aff'd*, 873 F.2d 576 (2d Cir. 1989).......9, 10

5
6
*New York Times Co. v. Sullivan,*
403 U.S. 713 (1971) (per curiam)..................................................21

7
8
*Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
762 F.2d 1374 (9th Cir. 1985) ......................................................12

9
10
*Oddo v. Ries,*
743 F.2d 630 (9th Cir. 1984) ........................................................19

11
*Perfect 10, Inc. v. Google Inc.,*
653 F.3d 976 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1713 (2012) ..............8, 11

12
13
*Religious Tech. Ctr. v. F.A.C.T.Net,*
901 F. Supp. 1519 (D. Colo. 1995) ...............................................23

14
15
*Religious Tech. Ctr. v. Netcom On-Line Commc'ns Svcs., Inc.,*
907 F. Supp 1361 (N.D. Cal. 1995)...............................................23

16
17
*Richlin v. Metro-Goldyn-Mayer Pictures, Inc.,*
531 F.3d 962 (9th Cir. 2008), *cert. denied*, 555 U.S. 1137 (2009) ...................19

18
19
*Richmond v. Weiner,*
353 F.2d 41 (9th Cir. 1965) ....................................................16, 19

20
21
*Rivera-Vega v. ConAgra, Inc.,*
70 F.3d 153 (1st Cir. 1995).............................................................7

22
*Salinger v. Colting,*
607 F.3d 68 (2d Cir. 2010) ....................................................8, 9, 23

23
24
*Sampson v. Murray,*
415 U.S. 61 (1974)........................................................................10

25
26
*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,*
997 F.2d 484 (8th Cir. 1993) ...........................................................6

27
28
*Schenk v. United States,*
249 U.S. 47 (1919)........................................................................23

-iv-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

# TABLE OF AUTHORITIES
## (continued)

Page

*Selby v. New Line Cinema Corp.,*
  96 F. Supp. 2d 1053 (C.D. Cal. 2000)................................................15

*Shegog v. Bd. of Ed. of City of Chicago,*
  194 F.3d 836 (7th Cir. 1999)........................................................10

*Stormans, Inc. v. Selecky,*
  586 F.3d 1109 (9th Cir. 2009)......................................................20

*Technology & Intellectual Prop. Strategies Group PC v. Fthenakis,*
  2012 WL 159585 (N.D. Cal. Jan. 17, 2012)........................................7

*Tough Traveler, Ltd. v. Outbound Prods.,*
  60 F.3d 964 (2d Cir. 1995).........................................................12

*Trenton v. Infinity Broadcasting Corp.,*
  865 F. Supp. 1416 (C.D. Cal. 1994)................................................19

*Twentieth Century Fox Film Corp. v. Entm't Distrib.,*
  429 F.3d 869 (9th Cir.2005).........................................................19

*U.S. ex rel. v. Board of Trustees of Univ. of Ala.,*
  104 F.3d 1453 (4th Cir. 1997)......................................................16

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982)..................................................................23

*Whitney v. California,*
  274 U.S. 357 (1927)..................................................................21

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)...............................................................6, 7, 20

**STATUTES**

17 U.S.C. § 101.................................................................17, 19

17 U.S.C. § 102......................................................................13

17 U.S.C. § 106..............................................................10, 14, 16

17 U.S.C. § 201(a)........................................................13, 16, 17, 19

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

# TABLE OF AUTHORITIES
## (continued)

Page

17 U.S.C. § 201(b) .................................................................17

17 U.S.C. §512(c) .................................................................14

-vi-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   Defendants Google Inc. ("Google") and YouTube, LLC ("YouTube")

2   (collectively the "YouTube Defendants") oppose plaintiff Cindy Lee Garcia's

3   Motion for a Preliminary Injunction and Order of Impoundment.

## I.   INTRODUCTION

5   Plaintiff Cindy Lee Garcia ("Plaintiff"), an actress who appears for about five

6   seconds in a controversial "trailer" for a film called "Innocence of Muslims" (the

7   "Film"), asks this Court to order the YouTube Defendants to remove all copies of

8   the Film from Youtube.com, a video sharing site.  Plaintiff alleges direct and

9   secondary copyright infringement, but these baseless copyright claims are really

10  nothing more than a pretext to seek removal from YouTube of material that she

11  considers offensive.

12  Under copyright law, Plaintiff's allegations establish that defendant Mark

13  Basseley Youssef ("Youssef") has a protectable copyright interest in the Film he

14  both wrote and produced, giving Youssef the right to upload and display the Film

15  on Youtube.com.  Plaintiff's complaint also establishes that she lacks any copyright

16  interest in the Film.  Plaintiff admits that she did not author the Film and that her

17  contribution to the Film is nothing more than a "work for hire."  She concedes that

18  she functioned as an employee, performing a script which was captured on film and

19  dubbed over by others, all under the complete control of Youssef.  Nowhere does

20  Plaintiff establish that she was, or even understood herself to be, an independent

21  contractor with a separate and exclusive copyright in her brief appearance in the

22  Film.

23  Plaintiff's real grievance here—Youssef's distortion of her brief performance

24  in the Film so as to make her character appear to mock Islam and Mohammed—

25  does not involve copyright law.  Rather, the "injury" for which she seeks redress

26  involves the law of contracts, fraud, and/or right-of-publicity, all against Youssef or

27  others.  But her manufactured copyright claims against the YouTube Defendants,

28  who merely provide a platform for the sharing of videos on the Internet, clearly fail

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    on these pleadings.  Lacking any viable copyright claim against the YouTube

2    Defendants, plaintiff is not entitled to the takedown order she seeks from this Court.

3         Broader social policy also supports denial of plaintiff's application.  She

4    seeks to use copyright law as a means of stifling speech about a matter of public

5    concern simply because she objects to that speech.  Irrespective of the Film's

6    artistic or social merits, Plaintiff's own allegations demonstrate that the Film is now

7    part of important public debate, even becoming an issue in this year's presidential

8    campaign.  Granting injunctive relief prior to first adjudicating whether plaintiff

9    does actually hold a legitimate copyright interest in the Film, and if she does,

10   whether she is entitled to compel the Film's editing and removal from YouTube,

11   would be an unconstitutional prior restraint.

12        It is well established that United States law protects and encourages speech,

13   including discourse about matters that are the subject of strong disagreement.  In

14   this country, our laws permit even the vilest criticisms of governments, political

15   leaders, and religious figures as legitimate exercises in free speech.  The First

16   Amendment, the Digital Millennium Copyright Act, the Communications Decency

17   Act, and other laws drastically limit efforts by parties wishing to restrict and punish

18   speech on the Internet and elsewhere.  No matter one's views about the merits of

19   the Film, it is beyond dispute that the Film's existence and impact are a matter of

20   widespread public concern.  Indeed, Plaintiff's involvement with the Film (which

21   she herself has aggressively publicized on television) is newsworthy in itself.

22        Nor is Plaintiff entitled to the injunctive relief she seeks under settled legal

23   standards.  She has inexcusably delayed in moving for injunctive relief, given that

24   the Film has been available for viewing on YouTube (and plaintiff admits she was

25   aware of this) since early summer.  Even after filing this action, she waited another

26   three weeks before seeking a temporary restraining order.  And any limited private

27   interest Plaintiff might possess, to the extent any exists at all, in enjoining the

28   Film's availability is heavily outweighed by the public's interest in having the Film

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   remain accessible, given the great debate that has developed over the Film's

2   contents, its fallout, and statements made about it by the U.S. Administration.[1] For

3   all of these reasons, Plaintiff's motion should be denied.

## II.   BACKGROUND

5       This motion is Plaintiff's third attempt to obtain an order removing the Film,

6   a 14-minute movie trailer, from YouTube.[2]  Plaintiff alleges that she was duped

7   into appearing as an actress in the Film.  (First Amended Complaint ("FAC") ¶ 4

8   [Dkt. No. 5].)  The English version of the Film[3] was first posted onto YouTube on

9   July 2, 2012 by Youssef, who also goes by the names Sam Bacile and Nakoula

10  Basseley Nakoula.  (*Id.* ¶¶ 1, 29.)  The Film was posted again on YouTube, this

11  time dubbed in Arabic, on September 11, 2012.  (*Id.* ¶¶ 1, 30.)  The Film's criticism

12  of Mohammed has sparked public debate, and in some countries, civil unrest.[4]

13      Plaintiff contends the Film harmed her personally and professionally.  (*Id.* ¶¶

14  4, 8-9, 29, 38-39.)  On September 19, 2012, she filed a complaint in Los Angeles

15  Superior Court against Youssef (named as Nakoula Basseley Nakoula), unidentified

16  producers of the Film (named as "Does"), Google, and YouTube.  (Request for

17  Judicial Notice ("RJN"), Exh. A.)  Plaintiff sought declaratory relief, injunctive

18  relief, and damages against all of the defendants under several common law

---

20      [1] The Film's actual impact is in genuine dispute to this day.  On October 9, 2012, on the eve of
21  congressional hearings, the U.S. State Department contradicted earlier assertions by the U.S. Ambassador
    to the United Nations that the attack on the U.S. consulate in Libya was part of rioting over the Film, and
22  acknowledged that the attack – which resulted in the death of Ambassador J. Christopher Stevens – was a
    planned terrorist attack unconnected with the Film.  *See US officials: We Didn't Link Libya Attack to*
23  *Video,* available at http://www.google.com/hostednews/ap/article/ALeqM5grvFY_slQXSwZCx
    GSAa6gZS-0_TA?docId=0eb49c9e195f4df0b1080e8b9d065fa0; *State Department Admits It Knew Libya*
24  *Attack was Terrorism,* available at http://www.csmonitor.com/World/Latest-News-Wires/2012/1009/State-
    Department-admits-it-knew-Libya-attack-was-terrorism.
25      [2] YouTube "is a publicly available website where persons can post video clips for viewing by the
    general public." *J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d 1094, 1098 (C.D.
26  Cal. 2010).
        [3] The original posting of the Film is at http://www.youtube.com/watch?v=qmodVun16Q4.
27  Plaintiff appears at 9:04-9:05 and 9:08-9:11.
        [4] In several countries where the Film appears to violate local laws, YouTube has made the Film
28  inaccessible.  However, the YouTube Defendants have determined that the Film neither violates United
    States laws or YouTube's community standards.

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   theories, including invasion of privacy, fraud, and slander, and under California's

2   right of publicity and unfair business practices statutes. (*Id.*) The bulk of the state

3   court complaint was devoted to allegations against Youssef and the other

4   defendants involved in creating and publishing the Film. (*Id.*) Plaintiff made no

5   claims under the Copyright Act, and did not assert that she held a copyright in the

6   Film or any portion of it.

7        On September 20, 2012, Judge Luis A. Lavin denied plaintiff's *ex parte*

8   application for temporary restraining order requiring the removal of the Film,

9   holding that Plaintiff failed to show any likelihood of prevailing on her claims.

10   (RJN, Exh. B.) Judge Lavin also denied Plaintiff's request for an order to show

11   cause why a preliminary injunction should not be issued. (*Id.*)

12        Five days later, Plaintiff voluntarily dismissed her state court action (RJN,

13   Exh. C), and on September 26, 2012, she initiated this action against the YouTube

14   Defendants, Youssef (named as Nakoula), and Does 1 through 10, claiming (1)

15   direct copyright infringement, (2) secondary copyright infringement, (3) fraud, (4),

16   unfair business practices, (5) libel, and (6) intentional infliction of emotional

17   distress. [Dkt. No. 1.] Only copyright claims are asserted against the YouTube

18   Defendants.

19        On October 4, 2012, Plaintiff amended her complaint to add Youssef as a

20   named Defendant following the public disclosure of his real name during criminal

21   proceedings after he was arrested for violating the terms of his probation.[5] [Dkt.

22   No. 5.] On October 17, 2012, Plaintiff filed an *ex parte* application for temporary

23   restraining order, which was denied on October 18, 2012, and the Court set a

24   briefing schedule and a hearing date for Plaintiff's Motion for Preliminary

25   Injunction. [Dkt. No. 15.]

26

27   _____

28   [5] *See* http://news.yahoo.com/calif-man-behind-anti-muslim-film-ordered-jailed-012117266.html

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

-4-

1  Plaintiff alleges that she sought and received an acting role in the Film in

2  July 2011. (FAC ¶ 27.) Plaintiff maintains that the Film was "represented to be an

3  'historical Arabian Desert adventure film'" (*id.*), but the Film later was "changed

4  horrifically to make it appear that Ms. Garcia voluntarily performed in a hateful

5  anti-Islamic production." (*Id.* ¶ 29) Plaintiff contends that "the innocuous lines that

6  plaintiff delivered on set were overdubbed so as to give the appearance that she was

7  accusing the Islamic religious figure Mohammed of being a child molester and a

8  sexual deviant." (*Id.* ¶ 8.) She further alleges that "[t]he words that were put into

9  plaintiff's mouth were so offensive, not only to plaintiff but to millions worldwide,

10  that it sparked [] riots and violence around the globe." (*Id.*)

11  The FAC makes a number of admissions that are relevant to Plaintiff's claim

12  of copyright ownership (or lack thereof). Plaintiff states that she is "an actress who

13  appears in the Film." (*Id.* ¶ 4.) Plaintiff "was given only specific pages of a script

14  titled *Desert Warrior*." (*Id.* ¶ 28.) She alleges no involvement in the writing,

15  directing, filming, editing, or producing of the Film. Her role was merely to read

16  lines from the script, and Plaintiff concedes that the dubbed words she is depicted

17  as uttering in the Film were never actually spoken by her. (*Id.* ¶ 4.) In other words,

18  those words were not part of her alleged performance.

19  Plaintiff admits that she received the script from Youssef, who "held himself

20  out as the writer and producer of the Film," and "managed all aspects of the

21  production." (*Id.* ¶ 5.) Plaintiff alleges that "Defendant [Youssef] used her as a

22  puppet." (*Id.* ¶ 8.) She also alleges that the producers "intentionally concealed the

23  purpose and content of the film." (*Id.* ¶ 27; *see also id.* ¶ 29 ("the content and

24  overall purpose of the Film was concealed from her").)

25  The FAC states that when the Film was released publicly on YouTube,

26  Plaintiff's depicted performance was "grotesquely different than the performance

27  that plaintiff actually had delivered." (*Id.* ¶ 8.) She describes her performance in

28  the Film as "distorted and disguised." (*Id.* ¶ 10.) Plaintiff asserts that the producers

-5-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   "manipulated plaintiff's image to create the false appearance of anti-Muslim

2   bigotry by plaintiff." (*Id.* ¶ 74.)

3       Plaintiff believes that she signed a contract to work on the Film, but she has

4   not come forward with it, and she asserts the missing document merely "ensured

5   that she would receive IMDB credit." (*Id.* ¶ 6.) Plaintiff also alleges that she

6   actually is not sure whether she signed a contract, and such a form is "unknown to

7   her at this time, if it exists." (*Id* ¶ 7.) These inconsistencies do not dissuade her

8   from firmly alleging what is *not* in the contract that she might have signed, but

9   which also might not exist: "She does recall that the contract did ***not*** call for her to

10  transfer any rights, including any copyrights, and that it was not a 'work for hire'

11  agreement." (*Id.* ¶ 6 (original emphasis).)

## III.   LEGAL STANDARDS

13      "A preliminary injunction is an extraordinary remedy never awarded as of

14  right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). There

15  must be "a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A

16  plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on

17  the merits; (2) a likelihood of irreparable harm in the absence of preliminary

18  injunctive relief; (3) that the balance of equities tips in her favor; and (4) that an

19  injunction is in the public interest. *Id.* at 20; *Flexible Lifeline Sys., Inc. v. Precision*

20  *Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011).

21      A request for a mandatory preliminary injunction that would alter the status

22  quo "is subject to heightened scrutiny and should not be issued unless the facts and

23  law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d

24  1399, 1403 (9th Cir. 1993); *Anderson v. United States,* 612 F.2d 1112, 1114 (9th

25  Cir. 1980) (noting that a mandatory preliminary injunction is particularly

26  disfavored). Also, "the burden on the moving party is particularly heavy where, as

27  here, granting the preliminary injunction would give the movant substantially the

28  same relief it would obtain after a trial on the merits." *City of Los Angeles v.*

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   *County of Kern*, 462 F. Supp. 2d 1105, 1111 (C.D. Cal. 2006); *see also Sanborn*

2   *Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.

3   1993); *Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 164 (1st Cir. 1995).

### IV.   ARGUMENT

### A.   Plaintiff Cannot Show a Likelihood of Irreparable Harm.

6   "[E]ven in a copyright infringement case, the plaintiff must demonstrate a

7   likelihood of irreparable harm as a prerequisite for injunctive relief, whether

8   preliminary or permanent." *Flexible*, 654 F.3d at 998. Irreparable harm is harm

9   that "cannot be redressed by a legal or an equitable remedy following a trial."

10   *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). To justify

11   injunctive relief, the alleged harm must be likely. *Winter*, 555 U.S. at 22. It must

12   also be imminent. *See Caribbean Marine Svcs. Co., Inc. v. Baldrige*, 844 F.2d 668,

13   674 (9th Cir. 1988) (requiring "immediate threatened injury").

14   Plaintiffs must make a *factual* showing that irreparable injury will result in

15   the absence of an injunction. *See Flexible*, 654 F.3d at 998 (plaintiff must make a

16   showing of irreparable injury "on the facts of his case"). Mere assertions of

17   irreparable harm will not suffice. *See, e.g.*, *Baldrige*, 844 F.2d at 674 ("plaintiff

18   must *demonstrate* immediate threatened injury as a prerequisite to preliminary

19   injunctive relief" (original emphasis)); *Technology & Intellectual Prop. Strategies*

20   *Group PC v. Fthenakis*, 2012 WL 159585, at *4 (N.D. Cal. Jan. 17, 2012) (plaintiff

21   "must demonstrate it will suffer an immediate injury that is not speculative").

### 1.   Plaintiff cannot establish a causal connection between the allegedly infringing conduct of the YouTube Defendants and the injury she alleges.

24   Removing the Film now—more than three months after it was posted to

25   YouTube and Plaintiff became aware of the same,[6] and more than one month after

26   it became the subject of widespread debate—would not prevent any of the personal,

---

[6] Plaintiff reports that she first viewed the Film after Youssef told her it had been posted on YouTube "sometime after July 2, 2012." (See Garcia Declaration at ¶ 12.)

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   reputational and emotional harms Plaintiff alleges.  Even if copyright law provides

2   a remedy for these types of injuries—which is doubtful[7]—the injunctive relief she

3   wants would not solve her problem.  Plaintiff simply cannot establish under the law

4   "a sufficient causal connection" between the allegedly infringing conduct she seeks

5   to enjoin and the injuries she seeks to avoid.  *Perfect 10, Inc. v. Google Inc.*, 653

6   F.3d 976, 982 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1713 (2012).

7        The Ninth Circuit's recent decision in *Perfect 10* is instructive.  Perfect 10

8   owned copyrights in "photographic images of nude models" and made those images

9   available for a fee on its website.  *Id*. at 977-78.  Perfect 10 sued Google, claiming

10  that Google's search engine and other services infringed Perfect 10's copyrights

11  (and allegedly threatened to bankrupt Perfect 10) by making them accessible for

12  free.  *Id*. at 978.  The district court denied Perfect 10's motion for a preliminary

13  injunction and the Ninth Circuit affirmed, agreeing that Perfect 10 had not shown

14  that an injunction would prevent the harm of which it complained.  Particularly

15  important to the Ninth Circuit's analysis was the fact that "search engines other

16  than Google contribute to making Perfect 10 images freely available"—meaning an

17  injunction against Google would have been futile.  *Id*. at 982.

18       The same reasoning applies here.  All of Plaintiff's purported harms arise

19  from the Film.  But an order against the YouTube Defendants will not entirely

20  remove the Film from the Internet or other avenues of distribution, and it will not

21  prevent others from seeing, sharing, and talking about the Film.  Since the Film was

22  posted three months ago, it has been viewed and copied by countless individuals.

23  (*See* FAC ¶ 3.)  A takedown order against the YouTube Defendants will not

24  alleviate Plaintiff's safety concerns, restore plaintiff's "career and reputation" (*see*

25  *id*. ¶ 38), or assuage the anger of those outraged by the Film (*see id*. ¶ 34).

26

27

28      [7] *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("relevant harm" is that which affects "the parties' *legal interests*" and "cannot be remedied after a final adjudication" (emphasis added)).

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   Thus, even if we assume that these feared personal harms normally might

2   justify a copyright injunction, Plaintiff's three-month delay in seeking relief and the

3   broad distribution of the Film in the interim makes it impossible to establish the

4   requisite causal connection necessary to support a takedown order.

5            **2.      Plaintiff has not identified any irreparable harm.**

6   Because it is an "extraordinary and drastic remedy," *Munaf v. Geren*,

7   553 U.S. 674, 689-90 (2008), preliminary injunctive relief is appropriate only if it is

8   "the *only* way of protecting the plaintiff from harm." *Campbell Soup*, 977 F.2d at

9   91 (emphasis in original).  If other remedies can protect a plaintiff's legal interests,

10   then the alleged harms do not warrant preliminary injunctive relief.  *Id.*

11   Here, Plaintiff claims—albeit sketchily—that she has suffered and will

12   continue to suffer three principal harms: (1) violation of her copyright (*see, e.g.*,

13   FAC ¶¶ 29, 42); (2) harm to her career prospects (*see, e.g., id.* ¶¶ 38, 76, 86); and

14   (3) emotional distress arising from alleged threats, insults, and other indignities

15   (*see, e.g., id.* ¶¶ 32-35, 81, 93; see also Ex Parte App. at 21-22).[8]  None of those

16   purported harms justifies preliminary injunctive relief.

17   ***First***, Plaintiff has, at most, "a property interest in the copyrighted material."

18   *Salinger*, 607 F.3d at 81; *see also New Era Pubs. Int'l, APS v. Henry Holt & Co.*,

19

20   [8] Plaintiff's questionable claims and public appearances also continue to stir the pot of
controversy.  Plaintiff has appeared in a number of television interviews (*see, e.g.* Russell Goldman,

21   *Actress Says Maker of Anti-Muslim Film Lied to Cast*, ABC News, Sept. 13, 2012, *available at*
http://abcnews.go.com/Blotter/actress-maker-anti-muslim-film-lied-cast/story?id=17228157), and her

22   complaint was the subject of news reports immediately after its filing (*see e.g.* Anthony McCartney,
*'Innocence of Muslims' Actress Cindy Lee Garcia Sues YouTube, Producer*, The Huffington Post, Sept.

23   19, 2012, *available at* http://www.huffingtonpost.com/2012/09/19/innocence-of-muslims-actress-cindy-
lee-garcia-youtube_n_1898577.html; Miguel Marquez and Stan Wilson, *Actress In Anti-Islamic Film Files*

24   *Lawsuit Against Filmmaker and YouTube*, CNN, Sept. 19, 2012, *available at*
http://www.cnn.com/2012/09/19/us/california-anti-islam-film-lawsuit).  Although plaintiff asserted in the

25   state court proceedings that she participated in media interviews to correct the record regarding her
involvement in the Film, she continued to make public appearances (often with her lawyer) – long after

26   plaintiff's disavowal of the Film was well-established. This included recent press conferences on the
sidewalk outside Los Angeles Superior Court (*see, e.g.*, *Effort to Take Down Anti-Muslim Film Rejected*,

27   available at http://abclocal.go.com/kabc/video?id=8818769), and appearances on the television show, "The
View" (http://www.youtube.com/watch?v=tKqhLk0agNA) and the "Today Show"

28   (http://today.msnbc.msn.com/id/49146658/ns/today-today_news/t/actress-anti-islam-film-i-was-
duped/#.UHS65fkn2Ew).

-9-                                                    Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

695 F. Supp. 1493, 1526 (S.D.N.Y. 1988), *aff'd*, 873 F.2d 576 (2d Cir. 1989) ("[T]he justification of the copyright law is the protection of the *commercial* interest of the artist/author.") (emphasis in original).  As discussed below, Plaintiff is not the author of the Film and does not hold her own copyright that would give her the exclusive right to display and distribute the work.  *See* 17 U.S.C. § 106.

Damages are the typical remedy for commercial injuries.[9]  *See New Era*, 695 F. Supp. at 1526 (denying request to enjoin publication of allegedly infringing book; explaining that if "the copyright owner can be reasonably compensated in damages for injury to this commercial interest, and the injury to the public interest in free speech resulting from injunction would be great, that is a powerful reason for limiting the remedy to damages and withholding the injunctive relief"); *Abend v. MCA*, 863 F.2d 1465, 1479 (9th Cir. 1988) (plaintiff seeking to enjoin movie did not show "irreparable injury which would justify imposing the severe remedy of an injunction;" plaintiff could be "compensated adequately for the infringement by monetary compensation"), *aff'd on other grounds sub. nom. Stewart v. Abend*, 495 U.S. 207 (1990); Lemley & Volokh, *Freedom of Speech and Injunctions in Intellectual Property Cases*, 48 Duke L.J. 147, 192 (1998) ("Copyright law is aimed primarily at ensuring that authors are economically rewarded so that they and others will continue to create new works of authorship—damages can generally reward authors relatively adequately and are often not terribly hard to estimate.").

*Second*, even if the Film has affected Plaintiff's career prospects, that harm is not irreparable as a matter of law.  *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90 (1974) (lost income and damaged reputation do not constitute irreparable injury); *DeNovellis v. Shalala*, 135 F.3d 58, 64 (1st Cir. 1998) (temporary loss of income does not usually constitute irreparable injury); *Shegog v. Bd. of Ed. of City of*

---

[9] Plaintiff has not shown that damages would be difficult to calculate or award in this case. Indeed, she expressly seeks damages under the Copyright Act, including "advertising revenues resulting from the placement of embedded advertisements in the Film" (FAC ¶ 48), and statutory damages (*id.* ¶ 49).

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    *Chicago*, 194 F.3d 836, 839 (7th Cir. 1999) (temporary deprivation of employment,

2    even combined with financial distress and difficulty finding new job, is not an

3    irreparable injury).[10]

4         ***Third***, the insults and threatening statements Plaintiff identifies, while unfair

5    and upsetting, do not justify injunctive relief.  According to Plaintiff, several

6    individuals have made statements that could be construed as wishing harm against

7    her and/or her family—mostly on Plaintiff's Facebook profile.  (*See* Ex Parte App.

8    at 10; Decl. of Cindy Lee Garcia, Exh. B.)  In addition, according to Plaintiff, an

9    Egyptian cleric has encouraged his followers to harm Plaintiff and all those who

10   worked on the Film.  (*See* Ex Parte App. at 8.)

11        This is not a showing of likely, imminent, and severe harm.  For one thing,

12   past injuries alone do not justify prospective injunctive relief.  *See, e.g.*, *City of Los

13   Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  Plaintiff asserts that the "threats" she

14   identifies are "credible."  (Ex Parte App. at 10.)  But merely saying that does not

15   make it so.  Plaintiff—who freely disclosed her hometown of Bakersfield when she

16   was first interviewed on television—points to no facts showing that she is in actual

17   danger because the Film is posted on YouTube.  Plaintiff continues to travel around

18   the country appearing on national television shows.[11]  It appears that Plaintiff has

19   successfully explained her version of the story and engaged in productive

20   conversations with many of the people who were at first angry with her.  The

21   threats appear to be the result of her alleged participation in the Film, and not the

22   Film's availability on YouTube, and removal of the Film would do nothing to

23   change the fact that she indeed participated in the Film.  (*See* Garcia Decl., Exh. B

24   at 19-21, 24-25, 30-36 (ECF pagination).)  Plaintiff's fear of harm is wholly

25   _____

26        [10] Although plaintiff identifies harm to her career as one of the irreparable harms she will suffer

27   absent an injunction, she has offered no evidence that the Film has reduced or will reduce her career
     prospects. *See Perfect 10*, 653 F.3d at 981 (plaintiff failed to establish irreparable harm in part because it
     failed to identify a single customer it lost as a result of defendant's conduct).

28        [11] A sampling of plaintiff's television appearances are identified in footnote 1.

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

speculative, and "[s]peculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

Lastly, and perhaps most importantly, Plaintiff offers no evidence that an injunction would prevent *future* insults and threats.  A takedown order against the YouTube Defendants would not end all distribution of the Film or erase Plaintiff's television interviews discussing her participation in the Film, which are widely available.  It also would not dissolve the alleged fatwa, prevent people from contacting her on Facebook, or change people's views about the Film.

### 3. Plaintiff's inexcusable delay undermines her claims of irreparable harm.

Courts often reject claims of irreparable harm where "the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (10-week delay undercut claim of irreparable harm).  A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

Plaintiff unreasonably delayed in seeking injunctive relief against the YouTube Defendants.  According to plaintiff, the Film was available on YouTube no later than July 2, 2012—almost three months before plaintiff first sought preliminary relief in Superior Court. (*See* FAC ¶ 1.)  Plaintiff admits she became aware of the Film's posting by Youssef in July, and viewed it at that point on YouTube, but she did nothing whatsoever to pursue her claims of copyright infringement until the end of September. (*See* Ex Parte App. at 6.)  Even after filing this action, Plaintiff waited another three weeks before filing this motion.

Plaintiff offers no explanation for her excessive delay, nor can she, because none of her claims required investigation. On this basis alone, this Court should

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    conclude that Plaintiff's allegations of irreparable harm under the Copyright Act are

2    defeated by her unreasonable delay in seeking relief.

3         **B.    Plaintiff Cannot Show a Likelihood of Success On the Merits of
              Her Copyright Infringement Claims Against the YouTube
4             Defendants.**

5         Copyright protection is afforded to "original works of authorship fixed in any

6    tangible medium of expression." 17 U.S.C. § 102.  To prevail on a claim for

7    copyright infringement, a plaintiff must prove that: (1) the plaintiff owns the

8    copyrighted material; and (2) that the defendant violated the plaintiff's *exclusive*

9    *rights* under the Copyright Act. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.

10   2004).  Plaintiff cannot establish either element.

11        **1.    Plaintiff does not own a copyright in the Film.**

12        A copyright "vests initially in the author or authors of the work." 17 U.S.C.

13   § 201(a).  Although the Copyright Act does not define the term "author," the

14   Supreme Court has stated that the term generally refers to "the party who actually

15   creates the work, that is, the person who translates an idea into a fixed, tangible

16   expression entitled to copyright protection." *Cmty. for Creative Non-Violence v.*

17   *Reid*, 490 U.S. 730, 737 (1989).  The Ninth Circuit has stated that an "author" of a

18   copyrighted work is best defined as "the person to whom the work owes its origin

19   and who superintended the whole work, the 'mastermind.'" *Aalmuhammed v. Lee*,

20   202 F.3d 1227, 1233 (9th Cir. 2000) (quoting *Burrow-Giles Lithographic Co. v.*

21   *Sarony*, 111 U.S. 53, 58 (1884)).  For a movie, this definition "would generally

22   limit authorship to someone at the top of the screen credits, sometimes the

23   producer, sometimes the director, possibly the star, or the screenwriter—*someone*

24   *who has artistic control*." *Id*. (emphasis added).

25        Plaintiff's brief appearance in the Film is not enough to establish authorship.

26   Plaintiff appeared in the Film for no more than five seconds, and most of the lines

27   attributed to Plaintiff's character were "words that Plaintiff **never spoke**." (FAC ¶ 4

28   (original emphasis).)  In fact, she thought that she was appearing in a "historical

-13-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

Arabian Desert adventure film." (FAC ¶¶ 27, 29.) Plaintiff merely responded to a casting call and read lines that were given to her by Youssef, which were later overdubbed. (FAC ¶¶ 27-28.)

Plaintiff did not produce the Film, direct the Film, or write the script. (FAC ¶ 5.) She was not even a leading character. Plaintiff's contribution is a far cry from the "artistic control" necessary to support a finding of authorship.[12]

### 2. Plaintiff cannot hold a copyright in only those portions of the Film containing her dramatic performance.

Because Plaintiff cannot both publicly disavow the Film and claim to be its author, she attempts to isolate her acting performance from the rest of the Film by claiming to have a copyright "in the dramatic performance she delivered and which was fixed in tangible form when it was filmed during the production of 'Desert Warrior.'" (FAC ¶ 10.) The entirety of the Film is one work for copyright purposes, however.[13] The individual images that collectively comprise the Film fall within the scope of the copyright held by the Film's author. *See* 17 U.S.C. § 106 (recognizing a copyright owner's exclusive right to publicly display "the individual images of a motion picture").

One can imagine the impenetrable thicket of conflicting rights that would arise if each creative contributor (*i.e.,* actors, director, producer, cameraman,

---

[12] Plaintiff invests a great deal of ink discussing the Digital Millennium Copyright Act ("DMCA") and her takedown notices, and even burdens the record with a declaration from other litigation describing YouTube's policy of compliance with the DMCA, which is entirely irrelevant to this case. (*See* Defendants' Objections to Evidence at p.2.) The DMCA "safe harbor" is an affirmative defense, which shields a service provider from monetary damages if it complies with the Act's safe harbor provisions. 17 U.S.C. §512(c). The DMCA is irrelevant to plaintiff's request for a preliminary injunction.

[13] The YouTube Defendants have found no authority supporting plaintiff's proposition that a motion picture can be parsed into multiple works under the Copyright Act based on claims by actors that they were not employees and retained copyrights in their performances. Creative contributors' lack of rights under copyright law allowed movie distributors to "colorize" black-and-white films in the 1980s, even over the objection of famous directors and their heirs. *See* Kohs, *Paint Your Wagon—Please!: Colorization, Copyright, and the Search for Moral Rights*, 40 Fed. Comm. L.J. 1 (1988), 9-10 ("copyright vests in the 'employer' and not the individual creative participants in the film making process"), 18-19 ("In the context of film making, copyright in this country will not normally vest in the director, or any other creative participant for that matter."); Cook, *Colorization of Black and White Films: An Example of the Lack of Substantive Protection for Art in the United States*, 63 Notre Dame L. Rev. 309 (1988), 325 (accord).

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

cinematographer, costume designer, make-up artist, etc.) could hold an independent and exclusive copyright interest in his or her contribution to a movie. The copyright held by the film's author would be rendered meaningless, as he or she could not possibly exercise the exclusive rights afforded under the Copyright Act without trampling on the rights of other contributors. *See Booth v. Colgate-Palmolive Co.*, 362 F. Supp. 343, 347 (S.D.N.Y. 1973) ("[T]he recognition of a performer's right in a copyrighted work would impose undue restraints on the potential market of the copyright proprietor since a prospective licensee would have to gain permission from each of possibly many performers who might have rights in the underlying work before he could safely use it."). Accordingly, contribution to a film alone does not establish a copyright unless the requirements for "authorship" are met. *See Aalmuhammed*, 202 F.3d at 1233-35 (finding that significant creative contributions to a film failed to rise to the level of "authorship").

Plaintiff relies on *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996), to argue that an actor's performance in a film is independently copyrightable. But *Fleet* is a preemption case, not an infringement case. In *Fleet*, the court considered whether actors' claims for misappropriation of name or likeness were preempted by the Copyright Act. The court concluded that the actors' claims were preempted because the images of the actors' at issue in the case were taken directly from a copyrighted motion picture and therefore fell within the scope of copyright protection. *Id.* at 1916; *see also Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134 (2006) (affirming summary judgment against singer, finding that her voice misappropriation claim was preempted by the Copyright Act). The Court did not analyze, as it must here, whether the actors could state a claim for copyright infringement because the actors did not claim a copyright interest in the film or in their individual performances. *Fleet*, 50 Cal. App. 4th at 1916. Merely, finding something within the scope of copyright law is not the same as finding it subject to

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

copyright protection. *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053 (C.D. Cal. 2000) (noting that "scope and protection are not synonymous...the shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection.") (quoting *U.S. ex rel. v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).

Plaintiff also cites *Jules Jordan Video v. 144942 Canada*, 617 F.3d 1146 (9th Cir. 2010), for the proposition that a performer retains the copyright in her performance unless she transfers or assigns the right to another. (Ex Parte App. at 15.) But in *Jules Jordan*, the actor also produced, directed, wrote the script, and filmed the movies in which he claimed a copyright interest. *Id.* at 1150. He operated a "one-man shop." *Id.* Here, the Film was produced, directed, and controlled in all other respects by Youseff, not Plaintiff, as Plaintiff herself expressly concedes.

### 3. Plaintiff identifies Youssef as the Film's exclusive copyright owner, giving him the right to post the Film on YouTube.

Plaintiff's own allegations establish that Youssef controlled the making of the Film. Plaintiff alleges that Youssef was "the writer and producer of the Film," "managed all aspects of production," and "was in charge of all aspects of the production." (FAC ¶ 5.) By plaintiff's own admission, Youssef was the Film's "mastermind"—and, necessarily then, the Film's author. As the author of the Film, Youssef is also the copyright owner. 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work.").

It is a basic tenant of copyright law that one cannot infringe his own copyright. *See Richmond v. Weiner*, 353 F.2d 41 (9th Cir. 1965). As the copyright owner, Youssef has the *exclusive* right to reproduce the copyrighted work, prepare derivative works, distribute copies of the work to the public, and publicly display the entire work. 17 U.S.C. § 106.

-16-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    Plaintiff admits that the Film was posted on the YouTube website by Youssef

2    himself.  (FAC ¶¶ 1, 29, 30.)  Because Youssef was exercising his lawful rights

3    under the Copyright Act when he displayed the Film, such activity was authorized

4    by the copyright owner, and the YouTube Defendants cannot be liable to Plaintiff

5    for copyright infringement for failure to remove the Film at Plaintiff's demand.

6              **4.    Plaintiff's dramatic performance was a "work for hire."**

7         In general, copyright in a work "vests initially in the author . . . of the work."

8    17 U.S.C. § 201(a).  But "[i]n the case of a work made for hire, *the employer . . . for*

9    *whom the work was prepared is considered the author* . . . , and, unless the parties

10   have expressly agreed otherwise in a written instrument signed by them, owns all of

11   the rights comprised in the copyright."  17 U.S.C. § 201(b) (emphasis added).  The

12   Copyright Act defines a "work made for hire" to include: "(1) a work prepared by

13   an employee within the scope of his or her employment; or (2) a work specially

14   ordered or commissioned for use as . . . part of a motion picture or other audiovisual

15   work . . . if the parties expressly agree in a written instrument signed by them that

16   the work shall be considered a work made for hire."  17 U.S.C. § 101.

17        Plaintiff alleges that she might have signed a contract for Youssef, but she

18   claims to be "unable to locate a copy of any such contract."  (FAC ¶ 6.)  She does,

19   however, "recall that the contract did not call for her to transfer any rights,

20   including any copyrights, and that it was not a 'work for hire' agreement."  (*Id.*;

21   Garcia Decl. ¶ 8.)[14]

22        Even if Plaintiff's contract does not include the typical "work for hire"

23   language, which is highly doubtful,[15] Plaintiff was clearly an "employee" under the

24   _____

25   [14] Plaintiff has also offered declarations from other actors in the Film who claim that they did not
     sign releases or work-for-hire agreements. (Declarations of Gaylord Flynn ¶ 4 and Dan Sutter ¶ 4.) Such
     declarations are irrelevant to what was included in *plaintiff's* contract.

26   [15] Most contracts between actors and filmmakers contain "work for hire" language. *See* Nimmer,
     § 23.06[A] ("All services rendered for the production company will typically be rendered on a 'work for

27   hire' basis, so that the production company is clearly the owner of the results and proceeds of those
     services, including the copyright."). It is difficult to understand how an individual who claims to be a

28   professional actress would work on a film without the kind of agreement that is part-and-parcel of the

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   law and her performance was squarely within the scope of her employment.

2   Whether an artist is an "employee" for purposes of the "work for hire" doctrine is

3   determined by common law principals of agency. *Community for Creative Non-*

4   *Violence*, 490 U.S. at 751.  The Supreme Court has identified a number of factors to

5   consider:

> [1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment; [8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; the provision of employee benefits; and [11] the tax treatment of the hired party.

12  *Id.* at 751.

13      One of the most critical factors is the level of control that the employer has

14  over the artist's work.  *Id.* ("we consider the hiring party's right to control the

15  manner and means by which the product is accomplished"); *see also Antelope*

16  *Valley Press v. Poizner*, 162 Cal. App. 4th 839, 852 (2008) ("[T]he right of the

17  person to whom services are rendered to control the manner and means of

18  accomplishing the desired result of those services is a significant factor for

19  determining whether the person performing the work is an employee or an

20  independent contractor.").

21      The FAC establishes that Plaintiff was Youssef's employee.  Plaintiff admits

22  that she was hired merely as an actress for a role in the Film.  She responded to a

23  casting call and ultimately "was cast in the part" that she played.  (FAC ¶¶ 4, 27.)

24  She was given portions of a script to read and paid $500 for her work.  (FAC ¶ 28;

25  Garcia Decl. ¶ 6.)  Plaintiff further alleges that Youssef was the "writer and

---

industry.  On the other hand, it is also difficult to see how, if the individual is *not* a professional, and not an attorney, that individual would be able to competently describe the legal effect or limitations of a contract.  The Court need not accept plaintiff's self-serving recollection as evidence of the contract's terms, especially when it runs contrary to common practice in the movie industry.

-18-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    producer of the Film" and "*managed all aspects of production.*"  (FAC ¶ 5

2    (emphasis added).)  She was hired by Youssef to "deliver an acting performance"

3    (FAC ¶ 8, 28), and then Youssef or others took that performance and later dubbed

4    over her words (*id.* ¶¶ 8, 29).  Plaintiff was an employee, under the law, relating to

5    her work on the Film.

6            Once it is determined that the work was created by an employee within the

7    scope of her employment, there is a presumption that the employer owns a

8    copyright in the work.  *Twentieth Century Fox Film Corp. v. Entm't Distrib.,* 429

9    F.3d 869, 880 (9th Cir.2005) (recognizing presumption); *Lin-Brook Builders*

10   *Hardware v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965) (when one hires another to

11   make a work "of an artistic nature . . . the presumption arises that the mutual intent

12   of the parties is that the title to the copyright shall be the person at whose instance

13   and expense the work is done.").  An employee may only rebut the presumption by

14   presenting evidence of an agreement that the employee would hold a copyright.

15   Nimmer, § 5.03D; *Trenton v. Infinity Broadcasting Corp.*, 865 F. Supp. 1416, 1426

16   (C.D. Cal. 1994).  Plaintiff has failed to present any evidence of such an agreement.

17           **5.      Plaintiff is not even a joint author.**

18           Although an author of a work is generally entitled to exclusive ownership of

19   his or her creation, there is an exception when multiple authors contribute to a

20   "joint work."  In the case of a "joint work," each contributing author shares a non-

21   exclusive right in his or her creation with the other contributing authors.  17 U.S.C.

22   § 201(a).  Each joint author has free reign to exploit the work without the consent of

23   the other co-authors.  *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir. 1965); *Oddo v.*

24   *Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) ("A co-owner of a copyright cannot be

25   liable to another co-owner for infringement of the copyright.  Rather, each co-

26   owner has an independent right to use or license the use of the copyright.").

27           A "joint work" is defined as "a work prepared by two or more authors with

28   the intention that their contributions be merged into inseparable or interdependent

-19-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1  parts of a unitary whole." 17 U.S.C. § 101; *see also Richlin v. Metro-Goldyn-*
2  *Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008), *cert. denied*, 555 U.S.
3  1137 (2009).  The Ninth Circuit has held that for a work to qualify as a "joint
4  work," there must be: "(1) a copyrightable work, (2) two or more 'authors,' and (3)
5  the authors must intend their contributions be merged into inseparable or
6  interdependent parts of a unitary whole." *Almuhammed*, 202 F.3d at 1231.  A "joint
7  work" also requires "each author to make an independently copyrightable
8  contribution." *Id.* (quoting *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.
9  1990)).

10      Plaintiff admits she cannot be a joint author in the Film because "Plaintiff
11  never had a meeting of the minds with Defendant [Youssef]" that they would be
12  joint authors in the Film.  (Ex Parte App. at 17-18.)  Plaintiff also is not a "joint
13  author" because she is not an author at all.  *See Almuhammed*, 202 F.3d at 1233-35
14  (finding that person who consulted on a film and even wrote portions of the script
15  was not a "joint author").  According to Plaintiff, it was Youssef who "managed . . .
16  [and] was in charge of all aspects of the production," and therefore authored the
17  Film.  (FAC ¶ 5.)  *See id. at* 1234 ("an author 'superintend[s]' the work . . . 'by
18  putting the persons in position, and arranging the place where people are to
19  be . . .'").

20      **C.    Plaintiff Cannot Show that the Equities Tip In Her Favor.**

21      To qualify for injunctive relief, a plaintiff "must establish that 'the balance of
22  equities tips in [her] favor.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th
23  Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  This Court must therefore "balance the
24  interests of all parties and weigh the damage to each."  *L.A. Mem'l Coliseum*
25  *Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).  It must
26  also consider whether plaintiff's requested relief would adversely affect the rights
27  of nonparties or the public at large.  *See Winter*, 555 U.S. at 26 ("In this case, the
28  District Court and the Ninth Circuit significantly understated the burden the

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    preliminary injunction would impose on the Navy's ability to conduct realistic

2    training exercises, and the injunction's consequent adverse impact on the public

3    interest in national defense.").

4         Granting the relief she requests would violate the free speech rights of

5    Youssef and others (including those who have used the Film as a basis for

6    commentary) and burden the public's interest in free expression.  In contrast,

7    Plaintiff's alleged injuries would not be addressed by enjoining the YouTube

8    Defendants because an injunction would do nothing to prevent such injuries, which

9    are are purely commercial and entirely speculative.  The balance of equities does

10   not tip in Plaintiff's favor.

11        **D.    Plaintiff's Requested Injunction Would be a Prior Restraint, and
           Would Not Serve the Public Interest.**

12        Nearly century ago, Justice Brandeis wrote, in a concurrence

13   in *Whitney v. California,* 274 U.S. 357 (1927):  "If there be time to expose through

14   discussion the falsehood and fallacies, to avert the evil by the processes of

15   education, the remedy to be applied is more speech, not enforced silence.  Only an

16   emergency can justify repression."  *Id.* at 377.

17        The injunction Plaintiff seeks is an unconstitutional prior restraint.  *See*

18   *Alexander v. United States*, 509 U.S. 544, 550 (1993) ("Temporary restraining

19   orders and permanent injunctions—*i.e.*, court orders that actually forbid speech

20   activities—are classic examples of prior restraints."); *Evans v. Evans*, 162 Cal.

21   App. 4th 1157, 1166 (2008) (prior restraints are "highly disfavored and

22   presumptively violate" the First Amendment).  A prior restraint is "the most serious

23   and the least tolerable infringement on First Amendment rights." *Nebraska Press*

24   *Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

25        To "establish a valid prior restraint under the federal Constitution, a

26   proponent has a heavy burden to show the countervailing interest is compelling, the

27   prior restraint is necessary and would be effective in promoting this interest, and

28

-21-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1   less extreme measures are unavailable." *Evans*, 162 Cal. App. 4th at 1166 (citing

2   *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562-568 (1976)).  Even concerns

3   about national security have been deemed insufficiently compelling to justify a

4   prior restraint. *See New York Times Co. v. Sullivan*, 403 U.S. 713, 714 (1971) (per

5   curiam) (refusing to enjoin publication of the Pentagon Papers).  Plaintiff has not

6   shown and cannot show that this is one of the rare cases justifying a prior restraint.

7       *First,* Plaintiff has not identified "compelling interests" justifying a prior

8   restraint; at best, she has identified highly personal interests in very short segments

9   of the Film that are commercial, speculative, or both.  The personal harms that

10  Plaintiff contends justify a takedown order are unrelated to the purpose and

11  remedies of the Copyright Act, which is the basis for her claims.

12      *Second*, it is beyond dispute that a prior restraint would not "be effective in

13  promoting" Plaintiff's interests because enjoining the YouTube Defendants would

14  not actually prevent any of the future harms plaintiff alleges (*i.e.* harm to career

15  prospects (FAC ¶¶ 38, 76, 86) and emotional distress arising from alleged threats

16  and insults (FAC ¶¶ 32-35, 81, 93)), especially at this late date.

17      *Third*, and perhaps most importantly, by seeking to remove the Film from

18  YouTube, Plaintiff seeks to stifle speech at the core of the First Amendment—

19  speech about religion, politics, and the value of free speech itself. (*See, e.g.*, FAC ¶

20  3 (alleging that the Film has inspired protests in nearly 50 countries and drawn

21  comment from the President of the United States and the Secretary of State);

22  Motion at 22 (stating that there have been 30 million viewings of the Film's English

23  version); *see also* Editorial, *The United States and the Muslim World*, N.Y. Times

24  at A26 (Sept. 19, 2012) (discussing the Film, its effect on the Muslim world, and

25  effects on U.S. foreign policy).  In fact, the Film has become a point of discussion

26  in the current campaign for president of the United States.[16]

27

28  [16] *See The Mystery of Benghazi*, available at
    http://www.nytimes.com/2012/10/14/opinion/sunday/douthat-the-mystery-of-

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    Courts are rightly skeptical when a plaintiff invokes tenuous copyright claims

2    to stifle public debate. *See Religious Tech. Ctr. v. F.A.C.T.Net*, 901 F. Supp. 1519,

3    1527 (D. Colo. 1995) ("Public interest lies with the free exchange of dialogue on

4    matters of public concern.  The injunction sought would silence the Defendants as

5    participants in an ongoing debate involving matters of significant public

6    controversy.  Relief of this kind does not serve the public interest.").[17]

7    Thus, rather than serving the public interest, enjoining the YouTube

8    Defendants would only harm the public's interest in free speech and the free

9    exchange of ideas about matters of public concern. *See Salinger*, 607 F.3d at 82

10   ("The public's interest in free expression . . . is significant and is distinct from the

11   parties' speech interests.").  Where an injunction "will adversely affect a public

12   interest . . . the court may in the public interest withhold relief until a final

13   determination of the rights of the parties, though the postponement may be

14   burdensome to the plaintiff." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-

15   13 (1982).  That is exactly what should happen here.

16   Plaintiff's alleged interests in the Film simply do not justify a prior restraint

17   of core First Amendment speech. *See id.* at 312 (explaining that courts "should pay

---

18   
19   benghazi.html?ref=rossdouthat&_r=0; CIA Documents Supported Susan Rice's Description of Benghazi
     Attacks, available at http://www.washingtonpost.com/opinions/benghazi-attack-becomes-political-
     ammunition/2012/10/19/e1ad82ae-1a2d-11e2-bd10-5ff056538b7c_story.html?wprss=rss_homepage;
20   Bneghazi and Arab Spring Rear Up in U.S. Campaign, available at
     http://www.nytimes.com/2012/10/22/us/politics/benghazi-and-arab-spring-rear-up-in-us-
21   campaign.html?hp&_r=0.

22   [17] Plaintiff contends that the First Amendment simply falls away because "by now it is clear that
     Defendants' actions can be compared to falsely shouting 'Fire!' in a theater, creating a 'clear and present
23   danger' outside the protections of the First Amendment." (Ex Parte App. at 23 (citing *Schenk v. United
     States*, 249 U.S. 47, 52 (1919)).)  But *Schenk* did not involve a prior restraint. *Schenk* simply held that
24   speech may be punished if, after a trial on the merits, the speech is found to be illegal and not protected by
     the First Amendment. *See Schenk*, 249 U.S. at 49, 52-53 (upholding conviction, after trial, for violation of
25   a federal statute).  *Schenk* does not stand for the proposition that potentially controversial or offensive
     speech should be cut off at the source before it is determined to be unlawful. *See, e.g., Balboa Island
26   Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155-1156 (2007) ("[W]e hold that, following a trial at which
     it is determined that the defendant defamed the plaintiff, the court may issue an injunction . . . . prohibiting
27   the defendant from repeating the statements determined to be defamatory. . . . Such an injunction, *issued
     only following a determination at trial that the enjoined statements are defamatory*, does not constitute a
28   prohibited prior restraint of expression.") (emphasis added):

Opposition to Motion for Preliminary
Injunction and Order of Impoundment
CV-12-8315-MWF (VBKx)

1    particular regard for the public consequences in employing the extraordinary

2    remedy of injunction."); *see also Religious Tech. Ctr. v. Netcom On-Line*

3    *Commc'ns Svcs., Inc.*, 907 F. Supp 1361, 1383 (N.D. Cal. 1995) (rejecting request

4    for preliminary injunctive relief against providers of an Internet bulletin board in a

5    copyright case, in part because service providers "play[ed] a vital role in the speech

6    of their users").

## V.    CONCLUSION

7

8        For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction and

9    Order of Impoundment should be denied in its entirety.

10

11   DATED:  October 29, 2012                    **PERKINS COIE** LLP

12

13                                    By:  */s/ Timothy L. Alger*
                                          Timothy L. Alger

14
                                     Attorneys for Defendant
15                                   Google Inc. and YouTube, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-                                   Opposition to Motion for Preliminary
                                        Injunction and Order of Impoundment
                                        CV-12-8315-MWF (VBKx)